GIBSON, DUNN & CRUTCHER LLP
GAIL E. LEES, SBN 90363
GLees@gibsondunn.com
S. ASHLIE BERINGER, SBN 263977
ABeringer@gibsondunn.com
JOSHUA A. JESSEN, SBN 222831
JJessen@gibsondunn.com
1881 Page Mill Road
Palo Alto, California  94304
Telephone:  (650) 849-5300
Facsimile:   (650) 849-5333

Attorneys for Defendant
FLURRY, INC.

[Counsel For Additional Mobile Industry
Defendants Listed On Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re iPhone Application Litigation | Case No. 11-MD-02250-LHK<br><br>**CLASS ACTION**<br><br>**MOBILE INDUSTRY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED, CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>**HEARING**:<br>Date:        May 3, 2012<br>Time:        1:30 p.m.<br>Place:       Courtroom 4<br>Judge:      The Honorable Lucy H. Koh |

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION...........................................................................................................1

II.  ARGUMENT ...............................................................................................................2

A.   Plaintiffs Lack Article III Standing to Pursue Their Claims...............................2

1.   Plaintiffs Have Failed to Plead any Injury in Fact...............................2

2.   Plaintiffs Concede That They Have Failed to Plead any Causal Connection Between any Harm and Any Defendant's Conduct or Role in That Harm...........................................................................6

3.   Plaintiffs Do Not Satisfy Prudential Standing Requirements .............6

B.   Each of Plaintiffs' Separate Claims Against the Mobile Industry Defendants Fails to State a Claim ......................................................................7

1.   Plaintiffs Fail to State a Claim Under the Computer Fraud and Abuse Act...........................................................................................7

2.   Plaintiffs Fail to State a Claim Under the Stored Communications Act....................................................................................................9

3.   Plaintiffs Fail to State a Claim Under the California Constitution, Art. I, Sec. 1 ....................................................................................11

4.   Plaintiffs Fail to State a Claim for Trespass to Chattels ...................13

5.   Plaintiffs Fail to State a Claim for Conversion ................................14

6.   Plaintiffs Fail to State a Claim for Common Counts, Assumpsit or Restitution .......................................................................................15

III. CONCLUSION ..........................................................................................................15

1

# TABLE OF AUTHORITIES

2

Page(s)

3

## Cases

4

Ashcroft v. Iqbal,
 129 S. Ct. 1937 (2009) ......................................................................... 8, 11, 13

5

Chance v. Ave. A, Inc.,
 165 F. Supp. 2d 1153 (W.D. Wash. 2001) .................................................. 10

6

Council on American-Islamic Relations Action Network, Inc.,
 793 F. Supp. 2d 311 (D.D.C. 2011) ........................................................... 10

7

8

Cousineau v. Microsoft,
 No. 2:11-cv-01438 (W.D. Wash.) ................................................................. 6

9

Creative Computing v. Getloaded.com LLC,
 386 F.3d 930 (9th Cir. 2004)..................................................................... 8, 9

10

Del Vecchio v. Amazon.com, Inc.,
 2011 WL 6325910 (W.D. Wash. Dec. 1, 2011)............................................ 6

11

12

eBay, Inc. v. Bidder's Edge,
 100 F. Supp. 2d 1058 (N.D. Cal. 2000) ...................................................... 13

13

Edwards v. First Am. Corp.,
 610 F.3d 514 (9th Cir. 2010)......................................................................... 5

14

15

Expert Janitorial, LLC v. Williams,
 2010 WL 908740 (E.D. Tenn. Mar. 12, 2010) ........................................... 10

16

Folgelstrom v. Lamps Plus, Inc.,
 195 Cal. App. 4th 986 (2011) ..................................................................... 13

17

18

Graczyk v. West Pub. Co.,
 660 F.3d 275 (7th Cir. 2011)......................................................................... 3

19

Hill v. Nat'l Collegiate Athletic Ass'n,
 7 Cal. 4th 1 (1994) ...................................................................................... 13

20

In re DoubleClick Privacy Litigation,
 154 F. Supp. 2d 497 (S.D.N.Y. 2001)............................................... 7, 11, 15

21

22

In re Facebook Privacy Litig.,
 791 F. Supp. 2d 705 (N.D. Cal. 2011) ...................................................... 3, 4

23

In re Google Android Consumer Privacy Litigation,
 No. 3:11-md-02264 (N.D. Cal.) .................................................................... 6

24

25

In re Intuit Privacy Litig.,
 138 F. Supp. 2d 1272 (C.D. Cal. 2001) ...................................................... 10

26

In re TFT-LCD (Flat Panel) Antitrust Litig.,
 586 F. Supp. 2d 1109 (N.D. Cal. 2008) ........................................................ 6

27

28

Gibson, Dunn &
Crutcher LLP

*In Re Zynga Privacy Litigation,*
    No. C-10-04680 JW (N.D. Cal. June 15, 2011)............................................................. 8

*Intel Corp. v. Hamidi,*
    30 Cal. 4th 1342 (2003) ............................................................................................ 13, 14

*Jewel v. National Security Agency,*
    2011 WL 6848406 (9th Cir. Dec. 29, 2011) ................................................................... 5

*Klimas v. Comcast Cable Comms., Inc.,*
    465 F.3d 271 (6th Cir. 2006).................................................................................... 3, 4

*La Court v. Specific Media, Inc.,*
    2011 WL 1661532 (C.D. Cal. Apr. 28, 2011)................................................................. 8

*Lee v. Chase Manhattan Bank,*
    2008 WL 698482 (N.D. Cal. Mar. 14, 2008) ................................................................. 4

*McBride v. Boughton,*
    123 Cal. App. 4th 379 (2004) ...................................................................................... 15

*Sidebotham v. Robinson,*
    216 F.2d 816 (9th Cir. 1954) ....................................................................................... 15

*Summers v. Earth Island Inst.,*
    555 U.S. 488, 129 S. Ct. 1142 (2009) ............................................................................. 5

*United States v. Steiger,*
    318 F.3d 1039 (11th Cir. 2003)..................................................................................... 10

*Warth v. Seldin,*
    422 U.S. 490 (1975) ................................................................................................... 4, 7

**Statutes**

18 U.S.C. § 1030(c)(4)(A)(i)(I) ......................................................................................... 9

18 U.S.C. § 1030(e)(11) ..................................................................................................... 7

18 U.S.C. § 1030(e)(8) ....................................................................................................... 7

18 U.S.C. § 1030(g) ........................................................................................................... 8

18 U.S.C. § 2510(17) ....................................................................................................... 11

18 U.S.C. § 2701(a) ..................................................................................................... 10, 11

18 U.S.C. § 2701(c)(2) ..................................................................................................... 10

**Rules**

Fed. R. Civ. P. 8 .............................................................................................................. 11

Fed. R. Civ. P. 8(a) .......................................................................................................... 15

**Constitutional Provisions**

Cal. Const. art. I, § 1 ....................................................................................................... 13

U.S. Const. art. III ............................................................................................................. 1

MOBILE INDUSTRY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 11-MD-02250-LHK

Gibson, Dunn &
Crutcher LLP

# I. INTRODUCTION

There are sixteen words that are conspicuously absent from Plaintiffs' 52-page Opposition to the motions to dismiss filed by Apple and the Mobile Industry Defendants. Those words are: Jonathan Lalo, Dustin Freeman, Anthony Chiu, Jared Parsley, Heather Kimbrel, Kevin Burwick, Marcia Burke, and William Burke. The absence of these sixteen words—the names of the Plaintiffs who purport to represent the so-called "iDevice Class," a class of tens of millions of iPhone owners who voluntarily downloaded and authorized one or more free apps—confirms what was already clear from (i) Plaintiffs' First Consolidated Complaint ("FCC"), (ii) this Court's September 20, 2011 Order dismissing Plaintiffs' FCC for lack of Article III standing, and (iii) Plaintiffs' repackaged Amended Complaint ("AC"): No named Plaintiff (or anyone) has been harmed by the conduct alleged in the AC, and Plaintiffs therefore lack standing to maintain suit under Article III of the Constitution.

Acutely aware that no one has been harmed in any way (by the actions of the Mobile Industry Defendants or otherwise), Plaintiffs urge the Court, *inter alia*, to (i) consider a press release from the California Attorney General regarding a voluntary agreement among the Attorney General and six companies to develop a standard format for app developers—the one group of defendants that Plaintiffs have *not* included in the FCC or AC—to display privacy policies on mobile devices, (ii) take a "second look" at "recent headlines" that purport to show the value of "personal information," and (iii) examine "a peer-reviewed study"—not involving any named Plaintiff—in which subjects allegedly "quantified the value of their privacy . . . as between $11.33 and $16.58 per improper access" (or possibly "between $7.98 and $16.58"). Opp. at 1, 28, 31. Needless to say, none of this extraneous information has anything whatsoever to do with the named Plaintiffs, or any harm they allegedly suffered, and it comes nowhere close to establishing a "case or controversy."

Plaintiffs also try to manufacture standing by asserting two "new" claims against the Mobile Industry Defendants that Plaintiffs assert do not require a showing of economic harm: an alleged violation of the Stored Communications Act and an alleged violation of the right to privacy set forth in the California Constitution. These claims were not stated in Plaintiffs' previous Complaint, for good reason: Neither of these claims comes remotely close to covering the conduct alleged in the AC, a fact that Plaintiffs' brief confirms. But Plaintiffs nonetheless contend that the mere *assertion* of these

MOBILE INDUSTRY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 11-MD-02250-LHK

Gibson, Dunn &
Crutcher LLP

1  additional claims can magically create standing—even though they are based on the same core of facts

2  that Plaintiffs alleged in the FCC:  Facts this Court found were "clearly insufficient" for "purposes of

3  the standing analysis under Article III."  Order at 6.  Plaintiffs are incorrect.  Similarly, Plaintiffs are

4  mistaken that their amorphous, implausible, and non-Plaintiff-specific allegations of "harm" to their

5  iOS devices or "injury" from the collection of their "personal information"—all of which merely are

6  recycled allegations from the FCC—can satisfy Article III's injury in fact requirement.  Moreover, even

7  if the named Plaintiffs could establish an injury in fact, Plaintiffs' brief completely ignores the AC's

8  failure to "provide specific allegations with respect to the *causal connection* between the exact harm

9  alleged (whatever it is) *and each Defendant's conduct or role in that harm*," as this Court clearly

10 directed.  Mot. at 16 (quoting Order at 9 (emphases added)).  Plaintiffs simply lack standing.

11      Finally, even if Plaintiffs could somehow establish standing, none of Plaintiffs' six claims against

12 the Mobile Industry Defendants would state a claim upon which relief could be granted—or even would

13 come close to doing so.  This Court previously found that Plaintiffs' CFAA and trespass to chattels

14 claims failed to state a claim, and nothing in the AC changes those conclusions.  Similarly, as explained

15 in detail in the Mobile Industry Defendants' Motion, Plaintiffs' new SCA, California Constitution,

16 conversion, and common counts claims are meritless; Plaintiffs have not alleged plausibly virtually *any*

17 of the elements required by these claims.  Accordingly, the AC should be dismissed with prejudice.

## II.      ARGUMENT

### A.  Plaintiffs Lack Article III Standing to Pursue Their Claims

#### 1.      Plaintiffs Have Failed to Plead any Injury in Fact

21      The "iDevice Plaintiffs" devote a mere one page to arguing that they have standing to pursue

22 claims against the Mobile Industry Defendants.  *See* Opp. at 28.  The one-page argument purports to

23 "incorporate[] . . . by reference" the "arguments made . . . in support of the Geolocation Plaintiffs'

24 standing," which the "iDevice Plaintiffs" contend "apply with equal force to the iDevice Class claims for

25 violation of their rights under the SCA, CFAA, and the California Constitution."  Opp. at 27-28.

26 Plaintiffs' attempted "incorporation by reference" is meritless.  The theories of "harm" alleged by the

27 two classes, while both lacking in merit, are nonetheless different, and the standing arguments of one

28 cannot be imported wholesale into the standing arguments of the other.  The effort does, however,

Gibson, Dunn &
Crutcher LLP

MOBILE INDUSTRY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 11-MD-02250-LHK

1    provide insight into Plaintiffs' thinking. Specifically, it shows that Plaintiffs appear to believe that the

2    mere *inclusion* of a statutory or constitutional *claim* in a complaint—regardless of whether the alleged

3    *facts* implicate the claim or the *elements* are plausibly alleged—automatically establishes standing.

4    Plaintiffs are incorrect.

5         As explained in the Mobile Industry Defendants' Motion, apart from the addition of a few, sparse

6    details about the handful of apps Plaintiffs allegedly authorized and a few pieces of non-sensitive, non-

7    personally identifying information that allegedly were collected through those apps, the factual

8    allegations contained in Plaintiffs' AC are substantively identical to the factual allegations contained in

9    Plaintiffs' FCC. *See* Mot. at 2-8. In its previous Order, this Court found those allegations "clearly

10   insufficient" for "purposes of the standing analysis under Article III." Order at 6. Plaintiffs now ask the

11   Court to find that those same factual allegations are suddenly sufficient for purposes of Article III

12   standing simply because Plaintiffs have asserted two new claims against the Mobile Industry

13   Defendants—claims for alleged violations of the SCA and California Constitution that on their face have

14   nothing to do with the conduct alleged in the AC. Plaintiffs' attempted end run around the Court's order

15   should be rejected. *Facts* that the Court deemed insufficient to create standing the first time around

16   cannot now create standing just because new *claims* have been asserted. If the rule were otherwise, the

17   standing doctrine would be deprived of all meaning.

18        Plaintiffs argue that courts "have routinely found injury-in-fact where a plaintiff alleges violation

19   of a consumer privacy statute with a private right of action." Opp. at 6. Plaintiffs cite three cases in

20   support of the proposition: *Graczyk v. West Pub. Co.*, 660 F.3d 275 (7th Cir. 2011); *Klimas v. Comcast

21   Cable Comms., Inc.*, 465 F.3d 271 (6th Cir. 2006); and *In re Facebook Privacy Litig.*, 791 F. Supp. 2d

22   705 (N.D. Cal. 2011). As a threshold matter, it is telling that, even though standing was found in each of

23   these cases, each ultimately was dismissed for failure to state a claim. That is precisely what should

24   happen here if Plaintiffs could ever establish standing. But Plaintiffs cannot establish standing, and none

25   of these cases assists them. Rather, in each of these cases, the courts analyzed the "injury" contemplated

26   by the applicable statute and found that the plaintiffs had adequately alleged that they had experienced

27   the specific wrong addressed by the statute. *See Graczyk*, 660 F.3d at 278 (holding that since the

28   plaintiffs alleged that "West Publishing engages in bulk compilation and distribution of their personal

Gibson, Dunn &
Crutcher LLP

1   information, which West Publishing obtains from DMV records, and that this constitutes a disclosure or

2   use of the plaintiffs' personal information that is prohibited by the [Driver's Privacy Protection Act],"

3   the plaintiffs had standing); *Klimas*, 465 F.3d at 276 (holding that where the Cable Communications

4   Policy Act "explicitly permit[ted] cable subscribers to bring a civil action to enforce the privacy

5   measures [of the Act]," the plaintiff cable subscriber's "allegation that the defendant [possibly violated

6   the statute] … taken as true, *ostensibly alleged* an injury under subsection (b) [of the Act]") (emphasis

7   added); *In re Facebook Privacy Litig.*, 791 F. Supp. 2d at 712 (comparing plaintiffs' allegations to the

8   elements of the Wiretap Act and holding they "alleged facts sufficient to establish that they have

9   suffered the injury required for standing under Article III").

10         Such an analysis does not assist Plaintiffs here because, as explained in the Mobile Industry

11   Defendants' Motion, when the conduct and injuries contemplated by the Stored Communications Act

12   and the California Constitution are compared to the allegations in the AC, it is obvious that the

13   allegations in the AC fall far outside of the contemplated conduct and injuries.  *See* Mot. at 13-15.  As

14   explained in the Motion, "the standing question in . . . cases [involving an alleged invasion of a statutory

15   right] is whether the constitutional or statutory provision on which the claim rests properly can be

16   understood as granting persons *in the plaintiff's position* a right to judicial relief."  *Warth v. Seldin*, 422

17   U.S. 490, 500 (1975) (emphasis added).  Here, neither the SCA nor the California Constitution (nor the

18   CFAA, as the Court previously held) can be read to grant persons in the named Plaintiffs' position—*i.e.*,

19   persons who allegedly had *non-personally identifying*, *non-sensitive information* from their iOS devices

20   collected because of apps they authorized—a right to judicial relief.  *See* Mot. at 15.  Moreover, with

21   respect to Plaintiffs' claim under the California *state* Constitution, even if the claim were implicated by

22   the conduct alleged in the AC (it is not), Plaintiffs still would have to show a concrete injury in fact

23   resulting from the alleged violation in order to invoke the jurisdiction of a *federal* court.  *See, e.g., Lee v.*

24   *Chase Manhattan Bank*, 2008 WL 698482, at *5 (N.D. Cal. Mar. 14, 2008) ("[T]he mere allegation of a

25   violation of a California statutory right, without more, does not confer Article III standing.  A plaintiff

26   invoking federal jurisdiction must also allege some actual or imminent injury resulting from the violation

27   . . . .").  The same is true of Plaintiffs' federal statutory claims because "the requirement of injury in fact

28

Gibson, Dunn &
Crutcher LLP

MOBILE INDUSTRY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 11-MD-02250-LHK

1  is a hard floor of Article III jurisdiction that cannot be removed by statute." *Summers v. Earth Island*

2  *Inst.*, 555 U.S. 488, 129 S. Ct. 1142, 1151 (2009).

3        Plaintiffs also argue that the AC "contains far more detailed claims of the concrete and

4  particularized harms suffered by Plaintiffs than the prior complaint and far more than were held

5  sufficient for standing purposes in [*Edwards* and *Jewel*]." Opp. at 28.  Plaintiffs are factually

6  incorrect—the harms alleged in the FCC were identical to the harms alleged here, and the harms alleged

7  in *Edwards* (which remains pending on certiorari before the Supreme Court) and *Jewel* were much more

8  specific than those alleged in the FCC or the AC (*see* Mot. at 15, 18)—but, beyond the factual

9  inaccuracy, the statement is remarkable because to this day, over fifteen months after the initial *Lalo* suit

10  was filed, ***Plaintiffs still cannot provide a single example of a single person who lost even one penny***

11  ***or suffered any other concrete harm whatsoever***.  Instead, just as they did in their FCC, Plaintiffs

12  collectively allege—without providing a single supporting detail—that they have been economically

13  harmed by "the quantifiable loss of the value of their bandwidth, memory and battery resources; the

14  difference in value between what Plaintiffs paid for their iDevices and what they were worth had the

15  hidden costs been adequately disclosed; and [] the personal data taken from Plaintiffs [that] had

16  economic value to them." Opp. at 28.  The Court properly rejected these speculative allegations of harm

17  in its previous Order, and nothing in the AC should alter that analysis.  Just the opposite:  As noted in the

18  Mobile Industry Defendants' Motion, the few additional details provided by Plaintiffs in the AC *confirm*

19  that Plaintiffs have suffered no injury in fact.  *See* Mot. at 6-8, 10.  Plaintiffs cannot escape this fatal fact

20  by making speculative, *en masse* allegations of harm to their iOS devices[1] or by asking the Court to take

21

22

23      [1]  At bottom, Plaintiffs' allegations of "harm" to their iOS devices center on the claim that
software (*i.e.*, the apps) that Plaintiffs voluntarily authorized and downloaded consumed resources
24  on Plaintiffs' iOS devices.  Of course, any software or computer program by definition consumes
some resources on a computing device.  If that fact alone (which is all Plaintiffs have alleged here,
25  without any supporting details that their iOS devices were genuinely harmed) amounts to an injury
in fact under Article III, federal courts would be subjected to an onslaught of cases complaining
26  about software features and functionality.  The Court should again reject this speculative theory of
harm as a basis for Article III standing.  The theory is particularly baseless with respect to the
27  Mobile Industry Defendants since any consumption of resources on an iOS device is caused by the
app itself (which Plaintiffs authorized), not by the Mobile Industry Defendants, who are accused
28  only of receiving some subset of information that already is being collected by the app.  AC ¶ 164.

MOBILE INDUSTRY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 11-MD-02250-LHK

1   a "second look" at Plaintiffs' rejected "personal information" theories by "scan[ning] recent headlines."

2   Opp. at 28.

3       **2.    Plaintiffs Concede That They Have Failed to Plead any Causal Connection
         Between any Harm and Any Defendant's Conduct or Role in That Harm**

4

5           The Mobile Industry Defendants' Motion details how the AC fails to follow the Court's clear

6   instruction that "any amended complaint must provide specific allegations with respect to the *causal*

7   *connection* between the exact harm alleged (whatever it is) *and each Defendant's conduct or role in that*

8   *harm*." Mot. at 16 (quoting Order at 9 (emphases added)).  Because Plaintiffs have no response to this

9   argument, they simply ignore it in their brief.  Plaintiffs consequently have conceded the point.  *See, e.g.,*

10  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1131 (N.D. Cal. 2008).  Accordingly,

11  even if Plaintiffs had pled a cognizable injury in fact (and they have not), the AC must be dismissed for

12  lack of standing because Plaintiffs have not traced it to the actions of any of the Defendants.

13      **3.    Plaintiffs Do Not Satisfy Prudential Standing Requirements**

14          Plaintiffs likewise do not address the substance of the Mobile Industry Defendants' argument that

15  Plaintiffs also cannot satisfy prudential standing requirements.  Instead, Plaintiffs argue in a footnote that

16  the argument has "no merit" because "Plaintiffs specifically allege in the [AC] that Defendants' conduct

17  was not a standard or legitimate commercial practice."  Opp. at 29 n.21 (citing AC ¶ 238).  Paragraph

18  238 of the AC, however, which Plaintiffs cite in support of this proposition, is an allegation made by the

19  Geolocation Class against Apple, not an allegation made by the iDevice Class against the Mobile

20  Industry Defendants.  At any rate, even if Plaintiffs could allege plausibly that the Mobile Industry

21  Defendants' conduct was not a standard or legitimate commercial practice—and they cannot[2]—Plaintiffs

22  still have failed to satisfy prudential standing requirements for two reasons.  *First*, Plaintiffs' personal

23  objections to the industry-wide practice of using anonymous demographic information obtained from

24  _____

25  [2]   In addition to suing Apple and the Mobile Industry Defendants, Plaintiffs' counsel also has
         sued Google, Microsoft, Amazon, and others (*i.e.*, every major player in this industry) for
26       comparable conduct in separate actions.  *See Del Vecchio v. Amazon.com, Inc.,* 2011 WL 6325910
         (W.D. Wash. Dec. 1, 2011); *In re Google Android Consumer Privacy Litigation,* No. 3:11-md-
27       02264 (N.D. Cal.); *Cousineau v. Microsoft*, No. 2:11-cv-01438 (W.D. Wash.).  Additionally, the
         putative "iDevice Class" includes every person who has ever purchased an iPhone and
28       downloaded a free app from the App Store. AC ¶ 203.  These facts belie Plaintiffs' bald
         suggestion that the complained of practices are not "standard or legitimate."

MOBILE INDUSTRY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 11-MD-02250-LHK

mobile apps to deliver advertising or compile aggregate statistics is unrelated to the "zone of interests" Congress sought to protect in enacting the SCA (or the CFAA and ECPA). *See* Mot. at 16-17. *Second*, Plaintiffs should not be able to "call[] upon [the courts] to decide abstract questions of wide public significance"—here, what industry-wide standards should govern the use of third-party advertising and other services in mobile apps—"even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights." *Warth*, 422 U.S. at 500; *see also* Mot. at 16-17. Here, as Plaintiffs repeatedly point out, Congress is actively considering and debating various measures relating to the collection and use of consumer data. *See, e.g.*, Opp. at 21-22, 26-27. In the meantime, since no one has been harmed by the practices, judicial intervention is unnecessary to protect individual rights. Accordingly, even if Plaintiffs could satisfy Article III standing requirements, they cannot satisfy prudential standing requirements.

**B. Each of Plaintiffs' Separate Claims Against the Mobile Industry Defendants Fails to State a Claim**

Even if Plaintiffs could establish standing, the AC should be dismissed because none of Plaintiffs' six claims states a claim upon which relief can be granted.

**1.      Plaintiffs Fail to State a Claim Under the Computer Fraud and Abuse Act**

In defense of their CFAA claim against the Mobile Industry Defendants, Plaintiffs recycle the same arguments they presented during the previous round of motion-to-dismiss briefing, arguments that properly were rejected by this Court and that have been repeatedly rejected—for over ten years (*see, e.g.*, *DoubleClick*)—in the context of "privacy" cases.

First, no matter what they claim in their brief, Plaintiffs have not plausibly alleged any "damage" or "loss" within the meaning of the statute—not one penny's worth, much less the $5,000 in one year needed to state a claim under the statute. *See* 18 U.S.C. §§ 1030(e)(8)&(11). Plaintiffs' bald assertions that the Mobile Industry Defendants "consumed portions of the 'cache' and/or gigabytes of memory on [Plaintiffs' devices]" and engaged in conduct that will "shorten 'the actual utility and life of the iDevice batteries'" (Opp. at 29) are virtually identical to arguments Plaintiffs made in their last opposition brief. *See* Case No. 10-CV-05878, Docket No. 153 at 27 (Plaintiffs arguing that their CFAA claim should not be dismissed because Defendants' actions allegedly had "resulted in the diversion and consumption of

MOBILE INDUSTRY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 11-MD-02250-LHK

Gibson, Dunn & Crutcher LLP

1    Plaintiff and Class Members' mobile computing resources (such as space, memory, processing cycles,

2    and Internet connectivity) in ways that they did not expect and in ways that diminished the utility and

3    performance of their [iOS Devices]").  As with Plaintiffs' previous allegations, Plaintiffs in the AC have

4    pled no actual *facts* in support of these naked assertions, as they must.  *See Ashcroft v. Iqbal*, 129 S. Ct.

5    1937, 1949 (2009) ("naked assertion[s]" devoid of "further factual enhancement" are insufficient to state

6    a claim); *see also La Court v. Specific Media, Inc.*, 2011 WL 1661532, at *5 (C.D. Cal. Apr. 28, 2011)

7    ("If Plaintiffs are suggesting that their computers' performance was compromised . . . they need to allege

8    facts showing that this is true.").  Nor have Plaintiffs attempted to link these generic allegations to the

9    challenged conduct of the Mobile Industry Defendants, as opposed to Plaintiffs' use of the apps they

10   admittedly chose to install on their devices.

11        Additionally, and remarkably, Plaintiffs continue to argue that they have suffered "loss" on the

12   discredited theory that their "personal information is (1) a scarce asset and Defendants' taking of this

13   asset reduced its value . . ., and (2) a form of currency they may trade, and that Defendants' taking of this

14   data deprived Plaintiffs of the opportunity cost to exchange the data."  Opp. at 30.  This theory of "loss,"

15   which has no factual support and no support in the statute (which specifically defines "loss"), was

16   specifically rejected by this Court in its Order and by Chief Judge Ware (with prejudice) in *In Re Zynga*

17   *Privacy Litigation.  See* Case No. C-10-04680 JW, at *5-6 (N.D. Cal. June 15, 2011) (attached as Exh. B

18   to Docket No. 146, Case No. 10-CV-05878).  The theory cannot be rescued by Plaintiffs' borrowed

19   assertion that they "quantified the value of their privacy, based on a peer-reviewed study, as between

20   $11.33 and $16.58 per improper access."  Opp. at 31.  "Economic damages" in the context of the CFAA

21   refer to instances in which "an individual or firm's money or property are impaired in value, or money or

22   property is lost, or money [was] spent to restore or maintain some aspect of a business affected by a

23   violation."  *Creative Computing v. Getloaded.com LLC*, 386 F.3d 930, 935 (9th Cir. 2004).  Citing to a

24   study based on "consumers who were surveyed as to how much they valued their personal data" (AC

25   ¶ 72(o))—rather than alleging concrete costs incurred as the result of the Defendants' actions—does not

26   qualify as "damage," "loss," or "economic damages."

27        Second, having pled no actual "damage" or "loss," Plaintiffs similarly cannot show that they

28   suffered $5,000 in economic damages in a one-year period, even collectively.  *See* 18 U.S.C. §§ 1030(g)

1  & (c)(4)(A)(i)(I).  Nor have Plaintiffs even "identified the 'single act' of harm by Defendants that would

2  allow the Court to aggregate damages across victims and over time."  Order at 17.  As this Court held,

3  the "single act" requirement does exist, and Plaintiffs do not explain how they can aggregate damages

4  allegedly caused by six companies acting independently of each other and supporting different apps.[3]

5       Finally, just as they did in the last round of briefing, Plaintiffs ask the Court to ignore the specific

6  disclosures Plaintiffs received from Apple (in addition to disclosures from individual apps) that their

7  "information [might be] collected by third parties, which may include such things as location data or

8  contact details," and that they should "learn about the privacy practices of those third parties[,]" which

9  "governed" the collection of such data.  Docket No. 43-1 (Beringer Decl.), Exh. A.  And Plaintiffs once

10  again attempt to draw an invented distinction between the "software Apps," which "they knowingly

11  downloaded," and the Mobile Industry Defendants' "code," which "they did not authorize."  Opp. at 32.

12  This is a distinction without a difference.  The Mobile Industry Defendants' code (to the extent it was

13  part of any apps' software at all) was, at most, part and parcel of the "software Apps" that Plaintiffs

14  "knowingly downloaded."  Indeed, while Plaintiffs insist that the Mobile Industry Defendants' code was

15  "completely unrelated to the functioning of the Apps," the app developers themselves obviously disagree

16  as they included that code in their products.  In short, Plaintiffs have not alleged (and cannot allege)

17  plausibly that they "authorized" some lines of code in the app but not others.  Far from it:  Plaintiffs

18  admit that they authorized each and every app they downloaded.  They have no basis to allege access

19  "without authorization" or in "exce[ss]" of "authorized access" under the CFAA.

**2.       Plaintiffs Fail to State a Claim Under the Stored Communications Act**

21       Plaintiffs' SCA claim is equally without merit.  In fact, the assertion of the claim is so farfetched

22  that it can only be understood as what it is: a transparent attempt to circumvent the Court's previous

23  order.

---

[3]  Plaintiffs cite *Creative Computing* for the proposition that there is no "single act" requirement for CFAA damages.  Opp. at 31-32.  However, in *Creative Computing*, a single business competitor hacked into a plaintiff's private website multiple times, and the court permitted aggregation of alleged damages from the competitor's repeated conduct.  This is in stark contrast to the allegations in this case, where Plaintiffs claim damages caused by the actions of multiple defendants acting independently of one another.

MOBILE INDUSTRY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 11-MD-02250-LHK

Gibson, Dunn & Crutcher LLP

First, as the express language of the statute, the legislative history, and the relevant interpretive case law make clear, Plaintiffs simply are wrong that an iPhone qualifies as "a facility through which an electronic communication service is provided." 18 U.S.C. § 2701(a). *See* Mot. at 20-21. The point is not a close one. As recently explained by another district court, "the statute clearly is not triggered when a defendant merely accesses a physical client-side computer and limits his access to documents stored on the computer's local hard drive or other physical media." *Council on American-Islamic Relations Action Network, Inc.*, 793 F. Supp. 2d 311, 335 (D.D.C. 2011) (citing *United States v. Steiger*, 318 F.3d 1039, 1049 (11th Cir. 2003)); *see also* Mot. at 20-21 (citing cases).

The cases cited by Plaintiffs do not dictate a different conclusion. In *In re Intuit Privacy Litig.*, 138 F. Supp. 2d 1272 (C.D. Cal. 2001), the Court did not expressly consider the "facility" issue since the defendant raised the argument "for the first time in its reply brief." *Id.* at 1275 n.3. And *Expert Janitorial, LLC v. Williams,* 2010 WL 908740 (E.D. Tenn. Mar. 12, 2010), which cited *Intuit*, concerned whether computers belonging to a business with its own proprietary e-mail system could be considered "facilities" under the SCA, *id.* at *5, a far cry from the facts alleged by Plaintiffs.

Moreover, even if an iPhone could be considered to be "a facility through which an electronic communication service is provided," Plaintiffs' SCA claim fails as a matter of law on several other grounds. In fact, this point is definitively established by Plaintiffs' citation to another "facility" case, *Chance v. Ave. A, Inc.*, 165 F. Supp. 2d 1153 (W.D. Wash. 2001). In *Chance*, the court accepted plaintiffs' "rather strained interpretation" that an individual computer might qualify as "a 'facility' through which an electronic communication service is provided," but held that acceptance of this argument was "fatal" to plaintiffs' SCA claim because "[i]f a user's computer is in fact a 'facility' covered under the act, then at a minimum the web site is a 'user' of that communication service," and "[i]t naturally follows that any communication between the individual computer and the web site is a communication 'of or intended for' that user," and therefore outside the scope of the SCA. *Id.* at 1161; *see also* 18 U.S.C. § 2701(c)(2) (no violation of the SCA "with respect to conduct authorized . . . by a user of [an electronic communication] service with respect to a communication of or intended for that user"). So too here: *If* an iPhone is a "facility through which an electronic communication service is provided" (it is not), then an app downloaded by a Plaintiff is (like the website in *Chance*) a "user" of

MOBILE INDUSTRY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 11-MD-02250-LHK

Gibson, Dunn &
Crutcher LLP

1  that service for whom the iPhone's communications are intended.  And indeed, Plaintiffs now concede

2  that if the anonymous data that Plaintiffs contend the Mobile Industry Defendants accessed constituted

3  "electronic communications," they were communications made to "the App developers," Opp. at 34,

4  who under the express language of the statute unquestionably were then free to disclose those

5  communications to the Mobile Industry Defendants.  *See id.*; Mot. at 23.[4]

6      In addition to these failings, Plaintiffs also have been unable to allege that any electronic

7  communications were accessed while they were "in electronic storage."  18 U.S.C. § 2510(17).

8  "Electronic storage" is specifically defined by the statute.  *See* Mot. at 22.  Rather than address the

9  defined term, which, as pertinent to the facts here, "only protects electronic communications stored 'for a

10  limited time' in the 'middle' of a transmission, *i.e.* when an electronic communication service

11  temporarily stores a communication while waiting to deliver it," *In re DoubleClick Privacy Litigation*,

12  154 F. Supp. 2d 497, 512 (S.D.N.Y. 2001), Plaintiffs simply ignore the statutory definition and adopt a

13  colloquial one.  *See* Opp. at 34-35.  And Plaintiffs cite pre-*Twombly*/*Iqbal* case law in support of the

14  proposition that alleging access to "temporarily stored location data" should be "sufficient to satisfy the

15  liberal requirements of Federal Rules of Civil Procedure, Rule 8."  Opp. at 35.  But that is not the law in

16  2012, and Plaintiffs simply have not plausibly alleged access to any electronic communications while

17  they were "in electronic storage" as defined by the statute.

18      Finally, as with their CFAA claim, Plaintiffs have failed to show that any access was "without

19  authorization" or in "exce[ss] [of] an authorization."  *See* Mot. at 22-23.  Plaintiffs' SCA claim never

20  should have been asserted, and it should now be dismissed with prejudice.

21          **3.      Plaintiffs Fail to State a Claim Under the California Constitution, Art. I, Sec. 1**

22      Like Plaintiffs' SCA claim, Plaintiffs' claim for alleged violations of the California constitutional

23  right to privacy was included in the AC for no reason other than to try to circumvent the Court's

24  previous standing decision.  And like Plaintiffs' SCA claim, the claim has nothing to do with the alleged

25  conduct of the Mobile Industry Defendants and fails as a matter of law.

26  _____

27      [4]  If, on the other hand, the data allegedly accessed by the Mobile Industry Defendants was never
    transferred by Plaintiffs to the app developers, there are no "electronic communications" that were

28  accessed, and the SCA claim fails on that ground.  *See* 18 U.S.C. § 2701(a); Mot. at 19-20.

1    As a threshold matter, the claim actually underscores the completely speculative and hypothetical

2  nature of Plaintiffs' alleged harm and therefore confirms Plaintiffs' lack of standing.  For instance,

3  Plaintiffs' brief speculates about the "wealth of information about Plaintiffs' familial, political,

4  professional, religious, and sexual associations that the [Mobile Industry Defendants] *could glean* from

5  access to the geolocation histories . . . stored on [Plaintiffs'] iDevices."  Opp. at 46 (emphasis added).

6  Additionally, with the sole exception of newly added defendant Google, Plaintiffs *do not allege* that any

7  of the Mobile Industry Defendants even collected location information (and all apps must have express

8  user authorization before they can access geolocation data for any purpose, in any event), yet the section

9  of Plaintiffs' brief discussing this claim (on behalf of the "iDevice Class") is littered with references to

10  "GPS monitoring," "GPS data," and "GPS tracking via smartphones."  Opp. at 45-46.

11    Contrary to Plaintiffs' conclusory assertions, Plaintiffs have not pled the existence of a "legally

12  protected privacy interest" in the types of information they allege were passed by the apps to the Mobile

13  Industry Defendants—*i.e.*, their iOS device serial numbers, generic phone properties, anonymous

14  demographic information, and/or activities relating to the use of apps.  *See* Mot. at 25.

15    Similarly, Plaintiffs have not established "a reasonable expectation of privacy in the

16  circumstances."  Plaintiffs' bald assertion that they were not given "any notice that the Apps would share

17  sensitive personal information"—none of which is alleged to have been disclosed in any event—"with

18  third parties such as the [Mobile Industry Defendants] here" (Opp. at 46-47) is flatly belied by the

19  disclosures they were given by both Apple and the apps.  *See* Mot. at 25-26.  Additionally, Plaintiffs'

20  statement that "even if they could have learned of the [Mobile Industry Defendants'] conduct, there was

21  no way for Plaintiffs to curtail it" (Opp. at 47) is also without merit.  As this Court observed in its

22  previous order, "Plaintiffs have alternatives to the iDevices.  In addition, apps such as 'Angry Birds' or

23  'Plants versus Zombies' are nonessential recreational activities."  Order at 11.  If they truly wanted to,

24  Plaintiffs could "curtail" any conduct of the Mobile Industry Defendants that Plaintiffs did not like by

25  deleting the offending app or refraining from using apps altogether (because, as a practical matter,

26  Plaintiffs' complaints would extend to all advertising and analytics in mobile applications).  But there is

27  no allegation that they did so.  In fact, Mr. Lalo bought a new iPhone nine months *after* he filed suit (a

28  fact about which Plaintiffs are utterly silent in their brief).

Gibson, Dunn &
Crutcher LLP

MOBILE INDUSTRY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 11-MD-02250-LHK

1    Finally, Plaintiffs pay lip service to the requirement that a California right to privacy claim must

2    involve "conduct by [a] defendant constituting a *serious* invasion of privacy," *Hill v. Nat'l Collegiate*

3    *Athletic Ass'n*, 7 Cal. 4th 1, 39-40 (1994) (emphasis added), by noting in a final, throwaway sentence

4    that "the extraordinary amount of current regulatory activity more than establishes the serious nature of

5    Defendant's conduct." Opp. at 47.  Plaintiffs do not explain what they mean by this, nor do they point to

6    any regulatory action directed to the Mobile Industry Defendants or the practices challenged here (not

7    surprisingly, since such practices are not unlawful).  Plaintiffs fail to explain how any Mobile Industry

8    Defendant engaged in conduct that is synonymous with "an *egregious* breach of the social norms

9    underlying the privacy right." *Hill*, 7 Cal. 4th at 37 (emphasis added).  Plaintiffs' cursory treatment of

10   this critical element is understandable because the use of information (especially anonymous information)

11   collected from consumers for purposes of delivering advertising, even "without [consumers'] knowledge

12   or permission," "is not an egregious breach of social norms, but routine commercial behavior."

13   *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011).

14              **4.       Plaintiffs Fail to State a Claim for Trespass to Chattels**

15   Plaintiffs' trespass to chattels claim was previously rejected by the Court, and Plaintiffs' AC

16   contains no new facts that would alter that outcome.  As explained by the Court, under well-settled

17   California law, there is no actionable claim for trespass to chattels where there is "no actual or threatened

18   damage to [plaintiff's] computer hardware or software and no interference with its ordinary and intended

19   operation."  Order at 19 (quoting *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1353 (2003)).  In the AC, and

20   again in their Opposition, Plaintiffs simply regurgitate a conclusory, non-Plaintiff-specific laundry list of

21   alleged harms, without providing a single concrete example or supporting detail of actual harm to or

22   interference with an iOS device.  Such bald allegations are insufficient to state a claim.  *See Iqbal,* 129 S.

23   Ct. at 1949.[5]

24

25   _____

26       [5]  Plaintiffs are not assisted by *eBay, Inc. v. Bidder's Edge*, 100 F. Supp. 2d 1058 (N.D. Cal.
     2000), which they cite for the proposition that "even if [d]efendant only used a small amount of

27   eBay's computer system capacity, eBay was deprived of the ability to use that portion." Opp. at
     48.  In *Intel*, the California Supreme Court specifically discussed—at great length— the holding of

28   *eBay*, a case that involved the defendant auction aggregation site "access[ing] the eBay Web site
     about 100,000 times per day," and explained that *eBay* did *not* stand for the proposition "that the
     [Footnote continued on next page]

MOBILE INDUSTRY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 11-MD-02250-LHK

1    Similarly, as discussed at length above, Plaintiffs' oft-repeated assertion that they "voluntarily

2    downloaded the Apps," but did not authorize the "privacy-affecting code that was not necessary or

3    related to the use of the App" (Opp. at 49) has no basis in law or fact.  Plaintiffs indisputably authorized

4    the apps—which are single software files containing multiple lines of code—and Plaintiffs were on

5    notice, as a result of the disclosures of Apple and individual apps, that their "personal information"

6    might be collected.  That is the beginning and the end of the trespass inquiry.

7          **5.     Plaintiffs Fail to State a Claim for Conversion**

8    Plaintiffs' conversion claim also fails as a matter of law.  In fact, the claim is predicated entirely on

9    the same "personal information" theories of harm this Court previously rejected.  *See* Order at 7.  As

10   explained in the Mobile Industry Defendants' Motion, the claim fails for at least three reasons.  First,

11   Plaintiffs' "personal information" simply does not constitute money or property.  *See* Mot. at 28.

12   Plaintiffs contend in their brief that "other courts have found a property right in personal information

13   under other statutes."  Opp. at 50.  Plaintiffs mischaracterize the holdings of those cases, but in any event

14   the cases are irrelevant because those "other statutes" are not asserted here.  Second, regardless of

15   Plaintiffs' conclusory assertions to the contrary, Plaintiffs' alleged "personal information" (*e.g.,* their

16   iOS device serial numbers, generic phone properties, anonymous demographic information, and/or

17   activities relating to the use of apps) is not "an interest capable of precise definition."  Mot. at 28.

18   Finally, and Plaintiffs do not even challenge this point in their brief (nor could they), Plaintiffs have not

19   alleged the central element of a "conversion" claim—*i.e.*, that the Mobile Industry Defendants exercised

20   "dominion" or "exclusive possession or control" over their "personal information."  *Id.* at 28-29.  In

21   other words, Plaintiffs do not allege that their "personal information"—which each of them continues to

22   possess to this day—was "converted" by the Mobile Industry Defendants.  The claim is frivolous and

23   should be dismissed with prejudice.

24

25

26

27   [Footnote continued from previous page]
          actual injury requirement may be dispensed with, and such a suggestion would, in any event, be
28        erroneous as a statement of California law."  *Intel*, 30 Cal. 4th at 1355-57.

Gibson, Dunn &
Crutcher LLP

**6.      Plaintiffs Fail to State a Claim for Common Counts, Assumpsit or Restitution**

Plaintiffs' final, omnibus claim for "common counts, unjust enrichment, restitution and/or assumpsit" also fails as a matter of law.  *First*, the purported factual bases for the claim simply make no sense against the Mobile Industry Defendants.  Plaintiffs argue that Defendants "sold the devices" "without disclosing [a] defect," and "as a result thereof Defendants received money or property from Plaintiffs and Class members."  Opp. at 51.  But the Mobile Industry Defendants never "sold" anything to Plaintiffs, nor did they receive "money or property from Plaintiffs."  Moreover, this Court has held that "valuable data," which is the "property" that Plaintiffs allege the Mobile Industry Defendants received, constitutes neither money nor property nor unjust enrichment.  *See* Order at 19-21.  This holding is not novel.  Indeed, the *DoubleClick* court observed over ten years ago that "although demographic information is valued highly . . . the value of its collection has never been considered an economic loss to the subject . . . [W]e are unaware of any court that has held the value of this collected information constitutes damage to consumers or unjust enrichment to collectors."  *DoubleClick*, 154 F. Supp. 2d at 525.

*Second*, none of the cases cited by Plaintiffs in support of this hodgepodge claim is on point or even marginally relevant.  By way of example, Plaintiffs quote a 1954 case—a case that pre-dates *Twombly* by more than half a century—for the proposition that "common count satisfies the minim[al] requirements of Rule 8(a)."  Opp. at 51 (quoting *Sidebotham v. Robinson*, 216 F.2d 816, 827 n. 4 (9th Cir. 1954)).  Additionally, the authority cited by Plaintiffs *confirms* the Mobile Industry Defendants' argument that "[w]hen a common count is used as an alternative way of seeking the same recovery demanded in a specific cause of action, and is based on the same facts, the common count is demurrable if the cause of action is demurrable."  *McBride v. Boughton*, 123 Cal. App. 4th 379, 394 (2004) (cited in Opp. at 51).  In other words, this claim cannot survive when all of Plaintiffs' other claims fail as a matter of law, which they do.  The claim should be dismissed with prejudice.

### III.      CONCLUSION

Plaintiffs have had ample opportunities to plead facts that would establish standing or state a claim, but they have done neither, and it is clear that they can do neither.  Accordingly, the AC should be dismissed without leave to amend.

MOBILE INDUSTRY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 11-MD-02250-LHK

1    Dated:  April 5, 2012                          Respectfully submitted,

2                                                   GIBSON, DUNN & CRUTCHER LLP

3                                                   By:  /s/
                                                            S. Ashlie Beringer
4
                                                    GAIL E. LEES
5                                                   S. ASHLIE BERINGER
                                                    JOSHUA A. JESSEN
6                                                   GIBSON, DUNN & CRUTCHER LLP
                                                    1881 Page Mill Road
7                                                   Palo Alto, California  94304
                                                    Telephone:  (650) 849-5300
8                                                   Facsimile:   (650) 849-5333
                                                    glees@gibsondunn.com
9                                                   aberinger@gibsondunn.com
                                                    jjessen@gibsondunn.com
10
                                                    Attorneys for Defendant
11                                                  FLURRY, INC.

12
     Dated:  April 5, 2012                          DURIE TANGRI LLP
13
                                                    By:  /s/
14                                                          Michael H. Page

15                                                  MICHAEL H. PAGE
                                                    JOSEPH C. GRATZ
16                                                  GENEVIEVE ROSLOFF
                                                    DURIE TANGRI LLP
17                                                  217 Leidesdorff Street
                                                    San Francisco, California 94111
18                                                  Telephone: (415) 362-6666
                                                    Facsimile:  (415) 236-6300
19                                                  mpage@durietangri.com
                                                    jgratz@durietangri.com
20                                                  grosloff@durietangri.com

21                                                  Attorneys for Defendants
                                                    GOOGLE INC. and
22                                                  ADMOB, INC.

23

24

25

26

27

28

MOBILE INDUSTRY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 11-MD-02250-LHK

Dated:  April 5, 2012                    COOLEY LLP

                                        By:  /s/
                                              Matthew D. Brown

                                        MICHAEL G. RHODES
                                        MATTHEW D. BROWN
                                        COOLEY LLP
                                        101 California Street, 5th Floor
                                        San Francisco, California 94111
                                        Telephone:  (415) 693-2000
                                        Facsimile:  (415) 693-2222
                                        rhodesmg@cooley.com
                                        mbrown@cooley.com

                                        Attorneys for Defendants
                                        ADMARVEL, INC. and
                                        MEDIALETS, INC.


## ATTORNEY ATTESTATION

    Pursuant to General Order 45, I, S. Ashlie Beringer, hereby attest that the above-listed counsel have read and approved the MOBILE INDUSTRY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED, CONSOLIDATED CLASS ACTION COMPLAINT and consent to its filing in this action.

Dated:  April 5, 2012                    GIBSON, DUNN & CRUTCHER LLP

                                        By: /s/
                                              S. Ashlie Beringer

MOBILE INDUSTRY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
Case No. 11-MD-02250-LHK

Gibson, Dunn &
Crutcher LLP