1    GIBSON, DUNN & CRUTCHER LLP
     S. ASHLIE BERINGER, SBN 263977
2    ABeringer@gibsondunn.com
     JOSHUA JESSEN, SBN 222831
3    JJessen@gibsondunn.com
     MOLLY CUTLER, SBN 261192
4    MCutler@gibsondunn.com
     JACOB A. WALKER, SBN 271217
5    JWalker@gibsondunn.com
     1881 Page Mill Road
6    Palo Alto, California  94304
     Telephone:  650.849.5300
7    Facsimile:  650.849.5333

8    Attorneys for Defendant
     APPLE INC., A CALIFORNIA CORPORATION
9

10                    UNITED STATES DISTRICT COURT

11                  NORTHERN DISTRICT OF CALIFORNIA

12                         SAN JOSE DIVISION

13

| In re iPhone Application Litigation | CASE NO. 11-MD-02250-LHK |
|---|---|
| | **<u>CLASS ACTION</u>** |
| | **DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS (1) PLAINTIFFS GUPTA, FREEMAN, M. BURKE, AND W. BURKE, AND (2) CLAIMS OF PUTATIVE GEOLOCATION CLASS FROM PLAINTIFFS' SECOND AMENDED COMPLAINT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** |
| | **<u>HEARING:</u>** |
| | Date:     September 6, 2012 |
| | Time:     1:30 p.m. |
| | Place:    Courtroom 4 |
| | Judge:   The Honorable Lucy H. Koh |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that at 1:30 p.m. on September 6, 2012, or as soon thereafter as the matter may be heard by the above-entitled Court, in the courtroom of the Honorable Lucy H. Koh, 280 South First Street, San Jose, California 95113, Defendant Apple Inc. ("Apple") will and hereby does move for an order dismissing non-resident Plaintiffs Arun Gupta, Dustin Freeman, Marcia W. Burke, and William C. Burke from Plaintiffs' Second Amended Consolidated Class Action Complaint ("SAC") under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Additionally, because Mr. Gupta is the sole representative of the putative "Geolocation Class," the claims asserted on behalf of that class also should be dismissed in their entirety under Rule 12(b)(6).

This Motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the Declaration of S. Ashlie Beringer, the Court's files in this action, the arguments of counsel, and any other matter that the Court may properly consider.

## ISSUES TO BE DECIDED

1.      Can the sole Plaintiff purporting to represent the putative Geolocation Class state claims under California's Unfair Competition Law ("UCL") and Consumers Legal Remedies Act ("CLRA") in light of the presumption against extraterritorial application of those laws, when he is not a resident of California and the conduct about which he complains occurred outside California?

2.      Should Plaintiffs' claims asserted on behalf of the Geolocation Class be dismissed because there is no adequate class representative?

3.      Can Plaintiffs purporting to represent the putative iDevice Class who reside outside of California and who complain of conduct that occurred outside California state claims under the UCL and CLRA in light of the presumption against extraterritoriality?

Gibson, Dunn &
Crutcher LLP

DEFENDANT APPLE'S MOTION TO DISMISS
Case No. CV 11-MD-02250-LHK

1
2

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND .......................................... 2

    A.    May 3, 2012 Hearing on Apple's Motion to Dismiss First Amended Complaint ........ 3

    B.    The Second Amended Complaint .................................................................... 3

        1.    Geolocation Claims ........................................................................... 3

        2.    iDevice Claims ................................................................................. 5

III.  ARGUMENT ....................................................................................................... 5

    A.    Legal Standard ................................................................................................ 5

    B.    Non-Resident Plaintiff Gupta Cannot State A Claim Under The UCL Or CLRA Because California's Legislature Did Not Intend Those Laws To Extend To Occurrences Outside California ................................... 6

    C.    The Geolocation Claims Should Be Dismissed Because There Is No Adequate Class Representative .................................................................... 9

    D.    The Non-Resident iDevice Plaintiffs Cannot State A Claim Under The UCL Or CLRA ........................................................................................ 9

    E.    Dismissal Of The Geolocation Claims With Prejudice Is Appropriate ..................... 10

IV.   CONCLUSION .................................................................................................. 11

Gibson, Dunn & Crutcher LLP

DEFENDANT APPLE'S MOTION TO DISMISS
Case No. CV 11-MD-02250-LHK

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................ 6

*Azeltine v. Bank of America*,
2011 WL 7272309 (D. Ariz. Dec. 16, 2011) ................................................. 6

*Balistreri v. Pacific Police Dep't*,
901 F.2d 696 (9th Cir. 1990)........................................................................... 5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................ 6

*Churchill Vill., LLC v. Gen. Elec. Co.*,
169 F. Supp. 2d 1119 (N.D. Cal. 2000) ......................................................... 7

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ...................................................................... 11

*Gentges v. Trend Micro Inc.*,
No. C 11-5574 SBA, 2012 WL 2792442 (N.D. Cal. July 9, 2012) ......................................... 6, 9

*In re Apple and AT&T iPad Unlimited Data Plan Litig.*,
802 F. Supp. 2d 1070 (N.D. Cal. 2011) ......................................................... 6

*Keegan v. Am. Honda Motor Co.*,
No. 10-CV-9508 MMM, 2012 WL 2250040 (C.D. Cal. June 12, 2012)........................................ 9

*Leong v. Square Enix of Am. Holdings, Inc.*,
No. CV 09-4484, 2010 WL 1641364 (C.D. Cal. Apr. 20, 2010) ..................................... 9

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
350 F.3d 1018 (9th Cir. 2003)......................................................................... 9

*Mazza v. Am. Honda Motor Co., Inc.*,
666 F.3d 581 (9th Cir. 2012).................................................................. 7, 8, 10

*McCann v. Foster Wheeler LLC*,
48 Cal. 4th 68 (2010) ................................................................................... 7, 8

*O'Shea v. Littleton*,
414 U.S. 488 (1974) ........................................................................................ 9

*Rubicon Global Ventures, Inc. v. Chongqing Zongshen Group Import/Export Corp*,
No. 09-818-HA, 2010 WL 4812860 (D. Or. Nov. 19, 2012) ..................................... 11

*Sajfr v. BBG Communications, Inc.*,
No. 20cv2341 AJB, 2012 WL 398991 (S.D. Cal. Jan. 10, 2012) ......................................... 6

DEFENDANT APPLE'S MOTION TO DISMISS
Case No. CV 11-MD-02250-LHK

Gibson, Dunn &
Crutcher LLP

*Sullivan v. Oracle Corp.*,
  51 Cal. 4th 1191 (2011) ........................................................................ 1, 6, 7, 8, 9

*Zinn v. Ex-Cell-O Corp.*,
  148 Cal. App. 2d 56 (1957) ........................................................................ 7, 8

**Statutes**

Federal Rule of Civil Procedure 12(b)(6) ........................................................................ 5

Gibson, Dunn &
Crutcher LLP

DEFENDANT APPLE'S MOTION TO DISMISS
Case No. CV 11-MD-02250-LHK

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

In its June 12, 2012 Order dismissing most of the claims asserted in Plaintiffs' First Amended Consolidated Class Action Complaint with prejudice, this Court allowed two claims to survive.  Both claims allege violations of California consumer protection statutes, specifically California's Unfair Competition Law ("UCL") and Consumers Legal Remedies Act ("CLRA").  During the May 3, 2012 hearing on Apple's motion to dismiss—the hearing that preceded the Court's June 12 Order—this Court identified various legal issues Plaintiffs needed to consider in light of the fact that the only surviving claims were California state law claims.  Specifically, noting "the two tentatively surviving causes of action," the Court asked Plaintiffs' counsel, "So what are you going to do?  Are you going to find new plaintiffs?"  Declaration of S. Ashlie Beringer ("Beringer Decl."), Ex. A (May 3, 2012 Hearing Tr.) at 73:10-12.  Plaintiffs' counsel responded that it was Plaintiffs' "intention to make sure that by the time we get to class certification, that we have plaintiffs who unambiguously have standing."  *Id.* at 73:21-25.

Two months later, however, and at least seven months after Plaintiffs first attempted to assert claims on behalf of a separate and distinct Geolocation Class, Plaintiffs filed a Second Amended Consolidated Class Action Complaint ("SAC") that contained a sole representative of the proposed Geolocation Class, non-resident Arun Gupta.  Mr. Gupta, who resides in Georgia and does not (and cannot) allege that he purchased his iPhone in California or that the alleged activity underlying his claims occurred in California, lacks standing to pursue claims under the UCL and CLRA as a matter of law.  Indeed, as the California Supreme Court recently affirmed in *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (2011), non-resident plaintiffs like Mr. Gupta who allege claims that arise outside of California may not assert claims under the UCL (or, as other cases have made clear, the CLRA) because to do so would impermissibly result in the application of California's consumer laws to occurrences outside the state.

Under the controlling decision in *Sullivan* and the subsequent decisions of the Northern District of California (and other courts in the Ninth Circuit), Mr. Gupta plainly lacks standing to assert claims against Apple under California's UCL and CLRA.  He must therefore be dismissed

from the SAC.  Moreover, because Mr. Gupta is the sole representative of the putative Geolocation Class, all claims asserted on behalf of this proposed class must likewise be dismissed under well-settled authority that putative class claims cannot go forward when the proposed representative lacks standing.

For the same reasons, three of the six named Plaintiffs purporting to represent the separate iDevice Class—specifically, Alabama residents Marcia and William Burke and Texas resident Dustin Freeman, who purchased and used the iPhones and apps that give rise to their claims in states other than California—also lack standing to pursue claims under the UCL and CLRA and should be dismissed from the SAC.

Finally, because further amendment of the SAC on behalf of the Geolocation Class would be futile, the claims of the Geolocation Class should be dismissed with prejudice.  Plaintiffs have had multiple opportunities to identify appropriate plaintiffs but have been unable to locate a single California plaintiff to represent the putative Geolocation Class.  Given the extremely obscure, time-limited, and fact-intensive nature of the geolocation claims, it is extremely unlikely that they could ever do so.  This litigation has been pending for more than one year, and Apple is moving forward expeditiously with discovery in anticipation of class certification briefing in less than three months. Apple should not be put to the time and expense of continuing to defend against geolocation claims when there is no named plaintiff with standing to assert those claims under the UCL and CLRA.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

This action encompasses multiple cases originally filed against Apple and several third-party app developers, advertisers, and data analytics companies ("Mobile Industry Defendants") that were consolidated into a single proceeding before this Court on March 15, 2011.  Thereafter, this proceeding was combined with several actions involving substantially similar allegations and transferred to this Court by the Judicial Panel on Multidistrict Litigation on August 25, 2011.

The Court dismissed the First Consolidated Class Action Complaint on September 20, 2011 on the basis that Plaintiffs lacked Article III standing but granted Plaintiffs leave to amend.  *See* Dkt. No. 8.  Plaintiffs then filed a First Amended Consolidated Class Action Complaint ("FAC") on November 22, 2011, purporting to assert thirteen claims against Apple and five Mobile Industry

1    Defendants. *See* Dkt. No. 25.  By Order dated June 12, 2012, the Court dismissed all claims in the

2    FAC against the Mobile Industry Defendants with prejudice, and separately dismissed all claims

3    against Apple with prejudice, with the exception of claims asserted under California's UCL and

4    CLRA. *See* Dkt. No. 69 at 44.  Thus, while Plaintiffs' FAC purported to assert both state and federal

5    claims (including claims under the Wiretap Act, Stored Communications Act, and Computer Fraud

6    and Abuse Act) on behalf of the Geolocation Class, after this Court's June 12 Order, only two

7    California state law claims survived.

8    **A.     May 3, 2012 Hearing on Apple's Motion to Dismiss First Amended Complaint**

9              During the May 3, 2012 hearing on Apple's motion to dismiss Plaintiffs' FAC, the Court

10   identified various legal issues Plaintiffs needed to consider in light of the fact that the only claims the

11   Court was allowing to survive Apple's motion to dismiss were California state law claims.

12   Specifically, noting "the two tentatively surviving [California] causes of action," the Court asked

13   Plaintiffs' counsel, "So what are you going to do?  Are you going to find new plaintiffs?"  Beringer

14   Decl., Ex. A at 73:10-12.  Plaintiffs' counsel responded that it was Plaintiffs' "intention to make sure

15   that by the time we get to class certification, that we have plaintiffs who unambiguously have

16   standing." *Id.* at 73:21-25.

17             Although Plaintiffs' class certification motion is due in less than three months—and although

18   Plaintiffs have already been on specific notice of the need to find a suitable class representative for

19   the Geolocation Class for almost three months—Plaintiffs' third pleading again purports to assert

20   geolocation claims under California's UCL and CLRA with a sole named Plaintiff and proposed class

21   representative who resides in Georgia.

22   **B.     The Second Amended Complaint**

23             On July 3, 2012, Plaintiffs filed the SAC, which renews claims on behalf of two putative

24   nationwide classes of individuals who allegedly "had personal data collected from their respective

25   iPhones" under specified circumstances.  SAC ¶ 1.

26   **1.     Geolocation Claims**

27             The sole "Geolocation Plaintiff"—Arun Gupta (a Georgia resident)—purports to assert claims

28   under the UCL and CLRA stemming from allegations that unspecified "geolocation information" was

transmitted from his iPhone to Apple's servers after he turned off the Location Services feature on his phone.  SAC ¶¶ 21-24.[1]

Plaintiffs have substantially narrowed the theory of the "geolocation" claims in the SAC based on information Apple furnished to Plaintiffs before filing.  Plaintiffs now allege merely that certain anonymous "geolocation information" was transmitted from certain users' iPhones to Apple's servers when Location Services was disabled on the phone.  SAC ¶ 34.  Crucially, Plaintiffs do not (and cannot in good faith) continue to allege that Apple *collected* any "geolocation information," or that it *tracked* the location of a single user or device—and Apple did not.  *Compare* FAC ¶ 46 ("[D]ata revealing his geolocation was *collected* and transmitted to Apple's servers without his authorization") (emphasis added) *with* SAC ¶ 34 ("[I]t appears that data revealing his geolocation was nonetheless *transmitted* to Apple.") (emphasis added).  Likewise, Plaintiff Gupta has removed all allegations concerning his earlier, erroneous claim that his iPhone contained a "consolidated.db" file containing "a timeline and map of Plaintiffs' every move," together with claims that this file consumed various device resources.  FAC ¶¶ 116, 151, 152; FAC ¶¶ 118-122.  Finally, Plaintiffs removed unsupported (and incorrect) allegations from their earlier pleadings insinuating that Apple was lying when it attributed certain behavior to the operation of an unintentional "bug."  *See* FAC ¶¶ 147, 149.

Mr. Gupta alleges that he purchased an iPhone 4 in or around December 2010, and that "[d]uring the relevant time period, [he] set the Location Services function on his iPhone to 'Off.'" SAC ¶¶ 33-34.  Mr. Gupta alleges that "[n]otwithstanding his attempt to turn off geolocation tracking, it *appears* that data revealing his geolocation was nonetheless transmitted to Apple." *Id.* at ¶ 34 (emphasis added).  Mr. Gupta does not allege that he purchased his iPhone in California or that he has any connection with California.

Although Mr. Gupta is a Georgia resident, he purports to assert claims under the UCL and

---

[1] Plaintiffs also reassert a claim for "Violations of the Stored Communications Act"—which this Court dismissed with prejudice—on behalf of the Geolocation Class as a "Third Claim for Relief," "for appeal purposes only."  SAC, p.41 n.16.  Although Apple disagrees that this is necessary to preserve this claim for appeal, Plaintiffs have confirmed that they do not intend to pursue this claim, and accordingly, Apple will not address the claim here.

1    CLRA on behalf of a putative "Geolocation Class" consisting of: "All individual and entities in the

2    United States and its territories that have turned Location Services 'off' on their iPhones prior to

3    April 27, 2011, and have unwittingly, and without notice or consent transmitted location data to

4    Apple's servers."  SAC ¶ 167.

5        **2.    iDevice Claims**

6        Separately, the so-called "iDevice Plaintiffs" continue to assert that Apple designed a mobile

7    computer that allows third-party app developers to collect and share supposedly "personal

8    information" from their iPhones when they use certain third-party apps.  SAC ¶¶ 12-13.  Critically,

9    the iDevice Plaintiffs do not (and cannot) allege that Apple *itself* has collected or transmitted any of

10   this purported "personal information" from their devices.  Instead, Plaintiffs complain that Apple: (i)

11   approved these third-party apps for distribution before users could download the application software

12   on their phones (SAC ¶ 1); (ii) designed a mobile operating system that allowed third-party software

13   applications to run on and interact with users' devices (*id.* ¶ 6); and (iii) supposedly "failed to

14   disclose to Plaintiffs that, inter alia, those 'free' apps collected Plaintiffs' information and sent it to

15   third parties . . . ."  *Id.* ¶ 12.

16       Of the six named Plaintiffs asserting iDevice claims, two (Marcia and William Burke) reside

17   in Alabama, one (Dustin Freeman) resides in Texas, and the remaining three (Anthony Chiu, Heather

18   Kimbrel, and Cameron Dwyer) reside in California.  SAC ¶¶ 26-31.  Although the three non-resident

19   Plaintiffs purchased and use their devices entirely in states other than California (Alabama and

20   Texas), each purports to assert claims under California's UCL and CLRA on behalf of a nationwide

21   class consisting of: "All persons residing in the United States who have purchased iPhones and

22   downloaded free Apps from the App Store on a mobile device that runs Apple's iOS."  SAC ¶ 166.

23                        **III.    ARGUMENT**

24   **A.    Legal Standard**

25       Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to

26   state a claim if the plaintiff either fails to state a cognizable legal theory or has not alleged sufficient

27   facts to support a cognizable legal theory.  *See, e.g., Balistreri v. Pacific Police Dep't*, 901 F.2d 696,

28   699 (9th Cir. 1990).  A complaint should be dismissed for failure to satisfy Federal Rule of Civil

Gibson, Dunn &
Crutcher LLP

Procedure 8(a) when a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has facial plausibility only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**B.      Non-Resident Plaintiff Gupta Cannot State A Claim Under The UCL Or CLRA Because California's Legislature Did Not Intend Those Laws To Extend To Occurrences Outside California**

Plaintiff Gupta cannot state claims under California's consumer protection statutes because he resides in Georgia and his allegations are based on events that occurred in the states where he purchased and used his iPhone—not in California.  *See Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (2011).  "California courts have long acknowledged a general presumption against the extraterritorial application of state laws."  *Gentges v. Trend Micro Inc.*, No. C 11-5574 SBA, 2012 WL 2792442, at *6 (N.D. Cal. July 9, 2012) (citing *Sullivan*, 51 Cal. 4th at 1207).  In particular, the California Supreme Court recently confirmed:

> However far the Legislature's power may theoretically extend, we presume the Legislature did not intend a statute to be operative, with respect to occurrences outside the state, . . . unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history.  Neither the language of the UCL nor its legislative history provide any basis for concluding the Legislature intended the UCL to operate extraterritorially.      Accordingly, *the presumption against extraterritoriality applies to the UCL in full force.*

*Sullivan*, 51 Cal. 4th at 1207 (internal quotation marks and citations omitted; emphasis added).

Applying this presumption, "state and federal courts have concluded that the UCL and CLRA do not reach claims of non-California residents arising from conduct occurring entirely outside of California."  *Gentges*, 2012 WL 2792442, at *6; *see also Sajfr v. BBG Communications, Inc.*, No. 10cv2341 AJB, 2012 WL 398991 at *4–5 (S.D. Cal. Jan. 10, 2012) (citing *Sullivan* and dismissing claims under UCL where alleged conduct giving rise to liability occurred outside California); *In re Apple and AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1076 (N.D. Cal. 2011) (Whyte, J.) (dismissing CLRA and UCL claims by non-California residents who purchased their iPad and data plans outside of California); *Azeltine v. Bank of America*, 2011 WL 7272309, at *7 (D. Ariz. Dec. 16, 2011) (citing *Sullivan* and dismissing UCL claims where plaintiff was not a resident of

1   California and the purported misconduct did not occur in California); *Churchill Vill., LLC v. Gen.*

2   *Elec. Co.*, 169 F. Supp. 2d 1119, 1126–27 (N.D. Cal. 2000) (rejecting UCL claims by non-California

3   consumers where none of the defendant's written or oral communications made in California were

4   directed to consumers outside the state), *aff'd*, 361 F.3d 566 (9th Cir. 2004).

5          Critically, in *Sullivan,* the California Supreme Court held that the presumption against

6   extraterritorial application of the UCL applies even where the challenged practices were conceived

7   and implemented by a California defendant from its corporate headquarters in California.

8   Specifically, the Court found that Oracle's decision to classify certain employees as exempt from the

9   FLSA's overtime laws, made and implemented from Oracle's California headquarters, did not justify

10  applying the UCL to non-resident plaintiffs' claims based on unpaid wages stemming from that

11  policy.  *Sullivan*, 51 Cal. 4th at 1191.  Likewise, in *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d

12  581 (9th Cir. 2012), the Ninth Circuit held that the location of the relevant "occurrence" for purposes

13  of plaintiffs' UCL claims was the state where each customer purchased or leased a car in reliance on

14  defendant Honda's alleged misstatements—notwithstanding that Honda's corporate headquarters, the

15  advertising agency that produced the allegedly fraudulent misrepresentations, and one-fifth of the

16  proposed class members were located in California.  *Id.* at 590, 593-94; *see also id.* at 594 (The "last

17  events necessary for liability as to the foreign class members—***communication*** of the advertisements

18  to the claimants ***and their reliance thereon in purchasing vehicles***—took place in the various

19  foreign states, not in California.") (emphasis added); *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68,

20  94 n.12 (2010) (the geographic location of an omission is the place of the transaction where it should

21  have been disclosed); *Zinn v. Ex-Cell-O Corp.*, 148 Cal. App. 2d 56, 80 n.6 (1957) (concluding in

22  fraud case that the place of the wrong was the state where the misrepresentations were communicated

23  to the plaintiffs, not the state where the intention to misrepresent was formed or where the

24  misrepresented acts took place).

25         Here, as in *Sullivan* and numerous other decisions rejecting the application of the UCL and

26  CLRA to non-residents' claims, Plaintiff Gupta's claims hinge entirely on events that occurred

27  outside of California—specifically, in Georgia and other states where Mr. Gupta purchased and used

28  his iPhone.  Indeed, Mr. Gupta's core allegation is that although he "set the Location Services

1   function on his iPhone to 'Off,'" it "appears" that unspecified data revealing his location was

2   transmitted *from his iPhone* to Apple.  SAC ¶ 34.  Each of these alleged events occurred (if at all)

3   where Mr. Gupta resides—not in California.  Mr. Gupta necessarily turned off the Location Services

4   setting on his device (an event that, like turning the power on and off, is not sent to or recorded by

5   Apple) in Georgia, where Mr. Gupta resides.  *Id.* ¶ 33.  And any "information" that was subsequently

6   transmitted from his iPhone also was sent from Georgia.  Likewise, Mr. Gupta's contention that "he

7   would have paid significantly less money for his iPhone" if he had "known" of these alleged events

8   implicates the location where Mr. Gupta purchased his iPhone—again, <u>not</u> California.  *Id.*; *see*

9   *Mazza*, 666 F.3d at 594 (law of states where class members purchased vehicles in reliance on

10   allegedly deceptive advertisements generated in California applied under California's governmental

11   interest test); *McCann*, 48 Cal. 4th at 94; *Zinn*, 148 Cal. App. 2d at 80 n.6.

12       Indeed, one of the main reasons this Court allowed Plaintiffs' UCL and CLRA claims to

13   survive (unlike in Plaintiffs' first consolidated complaint) was because Plaintiffs changed their theory

14   to focus on the purchase of the iPhone itself and the alleged misrepresentations surrounding that

15   purchase.  *See* Dkt. No. 69 at 34 ("The gravamen of the CLRA claim of the Geolocation Class is not

16   that free apps downloaded by Plaintiffs were deficient, but rather that the iPhones (a 'good' covered

17   by the CLRA) purchased by the class members did not perform as promised based on a specific

18   functionality of the device."); *id.* at 35 (explaining Plaintiffs' new theory of a UCL violation based on

19   "the loss of money or property . . . in the form of the allegedly overinflated cost of the iDevice itself

20   as a result of the false statements regarding the geolocation features of the device").

21       In short, because there is no alleged nexus between Mr. Gupta's claims and California other

22   than Apple's presence in California, Plaintiff Gupta's proposed application of the UCL and CLRA

23   would cause California law to operate impermissibly with respect to occurrences outside the state.

24   *See Sullivan*, 51 Cal. 4th at 1198–199.  As the California Supreme Court recently affirmed, nothing in

25   the language or legislative history of the UCL (or CLRA) suggests that California's legislature

26   intended to govern conduct occurring in another state—a state with its own, distinctive consumer

27   protection laws—solely because the claims are directed to a California company.  *See id.*

28   Accordingly, Mr. Gupta's claims should be dismissed with prejudice.

DEFENDANT APPLE'S MOTION TO DISMISS
CASE NO. CV 11-MD-02250-LHK

**C.     The Geolocation Claims Should Be Dismissed Because There Is No Adequate Class Representative**

It is well-settled that claims asserted on behalf of a putative class cannot go forward where, as here, the named plaintiff lacks standing or fails to state a legally sufficient claim for relief.  *See O'Shea v. Littleton*, 414 U.S. 488, 494–95 (1974).  Because Mr. Gupta's claims fail for the incurable reasons addressed above, this also requires dismissal of all claims on behalf of the proposed Geolocation Class because Plaintiff Gupta is the sole representative of that proposed class.  *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022–24 (9th Cir. 2003); *see also Leong v. Square Enix of Am. Holdings, Inc.*, No. CV 09-4484, 2010 WL 1641364, at *3 (C.D. Cal. Apr. 20, 2010) (explaining that "[i]n a class action, at least one named plaintiff must have standing," and dismissing class action complaint for lack of standing)*; Keegan v. Am. Honda Motor Co.*, No. 10-CV-9508 MMM, 2012 WL 2250040, at *32 n.129 (C.D. Cal. June 12, 2012) ("[A] plaintiff who is not a resident of a state lacks standing to represent a class of individuals asserting claims under the laws of that state.") (citation omitted).

**D.     The Non-Resident iDevice Plaintiffs Cannot State A Claim Under The UCL Or CLRA**

Similarly, non-resident iDevice Plaintiffs Dustin Freeman, Marcia Burke, and William Burke also cannot assert claims under the UCL or CLRA because their claims, too, turn on conduct that occurred outside California.  *See Sullivan*, 51 Cal. 4th at 1198; *Gentges*, 2012 WL 2792442, at *6.

The iDevice Plaintiffs' claims, on their face, arise from the *use of third-party apps running on their individual iPhones*, through which Plaintiffs allege that "personal data [was] collected from their respective iPhones" and then transmitted to third-party advertising networks and analytics companies—not Apple.  *See* SAC ¶ 1 (alleging that "Plaintiffs had personal data *collected from their respective iPhones* using Apple-approved mobile applications") (emphasis added); *see also* SAC ¶¶ 44-49 (detailing data allegedly collected by apps and transmitted to third parties on Plaintiffs' iPhones).  Necessarily, the collection and disclosure of data from Mr. Freeman's and Mr. and Ms. Burkes' iPhones—the last events necessary for liability under Plaintiffs' theory—occurred in the states where these non-resident Plaintiffs resided and used the free apps they installed onto their devices that allegedly engaged in these practices.  SAC ¶ 16.  Likewise, Plaintiffs contend that they

Gibson, Dunn & Crutcher LLP

DEFENDANT APPLE'S MOTION TO DISMISS
CASE NO. CV 11-MD-02250-LHK

1    were harmed by the consumption of resources *on their devices* as a result of the transmission of data

2    by these apps to third parties—purported harm that would have been felt (if at all) in their states of

3    residence.  SAC ¶ 160.

4         Moreover, like Plaintiff Gupta, the non-resident iDevice Plaintiffs contend that they were

5    "misled into purchasing a product that did not meet their reasonable expectations," SAC ¶ 66, thus

6    implicating the respective states where they received and relied on any alleged statement or omission

7    when purchasing their iPhones—not California.  *Mazza*, 666 F.3d at 593–594.  For this reason, and as

8    demonstrated above, the non-resident iDevice Plaintiffs' claims are governed by the laws of the states

9    where they purchased their iPhones and downloaded and used the apps that give rise to their claims—

10   not California—because that is where the relevant conduct occurred.  *See* Section III.B, *supra*.

11        In short, there is no basis for extending California law to the non-resident iDevice Plaintiffs—

12   and in so doing, abrogating the substantive law of these Plaintiffs' home states, where the allegedly

13   wrongful conduct occurred.  Because these non-residents have no standing to assert the iDevice

14   claims under California's consumer protection statutes, their claims must be dismissed as well.

15   **E.    Dismissal Of The Geolocation Claims With Prejudice Is Appropriate**

16        This Court should dismiss the claims asserted by Plaintiff Gupta on behalf of the Geolocation

17   Class with prejudice.  Because Mr. Gupta lacks standing to assert claims under California's consumer

18   protection laws arising from his purchase and use of his iPhone outside of California, he will never be

19   able to pursue claims under the UCL or CLRA, and thus amendment would be futile.

20        Nor should Plaintiffs be given another opportunity to locate a California plaintiff to assert

21   geolocation claims at this late stage, having received ample notice of the need to do so.  Indeed, this

22   Court put Plaintiffs on notice of this issue almost three months ago, during the May 3, 2012 hearing.

23   *See* Beringer Decl., Ex. A at 73:10-12.  At that time, Plaintiffs acknowledged the need to identify

24   adequate class representatives.  *See id.* at 73:22-25.  Yet when filing their Second Amended

25   Complaint months later, Plaintiffs simply failed to do so for the proposed geolocation claims.

26        In more than one year of litigation, Plaintiffs have not been able to identify a single named

27   plaintiff in California capable of asserting factually supported UCL and CLRA claims on behalf of

28   the proposed Geolocation Class—and it is extremely unlikely that they could ever do so.  Because

Plaintiffs have had ample opportunity to locate a plaintiff capable of representing this class, the claims asserted on behalf of the Geolocation Class should be dismissed with prejudice. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (recognizing that dismissal with prejudice is appropriate where it is clear "that the complaint could not be saved by amendment" and that courts should consider "repeated failure to cure deficiencies" and "undue prejudice to the opposing party" as well as "futility of the amendment"); *Rubicon Global Ventures, Inc. v. Chongqing Zongshen Group Import/Export Corp*, No. 09-818-HA, 2010 WL 4812860, at *3 (D. Or. Nov. 19, 2012) (dismissing complaint with prejudice where plaintiffs "have had ample opportunities to clarify their claims and failed to do so").

## IV.   CONCLUSION

For each of the foregoing reasons, Plaintiffs Arun Gupta, Dustin Freeman, Marcia Burke, and William Burke should be dismissed from the SAC.  In addition, because the putative Geolocation Class lacks an adequate class representative, and Plaintiffs have demonstrated through multiple pleading attempts that they cannot locate an adequate class representative, the claims brought on behalf of the proposed Geolocation Class should be dismissed with prejudice.

Dated: July 27, 2012

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP


By: _/s/_____
                    S. Ashlie Beringer

Attorney for Defendant
APPLE INC.

DEFENDANT APPLE'S MOTION TO DISMISS
CASE NO. CV 11-MD-02250-LHK