UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| IN RE iPHONE/iPAD APPLICATION CONSUMER PRIVACY LITIGATION | ) ) ) ) ) ) ) ) ) ) | Case No.: 11-MD-2250-LHK (PSG) **ORDER DENYING PLAINTIFFS' MOTION FOR PROTECTIVE ORDER AND GRANTING-IN-PART PLAINTIFFS' MOTION TO COMPEL PRODUCTION** **(Re: Docket Nos. 97, 98)** |

In this multi-district consolidated class action suit, Plaintiffs Isabella and Alejandro Capiro ("Capiros") seek a protective order to prevent Defendant Apple, Inc. ("Apple") from deposing Samy Kamkar ("Kamkar"), an "independent security expert" whose opinion was attached to an earlier complaint.[1]  The putative class action's lead plaintiffs ("Plaintiffs"), which include the Capiros, also move to compel requests.  Having considered the parties' papers and oral arguments, the court DENIES the Capiros' motion for a protective order and GRANTS the Plaintiffs' request for production.

---

[1] *See* Docket No. 98.

Case No.: CV-12-2250 LHK(PSG)
ORDER RE MOTION TO COMPEL, PROTECTIVE ORDER

# I. BACKGROUND

In their initial consolidated complaint, Plaintiffs accused Apple and other defendants of violating various federal and California statutes and committing various property torts primarily based on two factual allegations: (1) that Apple collected and stored geolocation information from class members owning Apple devices even after the geolocation feature of the devices had been turned off; and (2) that Apple failed to disclose to class members that its operating system allowed third parties to collect and monitor personal information from Apple devices without their consent.[2]  The lead plaintiffs are divided into two groups, the iDevice Class and the Geolocation Class, according to the factual allegations.  The Capiros currently serve as the lead plaintiffs of the Geolocation Class.

Following a motion to dismiss, Judge Koh determined that the factual allegations as pleaded support only two causes of action against Apple: (1) violations of California's Unfair Competition Law ("UCL")[3]; and (2) violations California's Consumer Legal Remedies Act ("CLRA").[4]  She dismissed the other causes of action without leave to amend.[5]  Plaintiffs filed a Third Amended Complaint ("TAC") on October 4, 2012, after bringing the motions at issue here and replaced a former lead plaintiff in the Geolocation class, Arun Gupta ("Gupta"), with the Capiros.[6]

## A.    Document Production

Plaintiffs seek to compel Apple to produce documents responsive to several of their requests.  They argue that Apple impermissibly narrowed the following requests by indicating it

---

[2] *See* Docket No. 25.

[3] *See* Cal. Bus. & Prof. Code § 17200.

[4] *See* Cal. Civ. Code § 1750.

[5] *See* Docket No. 69.

[6] *See* Docket No. 104.

2

Case No.: CV-12-2250 LHK(PSG)
ORDER RE MOTION TO COMPEL, PROTECTIVE ORDER

would provide responses only as they relate to "relevant data" and the "caching query bug" that Apple believes are appropriate under Plaintiffs' claims[7]:

(2)   all documents relating to Apple's investigation of the "Location Services Issue," including but not limited to, any internal or external audits, analyses, studies or reviews or recommendations performed by Apple or any third party, regarding the "Location Services Issue";

(3)   any and all specifications, diagrams, schema, dictionaries, and/or documentation; development documentation and output and analyses of test results, executables, SDKs, APIs, source code, scripts, and command procedure files and libraries; and evaluations, monitoring reports, trouble tickets, and system change logs relating to: (a) consolidated.db database, including but not limited to, the CellLocation, WifiLocation, CellLocationHarvest, and WifiLocationHarvest tables; (b) CLNetworkLocationProvider; and (c) Apple document APPLE_0003487 (produced to Plaintiffs on June 1, 2012), including documents referenced in the 0003487 document and any document referencing the 0003487 document;

(4)   all documents relating to any representations Apple made to consumers and/or App developers and/or other vendors regarding the privacy settings of iDevices;

(5)   all documents relating to iDevice users' ability to prohibit Apple from accessing location data;

(6)   all documents identifying and relating to the manner in which the Apple iDevices access, collect, store, use, and/or transmit location data to Apple or any third party;

(7)   all documents related to the effect on iDevice resource utilization of Apple's collection and storage of users' iDevice geographic location information;

(13)   all documents sufficient to show types of data and personal user information accessible, by methods created or reasonably anticipated by Apple (including, but not limited to APIs and SDKs) to parties other than Apple or the user, as a result of users' installation and/or use of an App;

(15)   all documents concerning the data and personal user information Apple permits App developers to share with third parties;

(21)   all documents evidencing and/or addressing concerns raised and/or complaints made by consumers regarding iDevice privacy or geolocation data (whether by GPS or wifi-hotspot and/or cell tower location data); and

(25)   all statements, announcements, disclosures or press releases issued by Apple relating to geolocation services and/or iPhone privacy.

---

[7] *See* Docket No. 97.

Case No.: CV-12-2250 LHK(PSG)
ORDER RE MOTION TO COMPEL, PROTECTIVE ORDER

Apple objected to any production responsive to the following requests as "overly broad, unduly burdensome, harassing, irrelevant to Plaintiffs' claims, and not reasonably calculated to lead to the discovery of admissible evidence":

(9)     all documents concerning terms of service or privacy policies, including but not limited to the final policies, draft policies, correspondence related to the development of the policies, and correspondence regarding the modification of the policies, produced in chronological order;

(14)    all documents related to Apple's "due diligence" in connection with its attempted acquisition of AdMob, Inc.;

(22)    all documents relating to, prepared for, submitted to, or received form any governmental or legislative body or an agency or representative body of any country, state or other political subdivision, or any law enforcement agency, authority or commission in any country, relating to iDevice or App privacy during the relevant time period, including but not limited to, all documents created or relied upon during the investigation relating to Apple's letter to Congress in May 2011;

(23)    copies of all subpoenas or requests for production of documents issued by any governmental or legislative investigative body, directed to Apple, referring or relating to consumer privacy during the relevant time period;

(24)    all documents relating to, prepared for, submitted to, or received by Apple as a result of any investigation or research conducted either internally or by an outside entity with respect to privacy concerns, distribution of personal information or retention of personal information;

(29)    all documents related to requests from other parties to limit, expand, or otherwise modify the scope of information from and about users and their iDevices that is available to Apps and third parties through technologies or routines provided by Apple; and

(30)    all documents related to Apple's consideration of or efforts to limit, expand, or otherwise modify the means for obtaining information from and about users and their iDevices that is available to Apps and third parties through technologies or routines provided by Apple.

Apple limited its response to the following request to documents concerning "analysis of privacy and/or security issues related to the transmission of a device's UDID to Apps or other third parties":

4

United States District Court
For the Northern District of California

(18)    all documents concerning and/or related to privacy, personal information, and security risks specifically associated with making UDID information available to Apps and/or third parties, including but not limited to, all emails or other communications to and/or from members of the Apple Board of Directors, and/or to and/or from members of Apple's senior management team.

## B.    Protective Order

As noted above, before Plaintiffs filed the TAC, the lead plaintiff for the Geolocation Class was Arun Gupta ("Gupta").[8]  Gupta retained Kamkar before filing his suit and requested that Kamkar investigate and draft a report to determine whether Apple's iPhone continued to transmit data even after a user deactivated its Location Services feature, which provides the geolocation of the phone.[9]  To "bolster his pleadings," Gupta attached the report to his complaint.[10]

Apple subpoenaed Kamkar and requested both to depose him and for production of all documents he relied on in compiling his report.  Gupta sought the protective order at issue here to prevent Apple from executing the subpoena.  The TAC that substituted the Capiros for Gupta does not include a copy of Kamkar's report.[11]  The Capiros continue to seek a protective order to prevent Apple from deposing Kamkar and obtaining the documents they request.[12]

## II. LEGAL STANDARDS

## A.    Motion to Compel

Rule 26(b) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  The relevant information "need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible

---

[8] *See* Docket Nos. 25, 104.

[9] *See* Docket No. 98.

[10] *See id.*

[11] *See* Docket No. 104.

[12] *See* Docket No. 111.

5

Case No.: CV-12-2250 LHK(PSG)
ORDER RE MOTION TO COMPEL, PROTECTIVE ORDER

evidence." Relevance under Rule 26(b) is broadly defined, "although it is not without ultimate and necessary boundaries."[13]

The court must limit the frequency or extent of discovery if it is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, or the burden or expense of the proposed discovery outweighs its likely benefit. Upon a motion to compel pursuant to Fed. R. Civ. P. 37(a)(3), the moving party has the burden of demonstrating relevance.[14]

**B.     Protective Order**

"A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending," and the court "may for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[15] A party can establish good cause where it specifically demonstrates "that disclosure will cause a specific prejudice or harm."[16] Accordingly, the court may "forbid[] the disclosure or discovery," "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters," or "prescribe[] a discovery method other than the one selected by the party seeking discovery."[17]

## III.  DISCUSSION

**A.     Motion to Compel**

**1.     Request Nos. 2-7, 13, 15, 21, and 25**

According to Plaintiffs, in its response to Requests 2-7, 13, 15, 21, and 25, Apple stated that it would provide only documents related to "relevant data," or documents related to the "caching

---

[13] *See Gonzales v. Google Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006) (internal citations and quotations omitted).

[14] *See Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995).

[15] Fed. R. Civ. P. 26(c)(1).

[16] *Rivera v. NIBCO, Inc.*, 384 F.3d 822, 827 (9th Cir. 2004).

[17] *Id.*

6

Case No.: CV-12-2250 LHK(PSG)
ORDER RE MOTION TO COMPEL, PROTECTIVE ORDER

query bug." Apple defined "relevant data" as "categories of user and/or device data, including the UDID that is specifically identified" in Plaintiffs' Second Amended Complaint ("SAC") and "caching query bug" as the software problem causing its devices to collect geolocation information when the feature was turned off.[18] The "relevant data" definition primarily applies to the iDevice Class, whereas the "caching query bug" limit primarily concerns the Geolocation Class.

Plaintiffs argue that Apple's responses are inadequate and impermissibly narrow their requests for relevant material. Plaintiffs assert that although they have identified in the SAC all of the categories of relevant data "currently known" to them, they are entitled through discovery to explore what other, if any, categories of data may be relevant to their claims. Plaintiffs further assert that Apple's limitation of documents to those relating to the "caching query bug" impermissibly allows Apple to structure discovery only according to its own defenses, namely that the collection of data was an accidental "glitch" rather than an intentional attempt to gather information from consumers.[19] They also argue that their requests for geolocation information relate to the iDevice Class because it may reveal that location data was also provided to third parties without class members' permission.

Apple responds that Plaintiffs' claims rest solely on their allegation that the UDID "can be used to identify Plaintiffs and aggregate information about them" and that any other categories of data being tracked are outside of Apple's knowledge or access. According to Apple, its limitation of production to the specific data alleged in the complaint therefore is appropriate. It also argues that the geolocation allegations arose from a software bug and it has produced adequate information relating to that bug. As to Plaintiffs' arguments that the geolocation data is also relevant to the iDevice Class, Apple asserts that the file in which location data is collected remains

---

[18] *See* Docket No. 97.

[19] *See* Docket No. 109.

7

Case No.: CV-12-2250 LHK(PSG)
ORDER RE MOTION TO COMPEL, PROTECTIVE ORDER

on the device and "[n]either [the] file nor its contents are ever transmitted to an app or any third party," rendering the geolocation data irrelevant to the iDevice Class.[20]

To the extent that Plaintiffs rely on their desire to supplement their pleadings to support requiring Apple to respond, their argument lacks merit. The Advisory Committee Notes to the 2000 Amendments to Fed. R. Civ. P. 26 highlight that the court "has the authority to confine discovery to the claims and defenses asserted in the pleadings" and that parties have "no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings."[21] For discovery of information relevant only to the subject matter of the action, and not directly relevant to the parties' claims or defenses, the party seeking discovery must provide "good cause,"[22] and Plaintiffs have not provided "good cause" for discovery of information outside of their viable claims.

On the other hand, several of Plaintiffs' requests fit with in the broad interpretation of "relevance" under Fed. R. Civ. P. 26. Plaintiffs' remaining claims arise under California's CLRA and UCL. The CLRA protects consumers against deceptive representations by "any person in a transaction intended to result in the sale or lease of goods" of a product's features.[23] The UCL likewise protects against "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."[24]

Thus, Plaintiffs' requests for documents relating to Apple's representations to consumers about the privacy settings on its devices (Request Nos. 4 and 25), for documents about users' control over those privacy settings (Request No. 5), and for documents relating to the devices'

---

[20] *See* Docket No. 105.

[21] Fed. R. Civ. P. 26 Advisory Committee Note, 2000 Amendment.

[22] *See* Fed. R. Civ. P. 26(b)(1).

[23] *See* Cal. Civ. Code § 1770(a).

[24] Cal. Bus. & Prof. Code § 17200.

8

Case No.: CV-12-2250 LHK(PSG)
ORDER RE MOTION TO COMPEL, PROTECTIVE ORDER

access to and collection, storage, and transmission of personal data to Apple or third parties (Request Nos. 6, 13, 15) or the use of device resources to store the data (Request No. 7) are relevant to Plaintiffs' claims that Apple misrepresented to consumers the degree to which their personal data would be accessible to Apple and others.  Plaintiffs request for documents relating to Apple's study and knowledge of the access to and collection, storage, and transmission of personal data and location data (Request Nos. 2, 3, 21) are relevant to whether Apple engaged in fraudulent or deceptive business practices.

Apple's argument that it may permissibly limit its responses to its understanding of the "caching query bug" lacks merit.  Apple cannot at the discovery stage determine what documents it will produce by referring to its arguments regarding the merits of the case.  Although Apple claims that the geolocation data was collected pursuant to a "bug" in the operating system, Plaintiffs allege that the data was collected intentionally.  That factual allegation survived the motion to dismiss, and so Plaintiffs are entitled to pursue discovery relevant to the allegation.  By limiting its responses to information supporting its theory of the case, Apple would impermissibly skew the evidence Plaintiffs can use to build their case.

Apple's limitation of responses to "relevant data," on the other hand, has more merit. Plaintiffs allege Apple's devices collected and stored only certain categories of data, such as date of birth, gender, income, education level, partners sought, and zip code.[25]  As the court already has noted, Plaintiffs cannot rely on their desire to explore if other types of data were collected to support their requests for discovery.  But Apple's suggestion in its papers that it need only search for and produce documents relating to the UDID is an impermissible limitation.  Plaintiffs are entitled to discovery regarding the factual allegations stated in their complaint, and in its responses to Plaintiffs' requests Apple already has indicated its agreement to produce documents relating to

---

[25] *See, e.g.*, Docket No. 104 ¶¶  40(a), 41(c), 42(a), 42(e).

Case No.: CV-12-2250 LHK(PSG)
ORDER RE MOTION TO COMPEL, PROTECTIVE ORDER

the categories of data Plaintiffs included in the complaint.[26]  If Apple does not possess or have

custody or control over responsive documents, Apple should simply state as much, which would

leave it under no obligation to provide documents relating to that information.[27]

Apple argues that the only factual allegation regarding sharing of data upon which Plaintiffs

rely is the sharing of users' UDID.[28]  But Apple's argument substitutes its theory of the case for

Plaintiffs' allegations.  Apple attempts to reframe the allegations to involve only the UDID

because, according to Apple, the UDID is the means by which the data the devices collects can

personally identify the device user, but Apple's version does not reflect Plaintiffs' actual

allegations.  Plaintiffs allege that the devices share personal information about the users, not just

the devices' UDID.[29]  The sharing of personal information, regardless of its connection to the

users' identity, is the thrust of Plaintiffs' complaint.  Apple's limitation is an impermissible attempt

to narrow Plaintiffs' claims and evidence responsive to those claims.

Plaintiffs' motion to compel more complete document production for Request Numbers 2-

7, 13, 15, 21, and 25 is GRANTED-IN-PART.  Apple may not limit its production to the "caching

query bug" but it may limit its production to categories of data that Plaintiffs alleged in the

complaint were collected.

### 2.    Request Nos. 9, 14, 18, 22, 23, 24, 29, 30

Apple objected to Request Numbers 9, 14, 22-24, 29, and 30 as "vague, ambiguous, overly

broad, harassing, irrelevant to Plaintiffs' claims, and not reasonably calculated to lead to the

---

[26] *See* Docket No. 105.  To the extent that searching to ensure responsive documents do not exist becomes too burdensome, Apple may move for a protective order pursuant to Fed. R. Civ. P. 26(b)(2)(C).

[27] *See* Fed. R. Civ. P. 34(a)(1); *see also Garcia v. Bana*, Case No. C 11-02047 LB, 2012 WL 2119157, at *9 (N.D. Cal. June 9, 2012).

[28] *See id.*

[29] *See* Docket No. 74.

10

Case No.: CV-12-2250 LHK(PSG)
ORDER RE MOTION TO COMPEL, PROTECTIVE ORDER

discovery of admissible evidence."[30]  Plaintiffs argue that each of the requests is relevant to their

causes of action against Apple.

Apple responds that requests for drafts of its privacy policies (Request No. 9) and internal

documents, including emails and communications among its senior management and board of

directors, regarding privacy and personal information (Request No. 18) are irrelevant to Plaintiffs'

claims under the UCL and CLRA because the statutes deal only with representations to

consumers.[31]  Apple notes that it will provide responsive documents prepared at a government's

request (Request No. 22) and government subpoenas (Request No. 23) once Plaintiffs narrow their

request to the factual allegations presented in the SAC.  It asserts that the remaining requests are

overly broad because as written they seek information unrelated to Plaintiffs' claims.

Plaintiffs concede in their reply that at least Request Number 24 is overly broad, but argue

that because Apple sought to provide an overly narrow response, it had no obligation to limit the

request.[32]  They argue that information about Apple's attempted acquisition of AdMob, Inc.

(Request No. 14), drafts of its privacy policies (Request No. 9), and internal communications

(Request No. 18) are relevant to Apple's knowledge and handling of privacy issues that are central

to Plaintiffs' case.[33]  They also argue that government and other investigations (Request Nos. 23,

24) and Apple's response to those investigations (Request No. 22) are relevant to Plaintiffs'

privacy claims.[34]

The court agrees that Plaintiffs' requests, as written, are overly broad.  Plaintiffs' viable

claims under the UCL and the CLRA involve Apple's representations to consumers, its failure to

---

[30] *See* Docket No. 97.

[31] *See* Docket No. 105.

[32] *See* Docket No. 111.

[33] *See* Docket No. 97.

[34] *See id.*

Case No.: CV-12-2250 LHK(PSG)
ORDER RE MOTION TO COMPEL, PROTECTIVE ORDER

United States District Court
For the Northern District of California

comply with those representations, and potential unfair practices arising out of the factual allegations Plaintiffs included. Other than vague references to privacy, Plaintiffs fail to connect their requests to their claims. Their viable claims are not about privacy, per se; they are about Apple's alleged misrepresentations about the extent to which it would share users' data and the extent to which it would store and collect users' data. Their requests, however, seek all information relating to privacy and Apple's devices, which is beyond the scope of their claims. As the court has already noted, Plaintiffs cannot rely on discovery to compile their allegations against Apple.

Accordingly, Plaintiffs' motion to compel responses to Request Numbers 9, 14, 22-24, 29, and 30 are DENIED.

**B.  Protective Order**

Plaintiffs seek a protective order to prevent Apple from deposing Kamkar regarding a report he drafted that was attached to an earlier complaint.[35] Apple served two subpoenas on Kamkar, the first seeking to depose Kamkar regarding his report and the second requesting production of "all Documents received, reviewed or relied on" by Kamkar in compiling his report and in preparing for this litigation.[36]

Plaintiffs assert that they may designate Kamkar as an expert but they have not done so yet – and should not be obligated to do so – because the deadline for designations is November 30, 2012.[37] They argue that the expert discovery procedures in Fed. R. Civ. P. 26 nevertheless apply to Kamkar because Plaintiffs may decide to designate him as an expert at some point before the deadline.[38] And because Plaintiffs have not determined whether they will designate Kamkar as a

---

[35] *See* Docket No. 98.

[36] *See id.* Exs. A, B.

[37] *See* Docket No. 98.

Case No.: CV-12-2250 LHK(PSG)
ORDER RE MOTION TO COMPEL, PROTECTIVE ORDER

testifying or nontestifying expert – if, in fact, they designate him at all – Apple's requests at this point are improper.

Apple argues that it seeks to depose Kamkar not as an expert but as a "percipient witness," and therefore its request is not subject to the expert witness procedures detailed in Fed. R. Civ. P. 26. Apple alternatively argues that even if Kamkar's discussions were subject to the stricter expert witness procedures, Plaintiffs waived any privilege by attaching his report to the earlier complaint.

Plaintiffs respond that Kamkar is not a percipient witness, but rather has an ambiguous position as an expert-not-yet-designated-as-an-expert who is subject to all of the protections under Rule 26 until Plaintiffs decide to designate him as an expert and determine whether he will be testifying or nontestifying. Plaintiffs also argue that the report attached to the complaint is not a waiver of the information in that report or the documents supporting that report because the disclosure happened early in the litigation before Kamkar "entered the judicial arena."

Because the court finds Plaintiffs waived any privilege they may have had, it does not discuss Plaintiffs' other arguments. As to waiver, disclosure to an adverse party is, by its very nature, antithetical to a claim for privilege.[39] Here, Plaintiffs attached Kamkar's report to an earlier complaint that was served on Apple and filed in the public record. Although the plaintiffs and the attachments have changed, the allegations in the subsequent complaints are not substantially different from the earlier complaints. At the very least, Apple is entitled to depose Kamkar regarding the content of the report served upon it and used by a lead plaintiff in this class action to support the allegations against Apple.[40]

---

[38] *See id.*

[39] *See Atari Corp. v. Sega of America*, 161 F.R.D. 417, 420 (N.D. Cal. 1994).

[40] Apple also suggests Kamkar had reported substantially the same findings before this action in two Wall Street Journal articles. Those articles are not before the court, but if true, their existence further supports allowing Apple to depose Kamkar regarding his findings in those public articles.

13

Case No.: CV-12-2250 LHK(PSG)
ORDER RE MOTION TO COMPEL, PROTECTIVE ORDER

The cases Plaintiffs cite do not require a different result.  The court first notes that neither of the two cases on which Plaintiffs rely is from this circuit, let alone this district, and therefore supply only persuasive authority.  The cases are also distinguishable from the dispute at issue here. In *Plymovent Corp. v. Air Technology*, the plaintiff designated an expert witness, submitted a report and videotape in support of a preliminary injunction and in discovery, but then "pulled back" the expert before relying on his research in its case.[41]  The court held the disclosure of the report was not a waiver that subjected the expert to discovery by the defendant.[42]  It relied on the plaintiff's re-designation of the expert, the lack of reliance on the report, and the early stage of litigation to support its determination.[43]  The court noted, however, that the "particular circumstances" of the case led to that result, and that the lack of reliance was a particular factor.[44]

In *Intervet, Inc. v. Merial, Ltd.*, the court likewise found the plaintiff had not waived Rule 26(b)(4)(B) protection from discovery for a nontestifying expert.[45]  In an earlier case between the parties, the expert had provided a declaration in support of a preliminary injunction, but had not been designated as a testifying witness.[46]  The earlier suit was dismissed for lack of standing, with no reliance on the expert's declaration.[47]  The court in the later suit found the expert's declaration was not an effective waiver of the protections of Rule 26.[48]

---

[41] 243 F.R.D. 139, 143 (D.N.J. 2007).

[42] *Id.*
[43] *Id.*

[44] *Id.*

[45] 2007 WL 1797643 (D. Neb. June 20, 2007).

[46] *Id.*

[47] *Id.*

[48] *Id.*

14

Case No.: CV-12-2250 LHK(PSG)
ORDER RE MOTION TO COMPEL, PROTECTIVE ORDER

Unlike in those cases, Plaintiffs here rely on Kamkar's findings.  The subject matter of his report is the basis for the allegations in their complaints.  Plaintiffs rely heavily on the fact that the report was not attached to the TAC – notably filed after Apple's subpoena and this motion – and the lack of reference to the report in Judge Koh's order dismissing several of the claims.

But as the Plaintiffs admit in their motion, Kamkar's findings were the product of an investigation with the goal of initiating this suit, and those findings were incorporated into the complaint.  Plaintiffs have not removed allegations drawn from Kamkar's report.  Thus, unlike in *Plymovent* or *Intervet*, Plaintiffs here rely on Kamkar for their theory of the case and produced a document to the court and to Apple reflecting that reliance.  They have effectively waived the privilege.

Accordingly, Plaintiffs' motion for a protective order is DENIED.

### III. CONCLUSION

The court GRANTS Plaintiffs' motion to compel responses for Requests 2-7, 13, 15, 21, and 25, DENIES Plaintiffs motion to compel responses for Requests 9, 14, 22-24, 29, and 30. Plaintiffs motion for a protective order is likewise DENIED.

**IT IS SO ORDERED.**

Dated: November __21__, 2012

PAUL S. GREWAL
United States Magistrate Judge

*United States District Court*
*For the Northern District of California*

15

Case No.: CV-12-2250 LHK(PSG)
ORDER RE MOTION TO COMPEL, PROTECTIVE ORDER