KAMBERLAW, LLC
SCOTT A. KAMBER (pro hac vice)
skamber@kamberlaw.com.com
DAVID A. STAMPLEY (pro hac vice)
dstampley@kamberlaw.com
100 Wall Street, 23rd Flr.
New York, NY 10005
Telephone: 212.920.3072
Facsimile: 212.202.6364

*Interim Class Counsel*

(Additional Counsel listed on signature page)

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE iPHONE APPLICATION LITIGATION | CASE NO. 11-MD-02250-LHK |
| | **PLAINTIFFS' MEMORANDUM IN SUPPORT MOTION FOR CLASS CERTIFICATION** |
| | **Hearing** |
| | Date:  October 31, 2013 |
| | Time:  1:30 pm |
| | Courtroom:  8 – 4th Floor |
| | Judge – Hon. Lucy H. Koh |

11-MD-02250-LHK

# **TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................... 1

II. APPLE'S COMMON REPRESENTATIONS AND OMISSIONS TO THE CLASS ............. 3

III. CONTROLLING LEGAL AUTHORITY SUPPORTS RULE 23(B) CERTIFICATION OF THE CLASS AND SUBCLASS ........................................................................ 5

IV. THE IDEVICE CLASS AND THE RELATED SUBCLASS HAS SUBMITTED EVIDENCE TO WARRANT ISSUANCE BY THIS COURT OF A RULE 23(B)(2) INJUNCTION AND/OR DECLARATORY RELIEF CLASS ORDER ............................... 8

    A. The iDevice Class Seeks Injunctive and Declaratory Relief Based on Apple's Misrepresentations and Omissions Regarding Personal Identifiers and Seek Rule 23(b)(2) Certification ....................................................................... 8

    B. The iDevice Class Seeks Injunctive and Declaratory Relief Based on Apple's Misrepresentations To The Class Regarding Its Enforcement of App Policies and Seek Rule 23(b)(2) Certification ........................................................ 11

    C. The iDevice Class Seeks Injunctive and Declaratory Relief Based on Apple's Misrepresentations Regarding Data Security and Seek Rule 23(b)(2) Certification ............................................................................................... 12

    D. The iDevice Class Seeks Injunctive and Declaratory Relief Based on Apple's Misrepresentations Regarding Unauthorized Transmissions of Personal Information Resulting in Battery Drain and Costly Bandwidth Usage and Seek Rule 23(b)(2) Certification ............................................................. 14

    E. The Geolocation Subclass Seeks Injunctive and Declaratory Relief Based on Apple's Misrepresentations Regarding Location Services "Off" and Seek Rule 23(b)(2) Certification ......................................................................... 15

V. PREREQUISITES OF FRCP 23(a) HAVE BEEN SATISFIED ........................................... 19

    A. Numerosity ............................................................................................... 19

    B. Commonality ........................................................................................... 20

    C. Typicality and Adequacy ......................................................................... 20

    D. The Class Representatives ....................................................................... 21

        1. Plaintiff Dwyer ............................................................................. 21

        2. Plaintiff Chiu ................................................................................. 22

        3. Plaintiffs Alejandro and Isabella Capiro ...................................... 22

VI. A LIABILITY-ONLY CLASS – FRCP 23(B)(3) IS APPROPRIATE TO ADDRESS APPLE'S UNAUTHORIZED USE OF CLASS MEMBERS BATTERY AND BAND– WIDTH FOR THE COLLECTION OF PERSONAL AND DEVICE DATA IN VIOLATION OF THE SLA AND TERMS OF SERVICE .................................................. 24

VII.     CONCLUSION..................................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*
133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013) ...................................................... 5, 25

*Arnold v. United Artists Theater Circuit, Inc.*
158 F.R.D. 439 (N.D. Cal. 1994) .................................................................. 6

*Burdick v. Union Sec. Ins. Co.*
CV 07-4028 ABC (JCX), 2009 WL 6541608 (C.D. Cal. April 2, 2009)............................. 6

*Californians for Disability Rights, Inc. v. California Dep't. of Transp.*
249 F.R.D. 334 (N.D. Cal. 2008) .................................................................. 6

*Cervantes v. Celestia Corp.*
253 F.R.D. 562 (C.D. Cal. 2008) .................................................................. 19

*Chavez v. Blue Sky Natural Beverages*
268 F.R.D. 365. (N.D. Cal. 2010) .................................................................. 20

*Davis v. Homecomings Financial*
C05—1466 RSL, 2006 WL 2927702 (W.D. Wash. Oct. 10, 2006) ........................................ 6

*Disability Rights Council of Greater Washington v. Washington Metro. Transit Auth.*
239 F.R.D. 9 (D.D.C. 2006) .................................................................. 6, 20

*Ellis v. Costco Wholesale Corp.*
285 F.R.D. 492 (N.D. Cal. 2012) .................................................................. 25

*Gen. Tel. Co. of the Nw., Inc. v. Equal Employment Opportunity Comm'n*
446 U.S. 318, 100 S. Ct. 1698, 64 L. Ed. 2d 319 (1980) ...................................... 20

*Gen. Tel. Co of Sw. v. Falcon*
457 U.S. 147, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982) ...................................... 21

*Gilman v. Brown, CIV S-05-830 LKK*
2013 WL 1904424 (E.D. Cal. May 7, 2013)........................................................ 2

*Hanlon v. Chrysler Corp.*
150 F3d 1011 (9th Cir. 1998).............................................................. 20, 25

*In the Matter of Microsoft Corporation*
Federal Trade Commission, File No. 012 3240, Agreement Containing Consent Order, pp.
2-3, Aug. 8, 2002, *http://www.ftc.gov/os/caselist/0123240/ microsoftagree.pdf* ...................... 4

*In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*
No. 10-4188, __ F.3d __, 2013 WL 3746205 (6th Cir. July 18, 2013)............................. 25, 26

*LaFlamme v. Carpenters Local No. 370 Pension Plan*
    212 F.R.D. 448 (N.D.N.Y. 2003) ................................................................. 1

*Mayer v. Portfolio Recovery Associates, LLC*
    707 F.3d 1036 (9th Cir. 2012) *cert. denied*, 133 S. Ct. 2361, 185 L. Ed. 2d 1068 (U.S.
    2013)............................................................................................................. 6

*McGee v. East Ohio Gas, Co.*
    200 F.R.D. 382 (S.D. Ohio 2001) ............................................................... 6

*McMillon v. Hawaii*
    261 F.R.D. 536 (D. Haw. 2009) ................................................................ 19

*Munoz v. PHH Corp.*
    1:08-CV-0759-AWI-BAM, 2013 WL 2146925 (E.D. Cal. May 15, 2013).......................... 25

*Parsons v. Ryan*
    289 F.R.D. 513 (D. Ariz. 2013) ................................................................... 6

*Pirozzi v. Apple, Inc.*
    12-CV-01529-JST, 2013 WL 4029067 (N.D. Cal. Aug. 5, 2013) ......................... 2

*Santoro v. Aargon Agency, Inc.*
    252 F.R.D. 675 (D. Nev. 2008) .................................................................... 6

*Smith v. Microsoft Corp.*
    11-CV-1958 JLS (BRG), 2012 WL 2975712 (S.D. Cal. July 20, 2012) ...................... 2

*Thomas v. Baca*
    231 F.R.D. 397 (C.D. Cal. 2005) ................................................................. 1

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l*
    *Union, v. ConocoPhillips Co.*
    593 F.3d 802 (9th Cir. 2010) ....................................................................... 5

*Villa v. United Site Servs. of California, Inc.*
    5:12-CV-00318-LHK, 2012 WL 5503550 (N.D. Cal. Nov. 13, 2012) .................... 6

*Wal-Mart Stores, Inc. v. Dukes*
    131 S.Ct. 2541, 180 L. Ed. 2d 374 (2011) .......................................... 2, 5

*Walters v. Reno*
    145 F.3d 1032 (9th Cir. 1998) .................................................................... 5

*Zinser v. Accufix Research Inst., Inc.*
    253 F.3d 1180 (9th Cir. 2001) ................................................................... 25

CALIFORNIA STATUTES

California's Unfair Competition Law ....................................................... passim

Consumer Legal Remedies Act ................................................................................................ 1

UCC ................................................................................................................................. 1, 19

**OTHER AUTHORITIES**

7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure,*
    § 1775 (2d. ed. 1986) ........................................................................................................ 6

Fed. R. Civ. P. 23 ........................................................................................................ 2, 5, 7

Fed. R. Civ. P. 23(a) ............................................................................................ 5, 19, 20, 21

Fed. R. Civ. P. 23(a)(3) ...................................................................................................... 20

Fed. R. Civ. P. 23(b) ..................................................................................................... 5, 19

Fed. R. Civ. P. 23(b)(1) ...................................................................................................... 24

Fed. R. Civ. P. 23(b)(2) ............................................................................................... passim

Fed. R. Civ. P. 23(b)(3) ............................................................................................... passim

## I.   INTRODUCTION

Apple has repeatedly advised this Court that Plaintiffs are wrong on the facts, wrong on the law and plead a case that should have been dismissed early on even in the face of public disclosures (post-filing) of Apple collecting geolocation information and wholesale sharing of personal information with others.  Yet, to date, it is Apple that has made representations on discovery that have lacked credibility and it is Apple that has taken numerous affirmative actions to address the very issues it has so often called a fiction created by Plaintiffs in order to cure misrepresentations and violations of its own privacy policy.

Certification under Rule 23(b)(2) (as well as 23(b)(3) as to liability for the breach of two overlapping violations) is not only appropriate but is tailor-made for the Class Claims asserted by the Plaintiff Class in this litigation.  As explained below, (i) Apple has made common and consistent representations regarding the core issues of this case to each and every member of the proposed Class; (ii) Apple materially breached these representations in multiple ways that are evinced by Apple's own documents, and violate California's Unfair Competition Law ("UCL") and the Consumer Legal Remedies Act ("CLRA"); (iii) each of the breaches happened to at least one of the Named Plaintiffs and can be corrected under Rule 23(b)(2) by appropriate declaratory and injunctive relief; and (iv) two of the same violations of UCC of CLRA are appropriately remedied by the certification of a (b)(3) liability-only class.

As this Court is aware, a Class should be certified under Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "In other words, a class will be certified [under Rule 23(b)(2)] if 'broad class-wide injunctive or declaratory relief is necessary to redress a group-wide injury.'" *LaFlamme v. Carpenters Local No. 370 Pension Plan,* 212 F.R.D. 448, 456 (N.D.N.Y. 2003); *Thomas v. Baca,* 231 F.R.D. 397, 403 (C.D. Cal. 2005).  As shown by Plaintiffs' evidence and expert reports, over the past three years Apple has continued to blatantly fail to protect the privacy interests of Class Members and to inconsistently apply its privacy policies to Apps only available through Apple's App Store following Apple's approval.  As the Supreme Court noted regarding class certification, "even a single [common]

1    question will do." *Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2556, 180 L. Ed. 2d 374 (2011); *see*

2    *also Gilman v. Brown, CIV S-05-830 LKK,* 2013 WL 1904424 (E.D. Cal. May 7, 2013) ("It is sufficient

3    that there be one common question 'apt to drive the resolution of the litigation.'") By and through the

4    Rule 23 process, Plaintiffs hope to ensure that consumers' rights to privacy promised by Apple's

5    representations are appropriately protected by this Court.[1]

6         Throughout the Class Period, Apple repeatedly acted in contravention of representations

7    regarding data privacy and protection it made to Class Members in its Customer Privacy Policy

8    ("Privacy Policy") and Apple's Software License Agreements ("SLAs"). *See* Kamber Decl. Exs. A-

9    E.   The Privacy Policies and SLAs applicable to each of the Plaintiffs are summarized in a chart

10   attached as Exhibit S to the Kamber Decl.   Despite Apple's Counsel's continued discovery

11   gamesmanship[2], Plaintiffs have now learned that Apple has and continues to make misrepresentations

12   to Plaintiffs and Class Members regarding 1) the use and disclosure of personal identifiers such as

13   UDID for most iDevice users – the core of plaintiffs concerns with Apple's past and continuing

14   conduct; 2) its failure to enforce its internal policies regarding privacy; 3) express representations

15   regarding data security; and 4) a failure to fully and accurately disclose the transmission of user data.

16   Apple further breached its representations by failing to honor the geo-location "off" position.   In

17   addition to the above violations property rendered under Rule 23(b)(2), Plaintiffs seek a (b)(3)

18   liability-only class arising from unauthorized transmissions and failure to honor geo-location "off"

19   degraded battery life and forced class members to pay for bandwidth usage charges incurred by

20   others.

---

22   [1] The Court's rulings thus far have provided significant guidance to other privacy cases throughout the
23   United States by defining the intersection of statutory claims and privacy representations. See, e.g.,
     *Pirozzi v. Apple, Inc*., 12-CV-01529-JST, 2013 WL 4029067 (N.D. Cal. Aug. 5, 2013) (citing this
24   Court's ruling on Art. III standing); *Smith v. Microsoft Corp.*, 11-CV-1958 JLS (BRG), 2012 WL
     2975712 (S.D. Cal. July 20, 2012) (citing this Court's ruling on injury in fact for purposes of Art. III
25   standing).

26   [2] Following the stipulation related to discovery sanctions, Apple produced thousands of documents.
     Shortly thereafter, Apple's counsel unilaterally clawedback hundreds of pages of documents.
27   Unfortunately, Plaintiffs do not have access to these documents.  The parties currently are in the meet
     "and" confer process with regard to the clawback and if an agreement cannot be reached, further
28   discovery motion practice will ensue.

## II.    APPLE'S COMMON REPRESENTATIONS AND OMISSIONS TO THE CLASS

For each plaintiff and class member Apple represented that at all times user information would be treated in accordance with the Apple iPhone Software License Agreement ("SLA"), which, in turn, incorporated Apple's Privacy Policy ("Privacy Policy").  Kamber Decl. Ex. C-E. The Privacy Policies themselves made certain, important and general representations about privacy common across all applicable versions. Kamber Decl. Ex. A-B:

- Your privacy is important to Apple. So we've developed a Privacy Policy that covers how we collect, use, disclose, transfer, and store your information. Kamber Decl. Ex. A at APPLE_00029089.

- To make sure your personal information is secure, we communicate our privacy and security guidelines to Apple employees and strictly enforce privacy safeguards within the company. Kamber Decl. Ex. B at APPLE_1034297.

- Apple takes precautions–including administrative, technical, and physical measures–to safeguard your personal information against loss, theft, and misuse as well as against unauthorized access, disclosure, alteration, and destruction. Apple online services such as the Apple Online Store and iTunes Store use Secure Sockets Layer (SSL) encryption on all web pages where personal information is collected… Kamber Decl. Ex. A at APPLE_0002911.

As do the SLAs, for example:

- You agree that Apple and its subsidiaries and agents may collect, maintain and process and use . . .information, including but not limited to information about your iPhone . . . . . as long as it is collected anonymously in a form that does not personally identify you, to improve our products or to provide services or technologies to you. Kamber Decl. Ex. C at APPLE_000076.

Later versions of the agreement provided Apple the opportunity to collect location data only if "locations services [are] turned on. . . ." Kamber Decl. Ex. E at APPLE_0000088.   Apple also represented to end geolocation transmissions when a user or class member opted out: "you may withdrawal this consent at any time by going to the location services setting on your iPhone and either turning off the global location services setting or turning off the individual location settings of each location-aware application on your iPhone." Kamber Decl. Ex. C at APPLE_000076. Apple makes the same contractual promises with regard to its partners and licensees: "the location data inquiries collected by Apple are collected in a form that does not personally identify you and may be used by

Apple and its partners and licensees to provide location-based products and services." Kamber Decl. Ex. E at APPLE_0000082. What is considered personal information is also strictly defined: "personal information is data that can be used to uniquely identify or contact a single person." Kamber Decl. Ex. A at APPLE_0002909.

Apple *required* Plaintiffs, along with all Class Members, to accept the adhesive terms of its Privacy Policy in order to use the App Store. Indeed, Apple took steps to ensure that all Class Members viewed and agreed to its inaccurate and misleading Privacy Policy by clicking an "Accept" button before using the App Store.[3] In addition, Apple incorporated the false statements in its Privacy Policies into its SLA, which are included in the packaging of all new iDevices.[4]

Through omissions and misrepresentations, Apple creates the false impression that much of the information it gathers from users' phones is not "personal" information. Indeed, it classifies the following as non-personal information: "occupation, language, zip code, area code, unique device identifier, location, and the time zone." Kamber Decl. Ex. A at APPLE_002910; Kamber Decl. Ex. B at APPLE_ 1034295. When any one of these categories of information is combined with a UDID it becomes personally identifiable information by any accepted definition. "Personally identifiable information" or "personal information" (PII) has been defined by the Federal Trade Commission to include what Apple disavows.[5]

---

[3] Declaration of Mark Buckley in Support of Motion for Summary Judgment at ¶¶ 10, 15 [DKT. 234].

[4] *Id.* at ¶¶ 2-5, 7.

[5] Individually identifiable information from or about an individual [consumer] including, but not limited to: (a) a first and last name; (b) a home or other physical address, including street name and name of city or town; (c) an email address or other online contact information, such as an instant messaging user identifier or a screen name that reveals an individual's email address; (d) a telephone number; (e) a Social Security Number; (f) a persistent identifier, such as a customer number held in a 'cookie' or processor serial number, that is combined with other available data that identifies an individual; or (g) any information that is combined with any of (a) through (f) above. *In the Matter of Microsoft Corporation,* Federal Trade Commission, File No. 012 3240, Agreement Containing Consent Order, pp. 2-3, Aug. 8, 2002, *http://www.ftc.gov/os/caselist/0123240/ microsoftagree.pdf ; accord In the Matter of Eli Lilly and Company,* Assurance of Voluntary Compliance and Discontinuance, Attorneys General of the States of California, Connecticut, Idaho, Iowa, Massachu¬setts, New Jersey, New York, and Vermont, p. 7 n.3, *http://epic.org/privacy/medical/lillyagreement.pdf* and *http://epic.org/privacy/medical/lilly agreement.pdf.)*

In other words, Apple falsely and misleadingly defines the UDID and other information collected from the classes iDevices as "non-personal." Whether Apple can personally identify the user or whether it is in an anonymous form is a key determination necessary to determine whether many of the above representations were indeed false and misleading.

## III.   CONTROLLING LEGAL AUTHORITY SUPPORTS RULE 23(B) CERTIFICATION OF THE CLASS AND SUBCLASS

This Court found, in denying Defendant's Motion to Dismiss, that, subject to sufficient proof consistent with their allegations, Plaintiffs can establish violations of California's UCL and CLRA statutes. The UCL explicitly allows requests for declaratory and injunctive relief, and the Court has the authority under the CLRA to order, *inter alia*, appropriate relief.

Under Federal Rule of Civil Procedure 23(b), Plaintiffs must satisfy the full requirements articulated under Rule 23(a): (1) Numerosity; (2) Commonality; (3) Typicality; and (4) Adequacy. In addition, as Plaintiffs are proceeding primarily under Rule 23(b)(2), Plaintiffs must demonstrate "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). As noted, Plaintiffs address this latter inquiry first.

While Plaintiffs bear the burden of submitting to the Court evidence in support of the Plaintiffs' claims, it is not the Court's function, at this juncture, to "go so far … as to judge the validity of these claims. *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union,  v. ConocoPhillips Co*., 593 F.3d 802, 808-09 (9th Cir. 2010). Indeed, the Supreme Court noted this year, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 133 S. Ct. 1184, 1194-95, 185 L. Ed. 2d 308 (2013). With respect to the Rule 23(b)(2) certification, a number of important legal distinctions exist. First, and perhaps most importantly, Plaintiffs need only show one common fact or question of law, and not that these facts or law issues "predominate." *Walters v. Reno,* 145 F.3d 1032, 1047 (9th Cir. 1998). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or to none of them." Wal-Mart, 131 S.Ct. at 2557 (quoting

Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U.L.Rev. 97, 132 (2009)).[6] Under Ninth Circuit law, Rule 23(b)(2) certification is not limited to class motions in which final injunctive relief is required, but only requires that a District Court determine that injunctive relief is still "appropriate". *Mayer v. Portfolio Recovery Associates, LLC,* 707 F.3d 1036, 1043 (9th Cir. 2012) *cert. denied*, 133 S. Ct. 2361, 185 L. Ed. 2d 1068 (U.S. 2013).  Where, as here, some of the issues subject to injunctive relief have not "impacted every single class member" Rule 23(b)(2) injunctive relief is appropriate as the Plaintiff need not wait until he or the Class Members suffer actual injury as the risk of harm is the injury. *Parsons v. Ryan*, 289 F.R.D. 513, 521 (D. Ariz. 2013).  Similarly, even where only a subset of the Class has been affected by the conduct at issue, Rule 23(b)(2) certification is appropriate. *See* Fed. R. Civ. P. 23(b)(2) at Advisory Committee Note; *Burdick v. Union Sec. Ins. Co.,* CV 07-4028 ABC (JCX), 2009 WL 6541608 (C.D. Cal. April 2, 2009), *Arnold v. United Artists Theater Circuit, Inc.,* 158 F.R.D. 439, 449 (N.D. Cal. 1994). Indeed, classes have been certified in which the class representatives are the only members who actually suffered an alleged injury so long as there exist common legal issues. *See, e.g., McGee v. East Ohio Gas, Co*., 200 F.R.D. 382, 391 (S.D. Ohio 2001).

While Rule 23(b)(3) requires "predominance" of common issues, Rule 23(b)(2) has no such requirement, not even, as some other circuits require, "cohesiveness". *See, e,g,. Davis v. Homecomings Financial*, C05—1466 RSL, 2006 WL 2927702 (W.D. Wash. Oct. 10, 2006). Furthermore, Rule 23(b)(3) requires that the Class Action be "superior", and in this Circuit, there is no such requirement or similar provision under Rule 23(b)(2). *See, e.g., Californians for Disability Rights, Inc. v. California Dep't. of Transp.,* 249 F.R.D. 334, 349 (N.D. Cal. 2008). Unlike other Courts and other Circuits, the Ninth Circuit does not even demand that Plaintiffs show class certification is "necessary". *See also Disability Rights Council of Greater Washington v. Washington Metro. Transit Auth.*, 239 F.R.D. 9, 23

---

[6] *See also Santoro v. Aargon Agency, Inc.,* 252 F.R.D. 675, 680 (D. Nev. 2008), as corrected (Oct. 21, 2008) ("One significant issue common to the class is sufficient to warrant certification."); *Villa v. United Site Servs. of California, Inc.,* 5:12-CV-00318-LHK, 2012 WL 5503550 (N.D. Cal. Nov. 13, 2012); 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure,* §1775 (2d. ed. 1986) ("All of the class members need not be aggrieved by . . .[the] defendant's conduct in order for some of them to seek relief under Rule 23(b)(2). What is necessary is that the challenged conduct or lack of conduct be premised on a ground that is applicable to the entire class").

(D.D.C. 2006) ("As numerous courts have observed, whether certification is 'necessary' is not a question Rule 23 directs the courts to consider.")

Here, the representations made by Apple in its SLA and Privacy Policy are provided context by the extent that Apple has total control the user experience. [7] Apple's claims that it has nothing to do with user sharing with third parties, including apps, is contrary to its own developer license agreement and the FTC. During the class period, Apple included provision 3.3.9 in its developer license agreement. [8] This provision provided clear requirements for the access, sharing, use, and disclosure of device and personal data. As detailed below, Apple only enforced the standards enunciated in 3.3.9 when it suited Apple rather than the strict enforcement promised in its representations.

---

[7] ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
█████████████████████████████ █████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████████████████ █████████████████████████████████
███████████████████████████████

[8] While iterations of the Developer Program License Agreement were provided by Apple in discovery designated as "Attorney Eyes Only," Plaintiffs have been able to find most of these license agreements publicly available online. Thus, Plaintiffs do not redact this provision here. Kamber Decl. Ex. G and M.

IV.   **THE IDEVICE CLASS AND THE RELATED SUBCLASS HAS SUBMITTED EVIDENCE TO WARRANT ISSUANCE BY THIS COURT OF A RULE 23(B)(2) INJUNCTION AND/OR DECLARATORY RELIEF CLASS ORDER**

Plaintiffs seek certification of the following class (the "iDevice Class") under Federal Rule of Civil Procedure Rule 23(b)(2):

> All persons residing in the United States and its territories who, from January 1, 2010, through the date the Court certifies the Class, purchased or otherwise acquired iDevices running any of Apple's iOS versions prior to iOS7, excluding the Judges to whom these cases were assigned together with their respective staffs and all current or former Apple employees.

Plaintiffs also seek certification of the following subclass (the "Geolocation Class"):

> All persons residing in the United States and its territories who from January 1, 2008 through the date the Court certifies the Class, owned an iDevice and turned location services "off" and had their device collect, store, and/or transmit geolocation data, excluding the judges to whom these cases were assigned together with their respective staffs and all current or former Apple employees.

The class definitions are precise, objective, and presently ascertainable.  The definitions include objective characteristics that would permit consumers to identify themselves as members of the proposed classes. In addition, a nationwide class is appropriate because Apple chose California law to govern its relationships with Plaintiffs and all Class Members.[9]  The following subsections, individually and collectively, provide the basis for this Court finding CLRA violations and the legal basis to certify the class or subclass based upon the common issues of law and fact common to all.

A.   **The iDevice Class Seeks Injunctive and Declaratory Relief Based on Apple's Misrepresentations and Omissions Regarding Personal Identifiers and Seek Rule 23(b)(2) Certification**

Apple has made several material and significant misrepresentations regarding what is personal information and how personal information may be shared.[10] Apple's SLA details the non-personal information it collects where it falsely identifies the UDID as non-personal information. Not only is this not accurate in this context. ███████████████████████████████████████

████████████████████████████████████████████████████████████

---

[9]   In the event the Court declines to certify a nationwide class, Plaintiffs respectfully request that the Court certify a class of California residents.

[10]   MAC address may also be applicable here to expand on the breach described and is subject to ongoing discovery ██████████████████████████████████████████

████████████████████████████████████████

¶¶ 58-61. Apple's claims to have remedied this problem through "deprecation" and replacing with an Advertising identifier has thus far been ineffective and leaves class members personal information exposed to this day.

Apple claimed *after this lawsuit was filed* that it would begin to deprecate the use of the UDID.

1　██████████████████████████████████████████████████

2　████████████████████

3　　　　Stated plainly, legacy Apps on legacy devices continue to transmit UDIDs. So for the thousands

4　of Apps which were previously approved and for which no updates have been provided, the use of

5　UDIDs continues unabated and Apple's privacy policy protections are trampled. ████████████

6　██████████████████████████████████████████████████

7　██████████████████████████████████████████████████

8　██████████████████████████████████████████████████

9　██████████████████████████████████████████████████

10　██████████████████████████████████████████████████

11　██████████████████████████████████████████████████

12　██████████████████████████████████████████████████

13　██████████████████████████████████████████████████

14　████████████████████████████████

15　　██████████████████████████████████████████

16　██████████████████████████████████████████████████

17　██████████████████████████████████████████████████

18　██████████████████████████████████████████████████

19　██████████████████████████████████████████████████

20　██████████████████████████████████████████████████

21　██████████████████████████████████████████████████

22　██████████████████████████████████████████████████

23　██████████████████████████████████████████████████

24　████████████████

25　　　　Apple's above described actions violated both the CLRA and UCL statutes and provides law

26　and fact supporting Rule 23(b)(2) certification. These violations are common to the Class and can be

27　cured through injunctive relief, including revising the privacy policy to reflect that the UDID, when

28　combined with other information which is personally identifiable information and, despite

depreciation, is still being used with legacy apps. Further, Apple should be enjoined from failing to comply with section 3.3.9 of the DLA and enforce that provision across the board.

**B.    The iDevice Class Seeks Injunctive and Declaratory Relief Based on Apple's Misrepresentations To The Class Regarding Its Enforcement of App Policies and Seek Rule 23(b)(2) Certification**

Apple claims that it respects user privacy, will safeguard that privacy, will abide by its protections of personal information, and otherwise enforce its policies and procedures in a fair and even-handed manner. Even Apple does not dispute that it is in the best position to protect user data against "misuse," "unauthorized access," and "disclosure." Unfortunately for the privacy interests of the class members, that is not what Apple has done or continues to do.

The class members are almost wholly dependent on Apple and its disclosures in order to know what is being transmitted from their iDevices and therefore rely heavily on the representations that Apple makes.

[lines 1-11 redacted]

The above-described breaches of Apple's representations to end users are violations of the UCL and CLRA. Plaintiffs seek (b)(2) certification on the common issues of fact and law that Apple's uneven enforcement of its App Review Guidelines and PLA terms, make the representations in its Privacy Policy misleading which, was [and is] unlawful and violates the UCL and the CLRA. Plaintiffs further request injunctive relief enjoining Apple from selectively enforcing its privacy-related App Review Guidelines and Developer License Agreement in order to fulfill its Privacy Policy commitments to all iDevice users.

### C.     The iDevice Class Seeks Injunctive and Declaratory Relief Based on Apple's Misrepresentations Regarding Data Security and Seek Rule 23(b)(2) Certification

Apple has made several material representations regarding its safeguarding of class member data through encryption.  These representations are false and misleading.  First, in every applicable version of the privacy Policy, Apple represented that "Apple online services such as the Apple Online Store and iTunes Store use Secure Sockets Layer (SSL) encryption on all web pages where personal information is collected."  *See infra* Section IA; Kamber Decl. Ex. C-E.  Sending personal information unencrypted is considered a risky behavior and is violative of industry best practices. Kravitz Decl. Ex.

---

[11] [redacted]

[12] Plaintiffs continue to conduct discovery about the unauthorized sharing of address book data and Apple's failure to safeguard such data pursuant to the SLA and Privacy Policy.

18 at APPLE_1133473. Apple provides encryption for class member transmissions of personal information to the Apple iTunes Store using the represented industry-standard SSL encryption. But when Apple collects personal information on iTunes about class members from third parties, such as Apps, it breaches the above-representation regarding encryption. For example, the iTunes Store collects UDID information from the App "Pandora." As established above, the UDID is personal information. As the collector of the information, Apple necessarily knows that the information being received is indeed unencrypted. Both Plaintiffs Dwyer and Chiu used Pandora and had it installed on their iPhones. Kravitz Decl. Ex. 3 at Para 9-10; Kamber Decl. Ex. N at Para. 12 It was in the testing of Plaintiff Chiu's iPhone that it was determined that the UDID was being collected by the ITunes Store in unencrypted form. Kravitz Decl. Ex. 3 at Ex. 2(b).

███████████████████████████████████████████████████████

████████████████████████████████   ██████████████████████

███████████████████████████████████████████████████████

██████████████████   ████████████████████████████████████

███████████████████████████████████████████████████████ ██

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████ █

Each of the above misrepresentations present common issues of law and support finding UCL and CLRA violations. Each practice can be remedied through appropriate injunctive relief that requires Apple to enforce the above-cited developer guideline and requires the encryption at the iTunes Store promised by Apple in its Privacy Policy and correction of its policies.

_____

[13] ████████████████████████████████████████████████████████
████████████████████████████████████

[14] A good example of such selective enforcement in the area of encryption was Apple's storage of an extensive history of device location information in a database named "consolidated.db" and it did so with no additional file encryption. Kravitz Decl. Ex. 7 (Egele Decl.) at ¶ 99-103. Only after significant public outcry and government investigations (and this suit), did Apple stop its practice of having such extensive location records stored on iDevices and the more limited information now stored is done with a more secure encryption practice.

**D.** **The iDevice Class Seeks Injunctive and Declaratory Relief Based on Apple's Misrepresentations Regarding Unauthorized Transmissions of Personal Information Resulting in Battery Drain and Costly Bandwidth Usage and Seek Rule 23(b)(2) Certification**

As detailed in the description of the preceding breaches, Apple collected or permitted the collection of information by third parties in ways that a violated the contractual terms of the SLA and Privacy Policy. These violations all came at a cost in the diminishment of resources, premature degradization of the battery and free use of the class member's bandwidth. Not only do Apple's practices "have serious impact on user privacy…these practices and techniques consume resources on iDevices." Kravitz Decl. Ex. 7 (Egele Decl.) at ¶ 89.

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████████████ ████████

3 ████████████████████████████████████████████████████████

4 █████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████████

Kamber Decl. Ex. F at APPLE_0002931. These practices are Common to all class members in law and fact and are each violate of the SLA and Privacy Policy. The violations can be cured via injunctive relief forcing Apple to enforce its policies and prevent unauthorized transmissions from prematurely degrading the battery and require Apple to disclose this usage.[15]

**E.** **The Geolocation Subclass Seeks Injunctive and Declaratory Relief Based on Apple's Misrepresentations Regarding Location Services "Off" and Seek Rule 23(b)(2) Certification**

Apple began providing location-based services on iDevices in January 2008. Kamber Decl. Ex. F at 4 (May 11, 2011, Testimony of Dr. Tribble, Apple's Vice President for Software Technology to the U.S. Congress). A location-based service is any information, entertainment, or social media service that is available on a mobile device and makes use of geographical position. *Id*. at 4-5. In its Privacy Policy Apple falsely represents that:

> [L]ocation data and queries collected by Apple are collected in a form that does not personally identify you and may be used by Apple and its partners and licensees to provide and improve location-based products and services. You may withdraw . . .consent [to Apple's and its partners' and licensees' transmission, collection, maintenance, processing and use of your location data and queries] at any time by going to the Location Services setting on your iPhone and either turning off the global Location Services setting or turning off the individual location settings of each location-aware application on your iPhone.

Kamber Decl. Ex. A-B.

---

[15] As set forth *infra* at Sec. V, Plaintiffs seek certification of a b(3) class for these resource usage violations on a liability only basis. The liability is common to each class member, although while at this time plaintiffs do not have adequate proof to demonstrate that proof of damages would be common to class. Kravitz Decl. Ex. 7 (Egele Decl.) at ¶¶ 89-105.

Apple has expressly and consistently represented that, if customers turn "off" the location-based services settings on their iDevices, "no location-based information will be collected or transmitted." Further, the settings screen of each version of the iOS at issue provided an on-off toggle for class members for location services on the Settings screen. The concept of Class Member control and location services was further detailed in versions 2 and 3 of the SLA:

> Location Data . . . You may withdraw this consent [regarding location data] at any time by going to the Location Services setting on your iOS Device and either turning off the global Location Services setting or turning off the individual location settings of each location-aware item on your iOS Device…

Kamber Decl. Ex. D-E.

Nearly identical provisions appear at paragraph 4(b) of each iDevice SLA.  *See e.g.,* Kamber Decl. Ex. H-L. Apple has expressly and consistently represented in its contracts and in response to governmental inquiries that if customers turned "off" the location-based services settings on their iPhones, then "no location-based information will be collected or transmitted." Kamber Decl. Ex. T at APPLE_1027038 (Apple's July 12, 2010, Letter to Hon. Edward J. Markey and the Hon. Joe. Barton). In fact, setting Location Services to off did not actually halt the transmittal of all location information to and from a users' iDevice[16].

Apple's representations and actions relating to location services off specifically affected the Capiro Plaintiffs and all other Class Members, irrespective of which iDevice they were using.



[Footnote continued on next page]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20      Second, for users who ran iOS versions 4.1 and later from June 21, 2010 through April 27,

21  2011, Apple engaged in yet another class-wide practice that violated the iDevice SLAs' express

22  provision that a user can turn locations services "off," completely and for all purposes.

23

24

25

26  _____

27  [Footnote continued from previous page]

28



While Apple attempted to implement a fix of its breach in 2011, the software update only corrected the "bug" for users running iOS versions 4.1 or higher; anyone who ran (and continues to

run) 4.0 on their iDevice continues to be affected by Apple's location harvesting program. Apple periodically releases updated versions of iOS. See Egele Decl. at ¶ 26.  iDevices with hardware that is not powerful enough to run a newer version of iOS cannot be updated.  *Id.*  For such iDevices, users can download the update to their iDevice. *Id.* Further, the Capiro Plaintiffs and all members of the Class who set Location Services to Off were damaged because Apple consumed and diminished the finite resources, such as bandwidth, storage space, and battery utility and life span, of their iDevices, when it harvested location information through geo-tagging.  Kravitz Decl. Ex. 7 (Egele Decl.) at ¶¶ 83-97. Based upon Apple's admission as to past violations,, Plaintiffs seek a (b)(2) subclass for this violation finding common law and fact in subparts: 1) A finding that Apple's admitted misrepresentation is a CLRA and a UCC violation; 2) A finding that its continuing practices with regard to Versions 4.1 and earlier and Versions 4.2 and later are CLRA and UCC violations; 3) enjoining the ongoing conduct by which iDevices continue to utilize Location Services even when Location Services are set to "off;" and 4) enjoining Apple from collecting or storing location-based information once an iDevice user has turned "off" the location-based services.

## V.        PREREQUISITES OF FRCP 23(a) HAVE BEEN SATISFIED

If this Court finds that even one of the above-delineated violations presents class-wide issues for determination under Rule 23(b)(2), then it must turn to the Rule 23(a) factors of numerosity, adequacy, typicality and commonality.   The Rule 23(b) decision will inform the commonality and typicality analysis.

### A.        Numerosity

Numerosity has been established and satisfied. Rule 23(a)(1) requires that the class be so numerous that "joinder of the individual class members is impractical". Apple's 10K for the fiscal year ending September 29, 2012, notes that Apple sold at least 97,000,000 units of iPads, iPhones and iPods worldwide for 2010 and 147,000,000 as of 2011. Kamber Decl. Ex. V.  For each purchaser of an iDevice, the SLA, and thereby the Privacy Policy, was agreed.  Without question, numerosity has been satisfied.  *See McMillon v. Hawaii,* 261 F.R.D. 536, 542 (D. Haw. 2009) (numerosity met with 40 or more class members); *Cervantes v. Celestia Corp.*, 253 F.R.D. 562, 569 (C.D. Cal. 2008) (numerosity requirement based on plaintiff's estimate is sufficient).

### B.   Commonality

Unlike Rule 23(b)(3), Courts have repeatedly held that common issues do not have any "predominance" requirement; they only require common questions or impact. *See also Disability Rights Council of Greater Washington,* 239 F.R.D. at 23. As discussed, *infra*, this requirement has been repeatedly met in the ways outlined.  Not only are these violations serious, they are common to the entire class and subclass as defined and can be rectified on a class-wide basis without resort to individualized damages calculations.

### C.   Typicality and Adequacy

Typicality under Rule 23(a)(3) is readily satisfied where, as here, Plaintiffs' claims are "reasonably co-extensive with those of absent class members." *Hanlon v. Chrysler Corp.,* 150 F3d 1011, 1020 (9th Cir. 1998). Alleged in the Complaint and as set forth in the Declarations of the Named Plaintiffs and the expert reports filed in support hereof[20], the Named Plaintiffs' claims are typical off all of the members of the Proposed Class's; they assert similar claims that arise from essentially the same course of conduct. *See, e.g., Chavez v. Blue Sky Natural Beverages*, 268 F.R.D. 365. (N.D. Cal. 2010) (claims relating to uniform product marketing label arise from same facts and overall legal theories as to other class members).  As the Supreme Court has noted, "The typicality requirement is said to limit the class claims to those fairly encompassed by the named plaintiffs' claims." *Gen. Tel. Co. of the Nw., Inc. v. Equal Employment Opportunity Comm'n,* 446 U.S. 318, 330, 100 S. Ct. 1698, 1706, 64 L. Ed. 2d 319 (1980).  Here, the (b)(2) finding(s) leading to this Rule 23(a) inquiry provide the basis for a declaration of a violation which is common in law and fact.  The claims of the named plaintiffs are typical of the class as a whole.  The relief sought will benefit all if granted.

In assessing adequacy of the named plaintiffs and counsel, this Court this Court must determine (i) whether "the named plaintiffs and their counsel have any conflicts of interest with other class members;" and (ii) will "the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020. In this case, particularly where, as here, Plaintiffs

---

[20] *See* Declarations of proposed Class Reprentatives Anthony Chiu (Kamber Decl. Ex. N); Cameron Dwyer (Kravitz Decl. Ex. 2); Isabella Capiro (Kamber Decl. Ex. P); and Alejandro Capiro (Kamber Decl. Ex. 0), and the Declaration of Plaintiffs' expert, Manuel Egele (Kravitz Decl. Ex. 7).

are asserting non-monetary damage based claims for injunctive and declaratory relief, the Plaintiffs' interests are aligned with those of the Class (i.e., if the Court certifies the Proposed Class, Plaintiffs will benefit, as will all Class members). Where, as here, the class representatives generally possess the same interests and generally "suffered the same injury" as the absent class members, Rule 23(a) (as well as standing) is satisfied. *See Gen. Tel. Co of Sw. v. Falcon,* 457 U.S. 147, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982).   Each named Plaintiff has worked with their counsel, responded to numerous discovery requests and sat for their depositions disclosing the basis for their adequacy and standing (which Apple has in the past and continues to challenge through motion practice).

      **D.**     **The Class Representatives**

          **1.**     **Plaintiff Dwyer**

Plaintiff Cameron Dwyer resides in California. Kravitz Decl. Ex. 1, Deposition of Cameron Dwyer ("Dwyer Depo.") at 6:19-21.  In or about the Summer of 2010, Plaintiff Dwyer purchased an iPhone in France and then, in the Fall of 2011, he purchased an iPhone in California. Kravitz Decl. Ex. 2, Declaration of Cameron Dwyer ("Dwyer Decl."), at ¶ 4.  Plaintiff Dwyer used his iPhone for personal, family, or household purposes. Kravitz Decl. Ex. 1 (Dwyer Depo.) at 8:25-9:2; 46:23-47:6; Kravitz Decl. Ex. 2 (Dwyer Decl.), at ¶5.

Apple's promise to safeguard the privacy and security of Plaintiff Dwyer's personal information was a significant factor his decisions to purchase an iPhone. Kravitz Decl. Ex. 1 (Dwyer Depo.). at 141:7-21; 145:6-17; 196:14-25; Kravitz Decl. Ex. 2 (Dwyer Decl.), at ¶¶ 6-7.  Plaintiff Dwyer downloaded and used numerous free Apps, such as Pandora, from the App Store during the Class Period. Kravitz Decl. Ex. 2 (Dwyer Decl.), at ¶ 5. Each App subjected Plaintiffs Chiu and Dwyer to the collection of personal information and information about Plaintiff Dwyer and Chiu's iPhones by third party mobile advertising and analytics companies. Kravitz Decl. Ex. 3 at Ex. 2(B); Kravitz Decl. Ex. 2 (Dwyer Decl.), at ¶ 7. When purchasing his iPhones, Plaintiff Dwyer was not aware that the download and use of purportedly free Apps would cause such information to be shared with any third-party advertising network or analytics provider, or be used for third party advertising purposes in contravention of Apple's Privacy Policy and SLA. Kravitz Decl. Ex. 1 (Dwyer Depo.)  at 138:19-139:2; Kravitz Decl. Ex. 2 (Dwyer Decl.), at ¶ 6.

### 2.   Plaintiff Chiu

Plaintiff Anthony Chiu resides in California. Kravitz Decl. Ex. 4, (Deposition of Anthony Chiu ("Chiu Depo.")) at 6:24-7:1. In or about 2008, Plaintiff Chiu purchased an iPhone in California and then, in or about June 2010, Plaintiff Chiu purchased an iPhone online. Kamber Decl. Ex. N. (Chiu Decl.) at ¶3. Plaintiff Chiu used his iPhone for personal, family, or household purposes. Kamber Decl. Ex. N (Chiu Decl.) at ¶ 6; Kravitz Decl. Ex. 4 (Chiu Depo.) at 15:16-16:3.

Apple's promise to safeguard the privacy and security of Plaintiff Chiu's personal information was a significant factor in his decision to purchase an iPhone. Kamber Decl. Ex. N (Chiu Decl.) at ¶¶ 6-7. Plaintiff Chiu downloaded and used numerous free Apps, such as Flixster, Urbanspoon, and Dictionary.com, from the App Store during the Class Period. Kamber Decl. Ex. N (Chiu Decl.) at ¶ 6, 10-14. Each App subjected Plaintiff Chiu to the collection of personal information and information about Plaintiff Dwyer and Chiu's iPhones by third party mobile advertising and analytics companies. Kravitz Decl. Ex. 3 at Ex. 2(b); Kravitz Decl. Ex. 4 (Chiu Depo.) at 104:5-105:17; 119:8-15. When purchasing his iPhone, Plaintiff Chiu was not aware that the download and use of purportedly free Apps would cause such information to be shared with any third-party advertising network or analytics provider, or be used for third party advertising purposes in contravention of Apple's Privacy Policy and SLAs. Kamber Decl. Ex. N (Chiu Decl.) at ¶¶ 8-9.

### 3.   Plaintiffs Alejandro and Isabella Capiro

Plaintiffs Alejandro and Isabella Capiro reside in California. Kamber Decl. Ex. O, Declaration of Alejandro Capiro ("A. Capiro Decl."), at ¶ 2; Kamber Decl. Ex. P, Declaration of Isabella Capiro ("I. Capiro Decl."), at ¶2. Alejandro Capiro purchased an iPhone for Isabella in December 2010 at an AT&T store in California. Kamber Decl. Ex. Q, Alejandro Capiro Deposition ("A. Capiro Dep.") at 8:1-21.   The iPhone was purchased for and used by Isabella only for her personal use, not for business use.  Kamber Decl. Ex. P (I. Capiro Decl.) at ¶5; Kamber Decl. Ex. O (A. Capiro Decl.), at ¶4.

Apple's promise to safeguard the privacy and security of Plaintiff Isabella Capiro's personal information was a significant factor in the decision to purchase an iPhone. Kamber Decl. Ex. P (I. Capiro Decl.) at ¶10. Plaintiff I. Capiro downloaded and used numerous free Apps, including Pandora, from the App Store during the Class Period. *Id*. at Para. 9   The Pandora App subjected

Plaintiff I. Capiro to the collection of personal information and information about her iPhone by third party mobile advertising and analytics companies in breach of the representations made by Apple to Plaintiff Capiro. Kravitz Decl. Ex. 3. When purchasing her iPhone, Plaintiff Capiro was not aware that the download and use of purportedly free Apps would cause such information to be shared with any third-party advertising network or analytics provider, or be used for third party advertising purposes in contravention with Apple's Terms of Service, privacy Policy and SLA. Kamber Decl. Ex. P (I. Capiro Decl.) at Para. 10.

Apple further misrepresented to Plaintiff Isabella Capiro during the Class Period that she may opt-out of the Location Services feature of the iPhone by turning off the Location Services setting and that this would also save the battery on her phone. See *supra*, at 3; Kamber Decl. Ex. P, I. Capiro Decl., at ¶7; Kamber Decl. Ex. R, Isabella Capiro Deposition ("I. Capiro Dep.), at 29:3-7; 32:5-12; 42:23-43:2; 46:11-47:23; 96:9-17. Plaintiff relied on Apple's representations that data would not be collected from her iPhone and the battery life would not be negatively impacted when Location Services were off. Kamber Decl. Ex. P, I. Capiro Decl, at ¶7; Kamber Decl. Ex. R, I. Capiro Dep., at 32:5-12; 42:23-43:2; 97:19-25 ("I turned it off, so I didn't want it to . . . gain information and it did."). Apple continued to collect geolocation data even when Plaintiff Capiro switched the Location Services setting to "off."

Apple made uniform representations regarding privacy, including the collection and use of user and device data to each of the three representative plaintiffs as well as to the class as a whole. Kamber Decl. Ex. S. In light of Apple's affirmative statements regarding protecting users' privacy, and Apple's omissions about how Class Members' data was actually shared with third parties without their knowledge or consent, Plaintiffs neither expected nor consented to have their personal information subject to transmittal to third parties through the purportedly "free" Apps when they purchased their iDevices. Kravitz Decl. Ex. 1, Dwyer Depo., at 251:2-23; Kravitz Decl. Ex. 2, Dwyer Decl., at ¶¶ 6-7; Kamber Decl. Ex. N, Chiu Decl., at ¶¶ 5-7; Kamber Decl. Ex. P, I. Capiro Decl., at ¶¶9-11. Plaintiffs consider the information about their mobile communications to be personal and confidential. Kravitz Decl. Ex. 1, Dwyer Depo., at 110: 21-111:1; Kravitz Decl. Ex. 2, Dwyer Decl., at ¶¶ 6-7; Kravitz Decl. Ex. 4, Chiu Depo., at 37:1-38:4; 104:5-105:17; 119:8-15; Kamber Decl. Ex. N, Chiu Decl., at ¶¶ 5-7; Kamber Decl. Ex. P, I. Capiro Decl., at ¶¶7-10.

Plaintiffs were induced to purchase iPhones by Apple offering thousands of purportedly free Apps, without Apple adequately disclosing that the Apps allowed third parties to collect users' information. Kravitz Decl. Ex. 2, Dwyer Decl., at ¶¶ 3-6; Kamber Decl. Ex. N, Chiu Decl., at ¶¶ 4-6.

As detailed above, each of the representative Plaintiffs claims are typical of class. Each was provided the same operative provisions of the SLA and Privacy Policy as all other Class Members. Each of the plaintiffs can demonstrate at least one breach of those representations sufficient to establish a violation of the UCL and CLRA.

### B. Class Counsel

Further, Plaintiffs retained counsel with significant experience in prosecuting large privacy and consumer fraud class actions, and who should also be appointed Class Counsel. Plaintiffs' counsel has devoted and will continue to devote significant time, energy and resources to the prosecution of this case. They have, collectively spent thousands of hours and millions of dollars in litigating this case, all for the benefit of the Proposed Class, and are well qualified.[21] Kamber Decl. Ex. W. The record shows that Proposed Class Counsel has committed, and continue to commit, significant resources in an effort to protect the privacy rights of class members. Therefore, the adequacy requirement is met here.

Accordingly, this prong has been satisfied as to the named Plaintiffs and their counsel.

## VI. A LIABILITY-ONLY CLASS – FRCP 23(B)(3) IS APPROPRIATE TO ADDRESS APPLE'S UNAUTHORIZED USE OF CLASS MEMBERS BATTERY AND BAND–WIDTH FOR THE COLLECTION OF PERSONAL AND DEVICE DATA IN VIOLATION OF THE SLA AND TERMS OF SERVICE

Plaintiffs also seek certification of a Rule 23(b)(3) liability-only class consisting of iDevice owners who, as a result of iApple's geo-tagging activities in violation of the CLRA or (ii) Apple's misrepresentations and omissions regardng unauthorized transmissions of user data, experienced shortened battery life and increased bandwidth usage (the "Battery Life/Bandwidth Class"). Each Plaintiff and Class Member should not be put to the burden and expense of proving liability since the

---

[21] Rule 23(b)(1) also requires the Court to appoint class counsel. For the classes stated above, Plaintiffs' request the Court appoint KamberLaw, LLC as Class Counsel. Kamber Decl., ¶¶ 4-8 and Ex. W.

1    battery drain and bandwidth usage claims flow from two of the Rule 23(b)(2) findings. Under Rule

2    23(b)(3), a class may be certified if "the court finds that the questions of law or fact common to class

3    members predominate over any questions affecting only individual members, and that a class action is

4    superior to other available methods for fairly and efficiently adjudicating the controversy." Courts

5    routinely certify liability-only classes pursuant to Rule 23(b)(3). *See, e.g.*, *In re Whirlpool Corp. Front-*

6    *Loading Washer Products Liab. Litig.*, No. 10-4188, __ F.3d __, 2013 WL 3746205 (6th Cir. July 18,

7    2013) ("*Whirlpool*") (affirming the certification of a liability-only Rule 23(b)(3) class action in light of

8    *Comcast Corp. v. Behrend*, __ U.S. __, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013)); *Ellis v. Costco*

9    *Wholesale Corp.*, 285 F.R.D. 492, 539 (N.D. Cal. 2012) (collecting cases certifying Rule 23(b)(3)

10   liability-only class actions); *cf. Munoz v. PHH Corp.*, 1:08-CV-0759-AWI-BAM, 2013 WL 2146925

11   (E.D. Cal. May 15, 2013) ("The *Comcast* decision does not infringe on the long-standing principle that

12   individual class member damage calculations are permissible in a certified class under Rule

13   23(b)(3).").

14          Predominance under Rule 23(b)(3) examines whether the proposed class is sufficiently

15   cohesive to warrant adjudication by representation—i.e., will the litigation be advanced by resolving

16   these common issues for all of the members of the class? *See Hanlon.*, 150 F.3d at 1022; *see also*

17   *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) ("'Implicit in the satisfaction

18   of the predominance test is the notion that the adjudication of common issues will help achieve judicial

19   economy.'" (quoting *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)).

20   Certification of a liability-only class is appropriate, because with the resolution of these questions, the

21   Class will either "prevail or fail in unison." *Amgen Inc., supra,* 133 S. Ct. at 1191. Rule 23(b)(3) does

22   not mandate that Plaintiffs prove that each element of their claims are susceptible to classwide proof.

23   *Id.* at 1191 ("Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not

24   that those questions will be answered, on the merits, in favor of the class.") Rather, predominance is

25   shown, and consequently certification under Rule 23(b)(3) is appropriate, where -- as here -- common

26   evidence will either prove or disprove whether Apple's actions did indeed lead to the decreased battery

27   life and increased bandwidth usage for the entire class.

28

Here, the following common questions predominate over the proposed Class: (1) whether Apple's geo-tagging activities resulted in diminished battery life on iDevices; (2) whether Apple's geo-tagging activities resulted in unexpected utilization of Plaintiffs' bandwidth resources for which Plaintiffs paid additional charges to their carriers; (3) whether Apple's misrepresentations and omissions regarding unauthorized transmissions of user data resulted in diminished battery life on iDevices; (4) whether Apple's misrepresentations and omissions regarding unauthorized transmissions of user data resulted in unexpected utilization of Plaintiffs' bandwidth resources for which Plaintiffs paid additional charges to their carriers; and (5) whether these injuries were the result of Apple's violations of the representations found in the Privacy Policy, Terms and Conditions, and SLAs and subsequent violation of the CLRA. The determination of liability with respect to these issues is based on the same legal theories and requires determination of the same legal issues. Common issues predominate over any individual questions regarding the amount of monetary damages the Class may have suffered as a result of these practices.

As is previously set forth in the Rule 23(b)(2) argument, *supra*, commonality, adequacy, numerosity, and typicality are met here. If a class is certified as to liability only, then each class member who so chooses to may present individualized evidence to support damages for bandwidth use and/or battery drain in individual trials. *See In re Whirlpool, supra*.

The Plaintiffs have set forth a detailed explanation as to how unauthorized transmissions can and do result in degradation of battery life. This phenomenon was studied inside and outside of Apple. The degradation is further exacerbated by the fact that the iDevices are not manufactured to allow the easy swapping of an old battery for the new. In addition, battery degradation can vary with the usage of the phone for voice communications, cell coverage, internet usage, and a host of other issues. In short, a unitary theory of damage to each and every class member cannot be stated with any particularity as to the class as a whole. Nevertheless, this litigation, including discovery, has been hard fought, costly, and protracted. The class members should not lose the benefit of that discovery if this Court finds that a Rule 23(b)(2) class is appropriate. That finding should carry over as a liability finding for Rule 23(b)(3) purposes thereby allowing each individual who so chooses to produce

evidence in an individual trial or arbitration to prove the damages he/she suffered as a result of the violation.

Similarly, the Plaintiffs explained in detail how the transmissions of unauthorized personal data can be costly.  As with battery degradation, Plaintiffs have shown that Apple and third parties studied the problem extensively.  The problem when the iDevices were first introduced was not as pronounced since carriers still sold unlimited data plans.  However, as the ubiquity of iDevices increased, carriers phased out unlimited plans and now commonly charge customers (prepaid or not) for the data they use.  Plaintiffs recognize that providing a unitary theory of damages for the class as to bandwidth usage is not feasible.  However, if this Court certifies this issue for Rule 23(b)(2) purposes, then each Class member should not have to relitigate that liability finding and should be allowed to present evidence in an individual trial or arbitration proving the damages he/she suffered as a result of the violation.

## VII.   CONCLUSION

Without question, the evidence supports Plaintiffs' claims that Apple has and will continue, absent this Court's intervention, to violate the contractually-promised privacy rights of the Plaintiffs, as well as continue to arbitrarily apply its own published privacy policies.  Apple's conduct is inconsistent with its own Terms of Use and SLA policy.  Plaintiffs seek an order certifying the following:

1.  A Rule 23(b)(2) class seeking declaratory and injunctive relief related to breaches of its SLA and Privacy Policy in violation of the UCL and CLRA that arose from Apple's (i) use and disclosure of personal identifiers; (ii) failure to enforce its internal policies regarding privacy; (iii) violating its express representations regarding data security; and (iv) failing to fully and accurately disclose the transmission of user data;

2.  A Rule 23(b)(2) class seeking declaratory and injunctive relief related to breaches of its SLA and Privacy Policy in violation of the UCL and CLRA that arose from Apple's failure to honor the geo-location "off" position;

3.  Rule (b)(3) liability-only class seeking a liability finding related to unauthorized transmissions and failure to honor geolocation "off" degraded battery life and forced class members to pay for bandwidth usage charges incurred by others;

1    4.  The appointment of Plaintiffs Anthony Chiu, Cameron Dwyer, Isabella Capiro, and Alejandro

2   Capiro be appointed class representatives; and

3    5.  The appointment of KamberLaw, LLC as lead class counsel.

4                                        Respectfully submitted,

5   DATED: August 19, 2013              KAMBERLAW, LLC

6                                        By:    s/Scott A. Kamber
                                                SCOTT A. KAMBER (pro hac vice)
7                                               DAVID A. STAMPLEY   (pro hac vice)
                                                skamber@kamberlaw.com
8                                               dstampley@kamberlaw.com
                                                KAMBERLAW, LLC
9                                               100 Wall Street, 23rd Floor
                                                New York, NY 10005
10                                              212.920.3072 Telephone
                                                212.202.6364 Facsimile
11
                                                DEBORAH KRAVITZ (SBN 275661)
12                                              dkravitz@kamberlaw.com
                                                KAMBERLAW, LLC
13                                              141 North St.
                                                Healdsburg, CA 95448
14                                              707.820.4247 Telephone
                                                212.202.6364 Facsimile
15

16                                              *Interim Class Counsel for Consolidated Plaintiffs*

17                                              WILLIAM M. AUDET
18                                              JONAS P. MANN
                                                waudet@audetlaw.com
19                                              jmann@audetlaw.com
                                                AUDET & PARTNERS, LLP
20                                              221 Main Street, Suite 1460
                                                San Francisco, CA 94105
21                                              415.568.2555 Telephone
                                                415.568.2556 Facsimile
22                                              *Liaison Counsel for Consolidated Plaintiffs*

23                                              ROBERT K. SHELQUIST
                                                KAREN H. RIEBEL
24                                              rshelquist@locklaw.com
                                                khriebel@locklaw.com
25                                              LOCKRIDGE GRINDAL NAUEN P.L.L.P.
                                                100 Washington Avenue S., Suite 2200
26                                              Minneapolis, MN 55401
                                                612.339.6900 Telephone
27                                              612.339.0981 Facsimile

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEIGH SMITH
JOSHUA E. KELLER
lsmith@milberg.com
jkeller@milberg.com
MILBERG LLP
One Pennsylvania Plaza
New York, NY 10119
212.594.5300 Telephone
212.868.1229 Facsimile

JEREMY WILSON
jeremy@wtlfirm.com
WILSON TROSCLAIR & LOVINS
302 N. Market Street, Suite 501
Dallas, TX 75202
214.430.1930 Telephone
*Executive Committee for Consolidated Plaintiffs*