1    SCOTT A. KAMBER
     DAVID A. STAMPLEY
2    skamber@kamberlaw.com (pro hac vice)
     dstampley@kamberlaw.com (pro hac vice)
3    KAMBERLAW, LLC
     100 Wall Street, 23rd Floor
4    New York, NY 10005
     212.920.3072 T
5    212. 202.6364 F

6    DEBORAH KRAVITZ (SBN 275661)
     dkravitz@kamberlaw.com
7    KAMBERLAW, LLP
     141 North Street
8    Healdsburg, CA 95448
     707.820.4247 T
9    212.202.6364 F

10   [*See Signature Block for Additional Counsel*]

11            UNITED STATES DISTRICT COURT

12        NORTHERN DISTRICT OF CALIFORNIA

13             SAN JOSE DIVISION

| | |
|---|---|
| IN RE iPhone/iPad APPLICATION CONSUMER PRIVACY LITIGATION | Case No.: 5:11-MD-02250-LHK<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT APPLE INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date:    November 7, 2013<br>Time:            1:30 P.M.<br>Courtroom:      4<br><br>The Honorable Lucy H. Koh |

473671.1

## **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................1

I.      PRELIMINARY STATEMENT ..................................................................1

II.     MR. BOLAS'S OPINIONS MUST BE EXCLUDED OR DISREGARDED.................2

III.    STATEMENT OF RELEVANT FACTS AND SUPPORTING RECORD....................4

        A.    Facts Relating to Misrepresentations About the Ability to Turn Location Services "Off" ........................................................................5

        B.    Facts Relating to Other Misrepresentations About Personal and Device Data......7

        C.    Apple Violated its Uniform Policies Through Unauthorized Consumption of User Resources ...........................................................................10

        D.    Facts Relating to the Representative Plaintiffs ....................................11

IV.     ARGUMENT .........................................................................................13

        A.    Legal Standard.........................................................................13

        B.    Plaintiffs Have Article III Standing ...............................................14

        C.    Summary Judgment Cannot Be Granted on Plaintiffs' UCL Claim ...................18

              1.    Plaintiffs Have Standing Under the UCL...................................18

              2.    Plaintiffs' Evidence Supports Their "Fraud" Claim .......................18

              3.    Issues of Material Fact under the "Unfairness" Prong.....................23

              4.    "Unlawful" Claim .....................................................25

        D.    Summary Judgment cannot be Granted on Plaintiffs' CLRA Claim ..................25

V.      CONCLUSION ......................................................................................25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**F**EDERAL **C**ASES

4

*Anderson v. Liberty Lobby, Inc.*
5      477 U.S. 242 (1986) ............................................................................................. 13

*Baghdasarian v. Amazon.com Inc.*
6      458 Fed. App'x 622 (9th Cir. 2011) ..................................................................... 19

7
*Celotex Corp. v. Catrett*
8      477 U.S. 317 (1986) ............................................................................................. 13

9
*Clemens v. DaimlerChrysler Corp.*
      534 F.3d 1017 (9th Cir. 2008) .............................................................................. 24
10

11
*DSU Med. Corp. v. JMS Co., Ltd.*
      296 F. Supp. 2d 1140 (N.D. Cal. 2003) ................................................................. 3

12
*Freeman v. Time, Inc.*
13      68 F.3d 285 (9th Cir. 1995) .................................................................................. 22

14
*Frogface v. Network Solutions, Inc.*
      No. C-00-3854-WHO, 2002 WL 202371 (N.D. Cal. Jan. 14, 2002) ..................... 24
15

16
*Hauk v. JP Morgan Chase Bank USA*
      552 F.3d 1114 (9th Cir. 2009) .............................................................................. 16

17
*In the Matter of Microsoft Corporation*
18      Federal Trade Commission, File No. 012 3240 ..................................................... 7

19
*In re HP Inkjet Printer Litig.*
      No. C 05-3580 JF, 2008 WL 2949265 (N.D. Cal. July 25, 2008) ............... 16, 18, 25
20

21
*In re iPhone App. Litig.*
      844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............................................................... 20

22
*In re Sony Gaming Networks*
23      No. 11-md-02258-AJB-MDD, 2012 WL 4849054 (S.D. Cal. Oct. 11, 2012) ....... 22

24
*Janda v. T–Mobile USA, Inc.*
      378 Fed. App'x 705 (9th Cir.2010) ...................................................................... 22
25

26
*Lujan v. Defenders of Wildlife*
      504 U.S. 555 (1992) ............................................................................................. 14

27
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
28      475 U.S. 574 (1986) ............................................................................................. 13

*Miletak v. Allstate Ins. Co.*
  No C 06-03778 JW, 2010 WL 809579 (N.D. Cal. Mar. 5, 2010) ........................................ 21

*O'Shea v. Epson Am., Inc.*
  No. CV 09-8063 PSG, 2011 WL 3299936 (C.D. Cal. July 29, 2011) ...................... 13, 19, 21

*Ries v. Ariz. Beverages USA LLC*
  No. 10-01139, 2012 WL 5975247 (N.D. Cal. Nov. 27, 2012).............................................. 19

*Rubio v. Capital One Bank*
  613 F.3d 195 (9th Cir. 2010) .............................................................................................. 23

*Shalaby v. Bernzomatic*
  281 F.R.D. 565 (S.D. Cal. 2012) ....................................................................................... 24

*Smith v. Chase Mortgage Credit Group*
  653 F. Supp. 2d 1035 (E.D. Cal. 2009) ............................................................................. 24

*Soriano v. Countrywide Home Loans, Inc.*
  No. 09–CV–02415–LHK, 2011 WL 1362077 (N.D. Cal. Apr.11, 2011)...................... 14, 24

*Southland Corp. v. Emerald Oil Co.*
  789 F.2d 1441 (9th Cir. 1986) ............................................................................................ 20

*U.S. v. Chang*
  207 F.3d 1169 (9th Cir. 2000) .............................................................................................. 3

**CALIFORNIA CASES**

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*
  20 Cal. 4th 163 (Cal. 1999) ............................................................................................... 23

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp..*
  72 Cal. App. 4th 861 (Cal. 1999) ...................................................................................... 23

**CALIFORNIA STATUTES**

Ca. Civ. Code § 1798.83 ....................................................................................................... 23

Ca. Bus. & Prof. Code §§ 22575-22579 ................................................................................ 23

**OTHER AUTHORITIES**

Article III, U.S. Const. ..................................................................................................... 14, 16

Fed. R. Evid. 702................................................................................................................... 3

Local Rule 7-3(a) .................................................................................................................. 2

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

1

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs respectfully submit the following in opposition to Defendant Apple Inc.'s ("Defendant" or "Apple") Motion for Summary Judgment (Dkt. 231) ("Motion" or "Def.'s Br."). For the reasons stated below, Apple's Motion must be denied.

## **I.     PRELIMINARY STATEMENT**

Despite public disclosure of Apple's clandestine collection and sharing of private information and geolocation data, Apple and its attorneys continue to claim Plaintiffs are wrong on the facts and law and plead a case that should have been dismissed. As is now clear, the evidence fully supports Plaintiffs' theories, and Apple itself has, since the inception of this case, undertaken numerous affirmative actions to attempt to 'cure' the issues it has called fictions.

Plaintiffs' evidence and expert reports establish that Apple repeatedly misrepresented that Class Members could prevent the collection of geolocation information by switching Location Services to "off." In addition, Apple has consistently failed to protect the privacy interests of Class Members and has inconsistently applied its privacy guidelines for third party Apps, which are available only through Apple's App Store. Indeed, throughout the Class Period, Apple repeatedly acted in contravention of representations regarding data privacy and protection it made to Class Members in its Customer Privacy Policy ("Privacy Policy") and Software License Agreements ("SLAs"). *See* Declaration of Scott A. Kamber ("Kamber Decl.") Exs. A-E. Apple continues to mislead Plaintiffs and Class Members through material misrepresentations and omissions regarding 1) the use and disclosure of personal identifiers such as UDIDs; 2) its failure to enforce internal policies regarding privacy; 3) express representations about data security; and 4) its failure to disclose fully and accurately the transmission of user data.

Ignoring the factual record developed thus far, Apple again seeks summary judgment based on an analysis of Apps and its iOS[1] proffered by its unqualified forensic "expert." Apple ignores discovery that does not "fit" into its Motion, including Plaintiffs' testimony that directly

---

[1] Apple has admitted that all of its iDevices consist of two inseparable components: the iPhone hardware and its iOS. Apple has explicitly stated that "iPhone firmware is not itself a product, but a component of the iPhone mobile computing product." *See* Kamber Decl. Ex. F at 18.

contradicts the core of the Motion and highlights the existence of myriad factual disputes.[2]

Apple's Motion should therefore be denied.

## II.   MR. BOLAS'S OPINIONS MUST BE EXCLUDED OR DISREGARDED[3]

In a case about what data was *transmitted from* Plaintiffs' iDevices, Apple proffers a witness who only knows how to look for artifacts *stored on* devices. Mr. Bolas, has no expertise in how iDevices and Apps transmit data. Bolas Decl. ¶ 2 & Ex. A (Dkt. 233); Kamber Decl. Ex. H at 281:2-5, 305:14-21, 306:10-14. He has no understanding of reliable methods to test for iDevice and App transmissions of data, such as dynamic (i.e. live) analysis,[4] or advanced static analysis (such as reviewing the in-App binary code). *Id.* He lacks any qualifications to understand that looking for artifacts in iDevice file systems is a useless exercise. *See* Kravitz Decl. Ex 1 ¶ 42. Thus, it is no surprise that Mr. Bolas, who merely performed a rudimentary and irrelevant static analysis of Plaintiffs' iDevice storage, found "no evidence" to support Plaintiffs claims. Bolas Decl. ¶ 5.

Then, fully armed with information on the device models and operating systems, and in possession of complete images of Plaintiffs' devices (including the Apps residing on them)—but without ever asking Apple how to test them—Mr. Bolas leapt far beyond his skill set to the unsupported conclusions that: "Dynamic analysis of the Plaintiffs' iPhones and backups in their current states is not a feasible method for determining what data historically was transmitted by apps" and, "a dynamic analysis requires recreating the exact technical environment that existed at the time of the alleged transmission." *Id.* ¶ 21. Mr. Bolas is not qualified to make either

---

[2] As of this late date, Apple is still producing documents pursuant to Plaintiffs' Motion to Compel (Dkt. 150), has "clawed back" hundreds of allegedly privileged documents, and is engaged in a disputed privilege log process. Following the discovery sanctions stipulation, Apple produced over 67,000 new documents. *See* Kamber Decl. ¶ 4. Then, shortly before Plaintiffs' class certification motion was due, Apple's counsel made a claw back demand. The parties are meeting and conferring about the demand. If an agreement is not reached, further motion practice will ensue.

[3] Pursuant to Local Rule 7-3(a),Plaintiffs raise their *Daubert* challenge in this brief. Because Apple relies on Bolas's declaration to support many of its purported "facts" pertaining to the technical characteristics and capabilities of iPhones, Plaintiffs respectfully request that a *Daubert* hearing be heard prior to the Court hearing the instant Motion\.

[4] ███████████████████████████

1   statement, and neither statement is true. *See* Kravitz Decl. Ex. 1 ¶¶ 40-46, (explaining use of a

2   more sophisticated and probative, binary static analysis of actual App code, to validate Dr.

3   Marziale's dynamic analysis of Plaintiffs' iDevices and Apps). In short, Mr. Bolas's conclusions

4   about the provability of historical transmissions are unreliable, baseless, incorrect, are of no use

5   to the Court, and must be excluded, or at least given the weight they deserve which is none.

6   Apple simply hired Mr. Bolas to bury his head in the sand on any and all issues that could

7   support Plaintiffs' case. His limited expertise made him the perfect ostrich.

8          A witness may be qualified as an expert "by knowledge, skill, experience, training, or

9   education." Fed. R. Evid. 702. The burden of proving these qualifications rests on the offering

10  party. *DSU Med. Corp. v. JMS Co., Ltd.*, 296 F. Supp. 2d 1140, 1146-47 (N.D. Cal. 2003). A trial

11  court, as gatekeeper, may exclude evidence when "there is simply too great an analytical gap

12  between the data and the opinion proffered." *Id.* at 1147; *see also U.S. v. Chang*, 207 F.3d 1169,

13  1172-73 (9th Cir. 2000) (no abuse discretion in precluding expert from testifying about matters

14  outside scope of expertise).

15         Mr. Bolas fails to satisfy *any* of the Rule 702 criteria that would qualify him to opine on

16  Class Members' iPhones' transmission of data to Apple or, through Apps, to third party network

17  locations.[5] Accordingly, Plaintiffs move to exclude Mr. Bolas's numerous statements and

18  opinions outside his realm of expertise, detailed in Appendix B. The only Apple document Mr.

19  Bolas even reviewed for his opinion was an Apple web page he did not print and could not

20  identify. *See* Kamber Decl. Ex. H at 87:9-23, 89:5-8, and 131:15-132:13. Mr. Bolas has no

21  experience or training relating to analysis of data transmissions involving Apps, iDevices, or

22  geolocation services. *Id.* at 198-200, 281:2-5, 306:10-14, and 305:14-21. Mr. Bolas did not speak

23  with anyone at Apple (*id.* at 91:2-4), did not understand enough about how Apps transmit data to

24  realize that his static, file storage analysis and conclusions are irrelevant. *See, e.g.*, *id.* at 91:2-4;

25  198:12-25; and Kravitz Decl. Ex 1 ¶ 42.[6]

---

[5] Appropriate qualifications are set forth in Plaintiffs' experts' declarations.  *See* Kravitz Decl.
Ex. 1 ¶¶18-24; *id.* Ex. 2 ¶¶ 3-12; *id.* Ex. 26 ¶¶ 7-25.

[6] Mr. Bolas did perform one "live" device test. He tested the functioning of the Location
Services, but he did so on a device running a version of iOS not related to this case. Kamber
Decl. Ex. H at 271:18-271:9.

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Apple proffers as an expert someone qualified to preserve device data, look at that data, and report what he sees. As to Mr. Bolas's performance of these tasks, Plaintiffs do not contest his findings. To the extent Mr. Bolas's statements exceed that scope, Plaintiffs move to exclude, or disregard them. Accordingly, Plaintiffs move to strike all paragraphs except ¶¶ 1-4, 30-33, and 77-83. In addition, Plaintiffs move to strike Bolas Decl. Exs. B and C (Dkt. 234-2 & 234-3) as inadmissible hearsay.

## III.    STATEMENT OF RELEVANT FACTS AND SUPPORTING RECORD

This case involves a host of misrepresentations and/or misleading statements and omissions Apple made to Plaintiffs and Class Members regarding the privacy and security of iDevice users' data.[7] First, Apple misrepresented Class Members' ability to turn "off" Location Services, when, in fact, Apple knew selecting Location Services "off" would not render it unable to transmit location information and caused the unauthorized transmission of users' location information after iPhone users had selected "off." iDevices are designed so they can determine the exact location of users, transmit that data to Apple, and, if the user grants permission, allow Apps to access the information. This transmittal of location information occurred even when Location Services "off" was selected, contrary to Apple's express representations.

Second, Apple failed to disclose to Plaintiffs and Class Members that it designed the iOS environment to easily transmit a great deal of an iDevice user's personal and device data to third-party advertising and analytics companies, whose existence is unknown to most iDevice users. These third parties surreptitiously collect and compile Class Members' data and use it to track Class Members across multiple Apps and platforms, violating the privacy of users,[8] and causing device resources to be consumed without the knowledge or consent of their users.

---

[7] Appendix A, attached hereto, identifies numerous misrepresentations in Apple's brief.

[8] Apple represented to the U.S. Copyright Office that iPhones were "designed to allow iPhone users to *safely and reliably download third party applications*." Kamber Decl. Ex. F at 4-5 (emphasis added).

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

A.    **Facts Relating to Misrepresentations About the Ability to Turn Location Services "Off"**

In a practice Apple refers to as geo-tagging,[9] Apple has collected—██████████ ████—location data from all iDevices running iOS versions that pre-date iOS 4.1, even when Location Services on those iDevices is set to "Off." *See* Kamber Decl. Ex. I at 0002929 & n.4; Kamber Decl. Ex. S at 1026916; *id.* Kravitz Decl. Ex. 4 at 114-16; *id.* Ex. 5. Location data were not only collected by Apple during the relevant Class Period, but also shared with third parties.[10]

Whether or not Apple associates the location data it harvests with a particular iDevice and/or user, Apple's conduct violates the express terms of the iDevice SLAs insofar as it does not respect the users' choices to disable location services on their iDevices. ███████████████ ████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████ ██████████████████ Kamber Decl. Ex. J. Specifically, the purpose of Apple's geo-tagging was to build and refine its own database and rely less upon third-party databases for which it had to pay, such as Skyhook Wireless. *See* Kamber Decl. Ex. I at 0002927.

Apple did not adequately disclose to users or obtain their consent in the SLA for iOS 4.0 to use device location for geo-tagging (or the collection of any other location information, for that matter) when the Location Services setting was set to "off." *See* Dkt. 234 (Buckley Decl.) ¶¶ 7-9. While Apple updated the iOS to eliminate its complete disregard of users' location services preferences with iOS 4.3.3, it continued this harvesting activity for all users who chose not, or were unable, to upgrade their iOS beyond iOS 4.0.[11] *See* Kamber Decl. Ex. K at 1027040; *id.* Ex. I at 0002927.

---

[9] "Geo-tagging" is a practice whereby Apple tags the location of an iDevice to nearby cell towers and Wi-Fi hotspots. *See* Kamber Decl. Ex. I at 0002928 ("The mobile devices intermittently collect information about Wi-Fi hotspots and cell towers they can 'see' and tag that information with the device's current GPS coordinates, i.e. the devices 'geo-tag' hotspots and towers.").

[10] For users of iOS version 4.0 and prior, Apple shared and continues to share this information (plus GPS coordinates, where available) with Google and/or Skyhook Wireless, even when Location Services is toggled to "off." *See* Kamber Decl. Ex. K at 1027040; *see also id.* Ex. I at 0002927.

[11] Apple periodically releases updated versions of iOS ████████████████████████ ███████████████████████████████████████████████████████████████████ *Id.*

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Separate and apart from the improper geo-tagging described above, Apple admits that, for users who ran iOS versions 4.1 and later from June 21, 2010, through April 27, 2011, Apple engaged in another classwide practice that violated the iDevice SLAs' express provision that a user can turn locations services "off" completely and for all purposes. During this time period, even when Location Services was off, iDevices would use their resources and the functionality of Location Services to collect and exchange location information with Apple's servers. Kamber Decl. Ex. I at 0002928. This activity affected the Capiro Plaintiffs and all Class Members who turned off Location Services, irrespective of what iDevice they were using. *See* Kravitz Decl. Ex. 6 at 1004683 (

The issue became public with the filing of the amended complaint in this lawsuit, a Wall Street Journal article, and a flurry of posts on security blogs. Within days, Apple publicly admitted the post-iOS 4.1 activities, blaming a "bug." Kamber Decl. Ex. I at 0002933.

[12] Apple issued an iOS update on May 4, 2011. *Id*. at 0002928. The update only fixed the "bug" for users running iOS versions 4.1 or higher. Anyone who ran (and/or continues to run) 4.0 continued to be affected by Apple's location harvesting program. *See* Kravitz Decl. Ex. 4 at 144; Kamber Decl. Ex. I at 0002929.

The Capiro Plaintiffs and all Class Members are further damaged because

---

[12]

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

**B.      Facts Relating to Other Misrepresentations About Personal and Device Data**

Apple's omissions and misrepresentations create the false impression that much of the information it gathers from users' iDevices is not "personal" information. Apple misleadingly classifies the following categories as non-personal: "occupation, language, zip code, area code, unique device identifier, location, and the time zone." Kamber Decl. Ex. A at 002910; *id.* Ex. B at 1034295. When any one of these categories is combined with a unique device identifier, such as the "UDID," however, it becomes personally identifiable information by any accepted definition. In fact, "personally identifiable information" or "personal information" (PII) has been defined by the Federal Trade Commission,[13] and the California Attorney General,[14] to include many of the categories Apple excludes from its classification. Worse yet, until the filing of this action, Apple, ██████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████ While denying liability, Apple somewhat ironically claims to have remedied the conduct Plaintiffs complain of through the UDID "deprecation" process and the implementation of a substituted advertising identifier. Thus far, however, Apple's corrective action has been ineffective and leaves class members' personal information exposed to this day.

It is undisputed that Apple controls how Apps are created and function through a series of Apple-created technical tools it requires developers to use in creating the Apps offered in the App Store. ██████████████████████████████████████████████████ ███████ ████████████ ██████████ █████████ ████ ████████ █████████ ████████ ██████

---

[13] "Individually identifiable information from or about an individual [consumer] including, but not limited to: (a) a first and last name; (b) a home or other physical address, including street name and name of city or town; (c) an email address or other online contact information, such as an instant messaging user identifier or a screen name that reveals an individual's email address; (d) a telephone number; (e) a Social Security Number; (f) a persistent identifier, such as a customer number held in a 'cookie' or processor serial number, that is combined with other available data that identifies an individual; or (g) any information that is combined with any of (a) through (f) above." *In the Matter of Microsoft Corporation,* Federal Trade Commission, File No. 012 3240, Agreement Containing Consent Order, pp. 2-3, Aug. 8, 2002, *http://www.ftc.gov/os/caselist/0123240/ microsoftagree.pdf.*

[14] *See* Kamber Decl. Ex. L at 6 (defining Personally Identifiable Information as "any data linked to a person *or persistently linked to a mobile device*: data that can identify a person via personal information or a device via a unique identifier. Included are user-entered data as well as automatically collected data" (emphasis added)).

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

1 ███████████████████████████████████████████████

2 ███████████████████████████████████████████████

3 █████████████████████████████████████ Thus, the purportedly

4 free Apps in the App Store imposed hidden costs on Plaintiffs.

5      It is also undisputed that all iDevices run on iOS. █████████████████

6 ██████████████████████████████████ ██ ████████████████████

7 ███████████████████████████████████████████████

8 ███████████████████████████████████████████████

9 ███████████████████████████████████████████████

10 ███████████████████████████████████████████████

11 ████████████████████

12    ██████████████████████████████████████████████

13 ████████████████████████████████ █ ██████████ To gain access,

14 App developers must agree to Apple's SDK Agreement. Kamber Decl. Ex. K at 1027043. All

15 Apps in the App Store are written with Apple's SDKs. Kravitz Decl. Ex. 1 ¶ 30; *id.* Ex. 9 at 33:1-

16 7. Finally, for Apple to consider an App for distribution in the App Store, the developer must

17 agree to a Program License Agreement ("PLA") and pay a fee. *Id.* Ex. 1 ¶ 33; Kamber Decl. Ex.

18 K at 1027043.

19    ██████████████████████████████████████████████

20 ███████████████████████████████████████████████

21 ███████████████████████████████████████████████

22 _____

23 [15] ██████████████████████████████████████████████

24 ███████████████████████████████████████████████

25 ███████████████████████████████████████████████

26 ███████████████████████████████████████████████

27 ████████████████████

28 [16] ██████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

1 ████████████████████████████████████████████████████ ██████

2 ███████████████████████████████████████████████████████████

3 ███████████████████████████████████████████████████████████

4 ████████████████████████████████████████████ Kamber Decl.

5 Ex. G at 33:15-34:2; 36:13-37:5; 32:16-33:11; 39:24-40:9; 37:6-38:4; 42:12-43:2.[18]

6     █████████████████████████████████████████████████████

7 ███████████████████████████████████████████████████████████

8 ███████████████████████████████████████████████████████████

9   ███████████    The personal information collected by these third parties includes Plaintiffs'

10 addresses and current whereabouts; UDID; the user's gender, age, zip code, and time zone; and

11 App-specific information such as which functions Plaintiff performed on the App. Kamber Decl.

12 Ex. T; Kravitz Decl. Ex. 2 at Exs. 3-4. ███████████████████████████

13 ███████████████████████████████████████████████████████████

14 █████████████████████████████████ █ █████████████████████████

15 ███████████████████████████████████████████████████████████

16 ██████████████████████████████████████████████

17       Internally, Apple ██████████████████████████████████████

18 ███████████████████████████████████████████████████████████

19 ███████████████████████████████████████████████████████████

20 ███████████████████████████████████████████████████████████

21 ███████████████████████████████████████████████████████████

22 ███████████████████████████████████████████████████████████

23 ███████████████████████████████████████████████████████████

---

24 [17] Apple's claim that it has nothing to do with Apps sharing user data with third parties is
25 contrary to its own developer license agreement, which, during the class period, included
   provision 3.3.9. 3.3.9 provided clear restrictions on third party access, sharing, use, and
26 disclosure of device and personal data. As detailed below, Apple only enforced the standards in
   3.3.9 when it suited Apple, not strictly as promised in its representations.

27 [18] ███████████████████████████████████████████████████████
   ██████████████████████

28 [19] ███████████████████████████████████████████████████████
   ██████████████████████████████████████████

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████

██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████

**C.     Apple Violated its Uniform Policies Through Unauthorized Consumption of User Resources**

Apple generates revenue from its own advertising in the App ecosystem. On July 1, 2010, Apple launched iAd, a proprietary mobile advertising network. Kamber Decl. Ex. I at 2930. The iAd network serves ads to iDevices running iOS 4 and later. *Id.* ████████████████████

████████████████████████████████████████████████████

████████████ iAd works the same across all iDevices that run certain versions of iOS. Kamber Decl. Ex. K at 1027042; *id.* Ex. I at 0002930-31. iAd provides for both interest- and location-based advertising.

Apple collects geolocation information from all iDevices for its iAd network by designing iOS to send location information to iAd servers that translate the detailed geolocation data into zip codes that are stored in a manner that associates zip codes with users. *Id.* at 0002931. All ads served to a user are saved on the server with an association to the user. *Id.* A user may not opt out of iAd location-based advertising and still use any location functionality. *See id.* ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

1  ████████████████████████████████████████████████

2  ████████████████████████████████████████████████

3  ████████████████████████████████████████████████

4  ████████████████████████████████████████████████

5  ████████  After public outcry, Apple stopped this practice, and now stores limited information

6  more securely. Kamber Decl. Ex. I at 0002928.

### D.    Facts Relating to the Representative Plaintiffs

Apple does not contest that Plaintiffs Dwyer and Chiu reside in California, or that they each acquired iPhones for personal, family, or household purposes. *See* Kravitz Decl. Ex. 19 ¶¶ 4-5; *id.* Ex. 20 at 6:24-7:1, 15:16-16:3; *id.* Ex. 21 at 6:19-21, 8:25-9:2, 46:23-47:6; Kamber Decl. Ex. M ¶¶ 3-4.

Contrary to Apple's false and misleading arguments, the availability of purportedly free Apps in the App Store was a significant factor in Plaintiffs Dwyer and Chiu's respective decisions to purchase an iPhone. *See* Kravitz Decl. Ex. 19 ¶ 4; *id.* Ex. 20 at 15:22-16:3, 31:4-9; *id.* Ex. 21 at 14:9-22, 138:19-139:2; Kamber Decl. Ex. M ¶ 4. In addition, Apple's promise to safeguard the privacy and security of Plaintiff Dwyer and Chiu's personal information was a significant factor in their own decisions to purchase an iPhone. *See* Kravitz Decl. Ex. 19 ¶¶ 6-7; *id.* Ex. 21 at 141:7-21, 145:6-17, 196:14-25; Kamber Decl. Ex. M. ¶¶ 6-7.

Plaintiff Dwyer downloaded and used numerous free Apps, e.g., Pandora, from the App Store during the Class Period. *See* Kravitz Decl. Ex. 19 ¶ 5.[20] Plaintiff Chiu also downloaded and used numerous free Apps, such as Flixster, Urbanspoon, and Dictionary.com, from the App Store during the Class Period. Kamber Decl. Ex. M ¶ 6. Each App subjected Plaintiffs Chiu and Dwyer to the collection of personal information and information about their iPhones by third-party mobile advertising and analytics companies. *See* Kravitz Decl. Ex. 2 ¶¶ 14, 17-24 & Exs. 2-4; *id.* Ex. 19 ¶ 7; *id.* Ex. 20 at 104:5-105:17; 119:8-15; Kamber Decl. Ex. M ¶ 5. When

---

[20] Apple asserts Dwyer never used the Pandora App until after he became a Plaintiff in this action. Def.'s Br. at 11:1-2. In fact, Dwyer testified he could have acquired the Pandora App in 2011. Kravitz Decl. Ex. 21 at 109. The only thing the record clearly shows is that, at the time of his deposition, Apple was unable to determine from its own records when Dwyer downloaded the Pandora App. *See id.* at 108-09. In fact, Mr. Dwyer's iTunes account reflects that he downloaded the Pandora App in September 2011. Kravitz Decl. Ex. 19 ¶ 5.

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

purchasing their iPhones, Plaintiffs Dwyer and Chiu were not aware that downloading and using purportedly free Apps would cause such information to be shared with any third-party advertising network or analytics provider or to be used for third-party advertising purposes. *See* Kravitz Decl. Ex. 19 ¶ 6; *id.* Ex. 20 at 126:25-129:16; *id.* Ex. 21 at 36:14-39:9, 138:19-139:2, 251:2-23, 254:6-255:8; Kamber Decl. Ex. M ¶¶ 5-7. Plaintiffs Dwyer and Chiu consider the information about their mobile communications as personal and confidential. *See* Kravitz Decl. Ex. 19 ¶¶ 6-7; *id.* Ex. 20 at 37:1-38:4; 104:5-105:17; 119:8-15; *id.* Ex. 21 at 110: 21-111:1; Kamber Decl. Ex. M ¶¶ 5-7.

Plaintiffs Dwyer and Chiu testified they were induced to purchase iPhones by Apple offering thousands of purportedly free Apps because Apple failed to disclose that the Apps allowed third parties to collect users' information. *See* Kravitz Decl. Ex. 19 ¶¶ 3-6; Kamber Decl. Ex. M ¶¶ 4-6. Plaintiffs' Dwyer and Chiu overpaid for their iPhones as a result of Apple's failure to disclose its practices. *See* Kravitz Decl. Ex. 19 ¶ 7; *id.* Ex. 21 at 241:5-24; Kamber Decl. Ex. M ¶ 7. Apple's failure to disclose its practices has materially diminished the value of Plaintiffs Dwyer and Chiu's respective iPhones. *See* Kravitz Decl. Ex. 19 ¶ 7; *id.* Ex. 21 at 241:5-24; Kamber Decl. Ex. M ¶ 7; *see also* Kravitz Decl. Ex. 1 ¶¶ 83-98.

Apple does not dispute that Plaintiffs Alejandro and Isabella Capiro reside in Los Angeles County, California, or that Alejandro Capiro purchased an iPhone for Isabella in December 2010 at an AT&T store in California. Kamber Decl. Ex. N at 8:1-21; *id.* Ex. P ¶ 2; *id.* Ex. Q ¶ 2. The iPhone was purchased for and used by Isabella only for her personal use, not for business use. Kamber Decl. Ex. P ¶ 4; *id.* Ex. Q ¶ 5.

Apple's promise to safeguard the privacy and security of Plaintiff Isabella Capiro's personal information was a significant factor in the decision to purchase an iPhone. Kamber Decl. Ex. Q ¶ 10. Isabella downloaded and used numerous free Apps, including Pandora, from the App Store during the Class Period. *Id.* ¶ 9. The Pandora App subjected Isabella to the collection of personal information and information about her iPhone by third-party mobile advertising and analytics companies in breach of the representations made by Apple to Plaintiff Capiro. Kravitz Decl. Ex. 2 at Exs. 2-3. When deciding whether to purchase her iPhone, Isabella

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

1    was not aware that the download and use of purportedly free Apps would cause such information

2    to be shared with any third-party advertising network or analytics provider, or be used for third-

3    party advertising purposes in contravention of Apple's Terms of Service, privacy Policy, and

4    SLA. Kamber Decl. Ex. Q ¶ 10.

5        Apple represented to Plaintiff Isabella Capiro during the Class Period that she could opt

6    out of the Location Services feature of her iPhone by turning it off, and thereby prolong battery

7    life. *See* Dkt. 234. at 7 ("You may withdraw this consent at any time by going to the Location

8    Services setting on your iOS Device and . . . turning off the global Location Services setting . .

9    ."); *see also* Kamber Decl. Ex. O at 29:3-7, 32:5-12, 42:23-43:2, 46:11-47:23, 96:9-17; *id.* Ex. Q

10   ¶ 7. Plaintiff relied on Apple's false representations that data would not be collected from her

11   iPhone and the battery life would not be shortened when Location Services were off. Kamber

12   Decl. Ex. O at 32:5-12, 42:23-43:2, 97:19-25 ("I turned it off, so I didn't want it to . . . gain

13   information and it did."); *id.* Ex. Q ¶ 7. Plaintiffs would not have purchased their iPhones or paid

14   as much for them as they did had they known the phones would not function as Apple

15   represented. Kamber Decl. Ex. P ¶ 6.

16   **IV.    ARGUMENT**

17       **A.    Legal Standard**

18       On a motion for summary judgment, the movant has the burden of demonstrating the

19   absence of a genuine issue of fact for trial, *O'Shea v. Epson Am., Inc.*, No. CV 09-8063 PSG

20   (CWx), 2011 WL 3299936, at *2 (C.D. Cal. July 29, 2011) (citation omitted), and must identify

21   the portions of the record demonstrating this absence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

22   (1986)). An issue of fact is genuine and material "if it cannot be reasonably resolved in favor of

23   either party and may affect the outcome of the suit." *O'Shea*, 2011 WL 3299936, at *3 (citation

24   omitted). In deciding a summary judgment motion, "the evidence of the nonmovant is to be

25   believed, and all justifiable inferences are to be drawn in his favor," *Anderson v. Liberty Lobby,*

26   *Inc.*, 477 U.S. 242, 255 (1986), and "must be viewed in the light most favorable to the party

27   opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

28   (1986). "[T]he district court does not assess credibility or weigh the evidence, but simply

determines whether there is a genuine factual issue for trial." *Soriano v. Countrywide Home Loans, Inc.,* No. 09–CV–02415–LHK, 2011 WL 1362077, at *7 (N.D. Cal. Apr.11, 2011).

## B.     Plaintiffs Have Article III Standing

Plaintiffs have met their burden of demonstrating Article III standing by setting forth by testimony, affidavit, and other evidence specific facts that must be taken as true for purposes of summary judgment. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiffs identify several concrete, imminent harms they have suffered or might suffer from Apple's conduct. First, Plaintiffs' personal information was transmitted to third parties and location data was transmitted to Apple when Location Services was off. Second, Plaintiffs overpaid for their phones. Third, Plaintiffs suffered battery drain and bandwidth usage stemming from unauthorized transmissions by Apple.

Contrary to Apple's assertions, Plaintiffs have identified a concrete, imminent injury that they suffered. *Compare* Def.'s Br. at 15 *with* Kravitz Decl. Ex. 21 at 73:6-8, 208:3–13, 244:7-19, 265:19-266:5; *id.* Ex. 19 ¶ 7; Kamber Decl. Ex. M ¶ 7; *id.* Ex. N at 30:18–31:2, 139:12–14; *id.* Ex. P ¶ 6; *id.* Ex. O at 95:14–19, 32:5–12, 42:23–43:2, 97:2–11, 97:19–25; *id.* Ex. Q ¶ 7. Ms. Capiro also specifically testified that she turned Location Services off in an attempt to save the battery life of her phone. Kamber Decl. Ex. O at 45:22–46:3. The undisclosed use of her battery resources for the transmittal of location information while Location Services was off is a further harm.

Plaintiffs also establish a genuine dispute of material fact regarding their iDevices' transmittal of personal information to third parties, and location information to Apple when Location Services was off. As an initial matter, Apple's argument that Plaintiffs' **iPhones** contain no evidence personal information and location data were sent to Apple or third parties is totally disingenuous because iPhones generally do not retain records of such transmissions. Kravitz Decl. Ex. 1 ¶ 40 ("Because the transmission of data over the network does not leave forensic evidence on the iDevice's file-system, forensic analysis of the file-system is not an adequate method to assess what if any data was transmitted.").

14                                    5:11-MD-02250-LHK
PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████████████

3 ██████████████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████████████████

5 ████████████ Plaintiffs' expert has observed this phenomenon. *See* Kravitz Decl. Ex. 1 ¶ 53-64; *id.*

6 Ex. 2 at ¶¶ 17-24 & Exs. 2-3; *id.* Ex. 12 at 1029714; Kamber Decl. Ex. 10 at 1006784.

7     Plaintiffs also have circumstantial evidence their iDevices transmitted location data to

8 Apple even when Location Services was "off" under two discrete sets of conditions. First, with

9 respect to iPhone users like Isabella Capiro, who ran iOS versions 4.1 and later between June 21,

10 2010, through April 27, 2011, Apple admits the iDevices used their resources along with the

11 functionality of Location Services to collect and exchange location information with Apple's

12 servers, even when Location Services were "off." Kamber Decl. Ex. Ex. I at 0002928; Huang

13 Decl. ¶ 11 (Dkt. 235). Apple does not dispute that Ms. Capiro's first three iPhones, obtained

14 between December 2010 and February 2011, were running iOS 4.2.1 and that Ms. Capiro

15 upgraded her operating system to iOS 4.3.3 (on her third iPhone) on June 11, 2011. Def.'s Br. at

16 11; Dkt. 234 ¶¶ 25–27 & Exs. M–O.

17     Ms. Capiro made explicit in sworn testimony that she turned geolocation off, a fact Apple

18 cites on page 14 of its brief. Kamber Decl. Ex. O at 32:9–12; *see also id.* at 39:16–40:18 (Apple

19 representative told Ms. Capiro how to turn Location Services off at some point after February 27,

20 2011); 43:15–24 (Ms. Capiro "switch[es Location Services] around all the time"); 44:16–45:21

21 (Ms. Capiro turned Location Services off around ten times in 2011); 95:14–18 (Ms. Capiro

22 turned Location Services off "before sometime in April [2011]"); Kamber Decl. Ex. Q ¶ 7; *id.*

23 Ex. N at 98:4–14, 141:6–17. ██████████████████████████████████████

24 ████████████████████████████████████████████████████████████████

25 ████████████████████████████████████████████████████████████████

26 ████████████████████████████████████████████████████████████████

27 ████████████████████████████████████████████████████████████████

28 ████████████ Contrary to Apple's bald assertions, Plaintiffs have adduced both direct and

1  circumstantial evidence that the wrongful conduct they allege indeed occurred, and that they

2  were harmed by it. *See Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1123–24 (9th Cir.

3  2009) (reversing grant of summary judgment for defendant on plaintiff's UCL claim because

4  plaintiff "produced sufficient circumstantial evidence" to establish genuine dispute of material

5  fact).

6         Plaintiffs also allege they were harmed by overpaying for their devices. All of the

7  Plaintiffs received the representations at issue in this action from Apple. Contrary to Apple's

8  argument, Plaintiff Chiu testified that he in fact ***did*** read Apple's terms and agreements when

9  signing up for his iTunes account, albeit at the time of his deposition he could not recall precisely

10 what he had read. *Compare* Def.'s Br. at 9 *with* Kravitz Decl. Ex. 20 at 45:16–24, 47:25–49:2.

11 Courts in this District have held that plaintiffs may establish Article III standing based on their

12 testimony that they received the misrepresentations at issue, even if they could not recall the

13 precise content of the misrepresentations. *In re HP Inkjet Printer Litig.*, No. C 05-3580 JF, 2008

14 WL 2949265, at *3 (N.D. Cal. July 25, 2008) ("A reasonable jury could find that [plaintiff] in

15 fact received [the message at issue] notwithstanding his failure to recall the warning verbatim;"

16 failure to recall "go[es] to the credibility of the evidence"). In addition, Apple does not dispute

17 that all customers must agree to its terms and conditions before accessing the iTunes stores. Dkt.

18 234 ¶ 10. The fact that all Plaintiffs had iTunes accounts is further evidence that Plaintiffs

19 received the misleading representations. *See* Kamber Decl. Ex. N ¶¶ 5-6; *id.* Ex. P ¶¶ 5-6; Kravitz

20 Decl. Ex. 19 at ¶¶ 7-9.

21        Apple is also incorrect when it argues that, "[s]ince Plaintiffs purchased their iPhones for

22 reasons *completely unrelated* to the issues here, they cannot logically or legally ascribe their

23 purchases (at any *price*) to Apple's alleged misconduct." Def.'s Br. at 16:21-23. The availability

24 of Apps in the App Store and Apple's promise to safeguard the privacy and security of their

25 personal information were significant factors in the iDevice Plaintiffs' respective decisions to

26 purchase an iPhone. *See* Kravitz Decl. Ex. 21 at 14:9-22; 138:19-139:2; 141:7-21; 145:6-17;

27 196:14-25; *id.* Ex. 19 ¶ 4, 6–7; *id.* Ex. 20 at 15:22-16:3; 31:4-9; Kamber Decl. Ex. M ¶¶ 4, 6–7.

28

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

In addition, some Plaintiffs also purchased their devices for reasons related to the conduct at issue. When the Capiros bought their iPhones, they wanted to use all of the features of the phones, *as those features were presented within the phones*, even if they were unaware of all features at the time of purchase. Mr. Capiro originally purchased an iPhone *for* Isabella because she wanted all of the benefits attendant to owning an iPhone, which include the ability to disable Location Services. Kamber Decl. Ex. N at 13:9–14. Similarly, Isabella Capiro testified that she wanted an iPhone because she wanted a smartphone, including the special capabilities of smartphones, such as access to the Internet and the use of Apps. Kamber Decl. Ex. O at 9:11–25. When Mr. Capiro purchased iPhones for himself and his daughter Isabella, he expected all of the features of the phones would work as the features presented themselves to work within the devices—e.g., he expected that when the geolocation feature was placed in the "off" position, all aspects of the feature would actually be turned off. Kamber Decl. Ex. N at 138:6–14; *id.* Ex. P ¶ 6.

Finally, Apple fails to seriously address Plaintiffs' allegations that they were injured due to diminished and consumed iDevice resources, such as storage, battery life, and bandwidth; and increased, unexpected, and unreasonable risk to the security of sensitive personal information. Kravitz Decl. Ex. 1 ¶¶ 83-97, 185-192.

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

1

2

3

### C. Summary Judgment Cannot Be Granted on Plaintiffs' UCL Claim

#### 1. Plaintiffs Have Standing Under the UCL

Apple contends Plaintiffs have "admitted that they have not suffered any injury." Def.'s Br. at 17:26-27. Apple is wrong. Plaintiffs have made it clear that Apple's deceptions induced them to overpay for their iDevices and that Apple's conduct consumed the iDevice's finite resources, such as bandwidth, storage space, and battery life. *See supra* Part II.C.

#### 2. Plaintiffs' Evidence Supports Their "Fraud" Claim

##### a. Plaintiffs Relied On the Misrepresentations at Issue

Apple claims Plaintiffs concede they did not review Apple's statements before buying their phones. Def.'s Br. at 18. Plaintiffs make no such concessions. *See supra* Part III.B. To establish the existence of a genuine dispute of material fact, Plaintiffs need not recall with specificity the statements upon which they relied, so long as they produce evidence establishing they received the statements. *In re HP Inkjet Printer Litig.*, 2008 WL 2949265, at *5 (plaintiffs "described sufficiently the communications at issue" to survive motion for summary judgment on UCL and CLRA claims even though "[p]laintiffs cannot identify specifically the false and misleading [messages]… upon which they relied").

The *undisputed* evidence shows all iDevice purchasers must affirmatively read and accept Apple's Privacy Policy and SLA to activate iDevices and download Apps from the App Store. Dkt. 234. ¶ 10; Kamber Decl. Ex. S at 1026904. It is undisputed that each Plaintiff downloaded and used Apps from the App Store. It is also undisputed that all users control Location Services on their iDevices by affirmatively toggling a switch (appearing on their iDevice screens) to "off." Kamber Decl. Ex. I at 0002925. Apple therefore cannot credibly dispute that Plaintiffs *received* the materials containing misleading statements and omissions. Plaintiffs Dwyer and Chiu testified and submitted sworn statements that Apple's misrepresentations and omissions— including misrepresentations and omissions as to the availability of purportedly free Apps in the

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

App Store—were a significant factor in their decisions to purchase iPhones. *See supra* Part II.D. The misrepresentation and omissions were an immediate cause of Plaintiffs' decisions to buy iDevices because they would not have purchased nor paid as much for their iDevices had they known of Apple's practices.[21] These averments create a triable issue of fact as to whether Plaintiffs relied on a material misrepresentation. *See O'Shea*, 2011 WL 3299936, at *10; *see supra* Part II.D & III.B.

"[A] presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material," that is if "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *Ries*, 2012 WL 5975247, at *4. Materiality is generally a question of fact. *Id*. Given Plaintiffs' averments that they agreed to the purchase price of their phones on a mistaken understanding of the availability of free Apps, their belief Apple would protect and safeguard their personal information and respect their election to disable Location Services, and the level of scrutiny Apple's privacy practices (the same at issue in this action) have recently received by Congress and the California Attorney General, the facts misrepresented are not so obviously unimportant that a jury could reasonably find that a reasonable man would not be influenced by them. *See id.*, at *4; *see generally* Kamber Decl. Ex. I; *id.* Ex. K; *id.* Ex. L; Kamber Decl. Ex. S.

Apple's citation to *Baghdasarian v. Amazon.com Inc.*, 458 Fed. App'x 622 (9th Cir. 2011) (Def.'s Br. at 20) is off point. In *Baghdasarian*, the Ninth Circuit affirmed summary judgment in favor of the defendant because there was no genuine issue of material fact as to whether plaintiff relied on Amazon's policy regarding its shipping and handling fee in deciding to purchase books through the Amazon Marketplace. *Id*. at 623. Here, in contrast, Plaintiffs

---

[21]That Plaintiffs had multiple reasons for buying iDevices is not fatal to a showing of reliance. Apple's misrepresentations need not be the sole, predominant, or decisive reason for the action. *Ries v. Ariz. Beverages USA LLC*, No. 10-01139, 2012 WL 5975247, at *5 (N.D. Cal. Nov. 27, 2012) (citing *In re Tobacco II Cases*, 46 Cal.4th 298, 326 (2009)). Further, Plaintiffs' continued use of Location Services and free Apps and/or have replaced their iDevices after the lawsuit was filed is irrelevant. *See* Def.'s Br. 18-19. Apple claimed it resolved the Location Services "bug" in May 2011, Def.'s Br. 13, so it is no surprise Plaintiffs continue to use that feature. Because iDevices and Apps are used in all facets of Plaintiffs' lives, Apple cannot expect them to abandon their iDevices and Apps, migrate to a competitor's platform, and bear the cost (time and money) of that transition. Given their significant investment in the Apple ecosystem, Plaintiffs bring this case primarily for injunctive relief.

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

presented evidence that the *misrepresentations* and omissions at issue were a substantial factor and immediate cause in their decisions to purchase an iDevice.

#### b.    Apple's Misrepresentations Are Likely to Deceive

This Court has already found that the terms of Apple's Privacy Policy were ambiguous and did not necessarily foreclose the claims against Apple. *In re iPhone App. Litig.*, 844 F. Supp. 2d 1040, 1076-77 (N.D. Cal. 2012) (Dkt. 69 at 42). Apple has not adduced any new evidence in support of this motion that would alter this finding. With regard to the Privacy Policy, Apple argues that the policy "clearly states that it applies solely to data that *Apple* 'collect[s], use[s], disclose[s], transfer[s], and store[s]'—and not to data collected by third parties." Def.'s Br. at 3:23-25. Apple further argues that Apple's Privacy Policy states up front that it only covers information collected and used by Apple—and not data collected by third parties. *Id.* at 21. As a result, according to Apple, "no reasonable consumer could read the Privacy Policy as promising to safeguard UDID or other information from third-party apps." *Id*. at 22.

The Court already rejected this argument in its June 2012 Order, holding: "it is *not clear* that Apple *disclaimed* all responsibility for privacy violations because, while Apple claimed not to have a*ny liability or responsibility for any third party materials, websites or services, *Apple also made affirmative representations that it takes precautions to protect consumer privacy*." Dkt. 69 at 42-43 (emphasis added).[22] The Court's Privacy Policy holding was in response to Apple's argument that "the iDevice Class's claims against Apple are foreclosed because [Apple's Privacy Policy and the Terms and Conditions of the iTunes Apps Store] include[] a disclaimer of liability arising from third party conduct." *Id*. Apple now argues "Apple's Privacy Policy at all times clearly informed Plaintiffs that (1) Apple is not responsible for the data collection practices of third-party apps, and (2) apps may collect users' information (even personal information, such as 'contact details')" and, thus, "no reasonable consumer could read the Privacy Policy as promising to safeguard UDID or other information from third-party apps." Def.'s Br. at 22; *cf.*

---

[22] The Court's interpretation of the contract at issue is a matter of law that is now law of the case. *See Southland Corp. v. Emerald Oil Co.*, 789 F.2d 1441, 1443 (9th Cir. 1986) ("Under California law, the interpretation of a written contract is a matter of law for the court even though questions of fact are involved.").

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Kamber Decl. Ex. I at 0002922, 0002929-30 (tenor of Congressional testimony regarding "Apple's commitment to protecting . . . customers' privacy"). But that is contrary to what the Court has already determined—i.e., that it is not clear that the Privacy Policy disclaimed such liability. Dkt. *69* at 42-43. A reasonable consumer could interpret the Privacy Policy as promising to safeguard against privacy violations by third parties. Because "reasonable minds could differ" as to whether a reasonable consumer would likely have been deceived by Apple's Privacy Policy, summary judgment should be denied. *See Miletak v. Allstate Ins. Co.*, No C 06-03778 JW, 2010 WL 809579, at *7 (N.D. Cal. Mar. 5, 2010); *O'Shea*, 2011 WL 3299936, at *9.

In addition, Apple's argument that the Privacy Policy provides that a UDID is non-personal information, and is therefore not covered by the provision Plaintiffs rely on here, Def.'s Br. at 21:7-8, ignores this Court's holding that "there is some ambiguity as to whether the information collected by Apple, *including the user's unique device identifier*, is personal information under the terms of the *Agreement*." Dkt. 69 at 42 (emphasis added). The Court has already determined that Apple's definition of "personal information" is ambiguous and could include UDIDs. *Id.*; *see also* Kamber Decl. Ex. L at 8 (California Attorney General lists unique device identifiers as a type of personally identifiable data). In addition, Plaintiffs presented evidence that ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████

Apple also argues "Plaintiffs lack evidence that even a single piece of 'personal information' as defined in the Privacy Policy was collected or transmitted without their consent." Def.'s Br. at 21:14-15. This is false. Plaintiffs' two experts have offered evidence that Plaintiffs' UDIDs and other personal and device information were transmitted to third party advertising and metrics companies *by* virtue of calls to Apple APIs via iOS, and this evidence creates genuine issues of material fact. *See* Kravitz Decl. Ex. 1 ¶¶ 69-75; *id.* Ex. 2 ¶¶ 17-24 & Exs. 2-4.

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Apple's Privacy Policy is likely to deceive a reasonable consumer for yet another reason: Apple makes certain misrepresentations regarding iAd, its proprietary mobile advertising network, which serves ads to iDevices running iOS 4 and later, and which allows developers to show ads within applications. Kamber Decl. Ex. I at 0002930. In its Privacy Policy, Apple represents that if consumers do not want to receive interest-based advertising, they can opt-out by accessing a link on their device. *Id.* at 0002931. ███████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████ In addition, Apple converted the coordinates into zip codes, stored them, and used them to select a relevant ad for the consumer. Kamber Decl. Ex. I at 0002931. A reasonable consumer would believe that by opting out of the iAd function, Apple would cease *all* advertising activities and would not collect and store their zip code.

The cases cited by Apple in support of its position that clear disclosures defeat Plaintiffs' UCL fraud claim  are inapposite. *See* Def.'s Br. at 22. In those cases, the complained-of conduct was explicitly disclosed and there was no ambiguity in the relevant provisions of disclosures. *Freeman v. Time, Inc.,* 68 F.3d 285, 289-90 (9th Cir. 1995); *Janda v. T–Mobile USA, Inc.,* 378 Fed. App'x 705, 707 (9th Cir.2010); *In re Sony Gaming Networks*, No. 11-md-02258-AJB-MDD, 2012 WL 4849054, at *17 (S.D. Cal. Oct. 11, 2012). Here, the ambiguity in the relevant provisions of the Privacy Policy creates a genuine issue of material fact as to whether Apple's conduct was fraudulent within the meaning of the UCL.

Apple also argues that the representation in its SLAs for iDevices that consumers may prevent location data from being collected and transmitted from their iDevices to Apple and to Apps (and similar statements made in a letter to Congress, *see* Kamber Decl. Ex. K at 1027035), are not "likely to deceive" consumers because, there "is no evidence that Apple collected or used any user's 'location data' when Location Services was 'off.'" Def.'s Br. at 22:27-23:1. Apple is wrong. See *supra* Part II.A. Plaintiffs' evidence shows that Apple collected detailed location data associated with Plaintiffs' iDevices even when they had turned Location Services "off" and that

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

this activity consumed the finite resources of Plaintiffs' iDevices. *Id*. Such evidence presents a genuine issue of material fact sufficient to defeat Apple's motion.

Finally, Apple incorrectly asserts there is no evidence that Ms. Capiro turned Location Services off during the relevant period. Def.'s Br. at 23. Plaintiffs' testimony is to the contrary, and creates a genuine dispute of material fact. *See supra* Part II.D.

### 3.      Issues of Material Fact under the "Unfairness" Prong

Under the balancing test set forth in *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, courts are required to "weigh the utility of the defendant's conduct against the gravity of harm to the alleged *victim*." 72 Cal. App. 4th 861, 886-87 (Cal. 1999).[23] The "unfair" standard "is intentionally broad, thus allowing courts maximum discretion to prohibit new schemes to defraud." *Id*. at 886.

Plaintiffs presented facts showing that the gravity of the harm to the Plaintiffs, i.e., overpayment for their iDevice and the consumption of their iDevice resources, outweighs any benefits to Apple. *See supra* Part II.D. & III.B. ████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ That the harm to Plaintiffs is substantial and outweighs any purported utility to Apple is supported by the fact that the California Attorney General has entered into an agreement with Apple and other leading operators of mobile applications platforms to strengthen privacy protections for users, and has collaborated with these companies to create recommendations for best mobile privacy practices—including greater protection for permanent identifiers like UDIDs and location services. *See* Kamber Decl. Ex. L.

---

[23] Plaintiffs also meet the alternative test set forth in *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co*., 20 Cal. 4th 163 (Cal. 1999). Plaintiffs have presented facts showing that Apple's deceptive privacy disclosures and practices offend public policy tethered to the CLRA, the FAL, and California's information privacy laws, such as the Online Privacy Protection Act, Business and Professions Code Sections 22575-22579, and the "Shine the Light" law, Section 1798.83 of the California Civil Code, which promote consumers' notice and choice with respect to a company's collection, use, and sharing of consumers' personal information. *See supra* Part II.B; Kamber Decl. Ex. L; *Rubio v. Capital One Bank*, 613 F.3d 195, 1204-05 (9th Cir. 2010).

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Apple's argument that Plaintiffs benefit from the use of free apps and Location Services, Def.'s Br. at 23:19-20, misses the point. The cases cited by Apple are unavailing for the following reasons: *Clemens v. DaimlerChrysler Corp.* involved an undisclosed defect that did not manifest when the plaintiff used the product during the express warranty period. 534 F.3d 1017, 1026-27 (9th Cir. 2008). Here, in contrast, the undisclosed transmission and collection of Plaintiffs' personal information has occurred and continues to occur. *See* Kravitz Decl. Ex. 2 at Exs. 2-3. The *Shalaby v. Bernzomatic* court denied a preliminary injunction because plaintiffs' claims of actual injury were the same as those he had asserted in a prior action and were therefore barred by res judicata. 281 F.R.D. 565, 575 (S.D. Cal. 2012). No res judicata issues are present in the instant case. In *Smith v. Chase Mortgage Credit Group*, plaintiff had not shown that defendant's conduct had any adverse impact on him, given that there was evidence that he did not in fact rely on the disclosures made to him during the refinance process. 653 F. Supp. 2d 1035, 1047 (E.D. Cal. 2009) Here, plaintiffs presented evidence that Plaintiffs relied on Apple's disclosures.

Plaintiffs neither benefit from the undisclosed and unconsented-to conduct that Apple engages in when Plaintiffs use free apps and Location Services, nor do they benefit from Apple's deceptive disclosures about these practices. *See Soriano*, 2011 WL *1362077*, at *9. In fact, Apple has failed to articulate a single benefit to any person or entity associated with its *failure to protect Plaintiffs' personal information, as it represented it would, and its practice* of continuing to collect location data when Locations Services were turned "off."

Relying on *Frogface v. Network Solutions, Inc*., No. C-00-3854-WHO, 2002 WL 202371 (N.D. Cal. Jan. 14, 2002) Apple asserts that "an inadvertent software bug is not an 'unfair' business practice." Def.'s Br. 23, n.5. *Frogface* is distinguishable because the court held that the conduct complained of was a result of an isolated "computer synchronization error," not the defendant's business practices. *Id.* at *2. In contrast, here Apple's practices are the result of persistent (years long), routine, and largely uncorrected location harvesting practices as well as its practice of creating tools for third parties to collect Plaintiffs' personal and device information, despite its promise to protect such data.

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

#### 4.    "Unlawful" Claim

Plaintiffs' claim under the UCL's "unlawful" prong survives Apple's Motion because, as explained, *infra* Part V.D, Plaintiffs' CLRA claim survives the Motion.

#### D.    Summary Judgment cannot be Granted on Plaintiffs' CLRA Claim

Apple again argues that "Plaintiffs concede that none of them 'suffered an actual injury' due to Apple's alleged conduct." Def.'s Br. at 24:23-25:1. For the reasons stated above, Apple is wrong. *See supra* Part II.D & III.B. Plaintiffs have made no such concession. Apple also again argues that "Plaintiffs concede that they did not rely on any alleged misrepresentation." Def.'s Br. at 25. As explained above in Parts II.B. and III.C, all Plaintiffs *did* rely on Apple's material misrepresentations, including representations that the Apps were free, when they imposed hidden costs on Plaintiffs. *See In re HP Inkjet Printer Litig.*, 2008 WL 2949265, at *5. *Finally*, in spite of this Court's June 12, 2012 Order, Apple insists that "Plaintiffs' CLRA claim relates to the use of third-party software apps or certain iOS software versions, which are neither a 'good' nor a 'service' under the CLRA." Def.'s Br. at 25. Apple is wrong. The Court's prior decision made clear that the gravamen of the CLRA claims brought by both classes arise out of the fact that the iPhones are "a 'good' covered by the CLRA" that did not perform as promised. Dkt. 69 at 34. In support of its Motion for Summary Judgment, Apple has adduced no evidence whatsoever that would disturb the Court's prior ruling.

## V.    CONCLUSION

For the reasons stated herein, Plaintiffs, on behalf of themselves and the proposed Classes, respectfully request the Court deny Defendant's Motion for Summary Judgment in full.

Dated: September 26, 2013          KamberLaw LLC


                                   s/Scott A. Kamber
                                   Scott A. Kamber

                                   SCOTT A. KAMBER (pro hac vice)
                                   DAVID A. STAMPLEY (pro hace vice)
                                   skamber@kamberlaw.com
                                   dstampley@kamberlaw.com
                                   KAMBERLAW LLC
                                   100 Wall Street, 23rd Floor

New York, NY 10005
212.920.3072 T
212.202.6364 F

DEBORAH KRAVITZ (SBN 275661)
dkravitz@kamberlaw.com
KAMBERLAW, LLP
141 North St.
Healdsburg, CA 95448
707.820.4247 T
212.202.6364 F

*Interim Lead Counsel for Consolidated Plaintiffs*

WILLIAM AUDET
JONAS MANN
waudet@audetlaw.com
jmann@audetlaw.com
AUDET & PARTNERS LLP
221 Main Street, Suite 1460
San Francisco, CA 94105
415.568.2555 T
415.568.2556 F

*Liaison Counsel for Consolidated Plaintiffs*

RICHARD A. LOCKRIDGE
ROBERT K. SHELQUIST
KAREN HANSON RIEBEL
rlockridge@locklaw.com
rshelquist@locklaw.com
khriebel@locklaw.com
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue S., Suite 2200
Minneapolis, MN 55401
612.339.6900 T
612.339.0981 F

LEIGH SMITH
lsmith@milberg.com
JOSH KELLER
jkeller@milberg.com
MILBERG LLP
One Pennsylvania Plaza – 49th Flr.
New York, NY 10119
212.313.5625 T
212.868.1229 F

JEREMY WILSON
jeremy@wtlfirm.com
WILSON, TROSCLAIR & LOVINS

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

302 N. Market St.
Suite 501
Dallas, TX 75202
214.484.1930 T

*Executive Committee for Consolidated Plaintiffs*

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT