Appendix A
Plaintiffs' Opposition to Motion for Summary Judgment

|   | **Apple's Misrepresentations in its Motion for Summary Judgment ("Motion") [Dkt. 231]** | **Facts Refuting Apple's Misrepresentations and Creating Genuine Disputes of Material Fact** |
|---|---|---|
| 1. | "Apple's role is that of an electronics store: it creates the digital storefront where users can browse and download apps, but it does not create, control, or have access to, the software inside the app. Shoemaker Decl. ¶¶ 7-8." Motion at 3. | Apple's Rule 30(b)(6) representative testimony and its Program License Agreement ("PLA") demonstrate that Apple does exhibit control over the software inside an App. In order for App developers to write an App, they must use Apple's iOS software development kit ("SDK"). *See* Kravitz Decl., Ex. 9, (Neuenschwander Dep. at 27:15-29:14), in which he describes the tools Apple uses to control the App development process. Moreover, the only Application Programming Interfaces within the iOS SDK are those created or licensed by Apple. *Id*. at 33:23-38:10. Apple also sets forth guidelines in the PLA with which Apps must comply. *Id*. |
| 2. | Ms. Capiro had Location Services 'on' at the time of her deposition. Motion at 9 (citing Ms. Capiro's testimony). | Apple mischaracterizes Ms. Capiro's testimony. The actual testimony is as follows:<br><br>Q. And you have Location Services on your iPhone today; Correct?<br>A. Yes.<br>Q. And what is your reason for choosing to turn Location Services on on your iPhone even after learning about the things that led you to file this lawsuit?<br>A. Just because it's off on every other app, but I think I have it on for Maps.<br>Q. And why do you choose to have it on for Maps?<br>A. Because I use that app quite a lot and it doesn't work without it.<br>*See* Kamber Decl., Ex. O, (I. Capiro Dep.) at 60:25-61:12.<br><br>This testimony does not establish that Location Services were on at the time of the deposition. |
| 3. | "Mr. Dwyer first used the Pandora app (and first gave Pandora the allegedly "personal information" he complains the | In fact, Apple's counsel admitted that Apple did not have a record of a download of Pandora onto Mr. Dwyer's iPhone, despite its existence on the iPhone. |

| | **Apple's Misrepresentations in its Motion for Summary Judgment ("Motion") [Dkt. 231]** | **Facts Refuting Apple's Misrepresentations and Creating Genuine Disputes of Material Fact** |
|---|---|---|
| | app transmitted), *four days After he filed his complaint*. Dwyer Dep. 148:10-1349:11 (Dwyer first used Pandora when he set up specific radio stations); Bolas Decl. ¶¶ 72-74 (Dwyer's Pandora stations were created July 7, 2012, and there is no evidence of Pandora activity on Dwyer's phone prior to July 7, 2012.)" Motion at 10. | Q. Some of the downloads that are reflected on your phone -- and we have -- we have a copy of your phone -- are not reflected in the app store activity log, which is unusual. So I don't think there's anything nefarious going on; it's just unusual.  But -- so we don't have a record as to when you downloaded Pandora, at least one that we know about.<br>A. Okay.<br>Q. Do you -- do you have a general recollection of what country you were in or where you were at the time that you downloaded Pandora?<br>A. I think it was after I came back here, so that would put us in, you know, January 2011 and on, sometime in that -- in that period.<br>*See* Kravitz Decl., Ex. 21, (Dwyer Dep.) at 108:24-109:12.<br><br>In his Declaration Mr. Dwyer also stated definitively that he first downloaded the Pandora App on September 12, 2011, and that he used the Pandora App for a while in the time period shortly after it was downloaded. *See* Kravitz Decl., Ex. 19, (Dwyer Decl.) at ¶¶ 9-10. |
| **4.** | "Plaintiffs' own experts agree that Apple never collected or received 'location data' from any user when Locations Services was off.  See *infra* pp. 11-12." Motion at 10-11.<br><br>"Indeed, Plaintiff's experts agreed that such serial numbers are not location information and do not constitute 'your location data, including the real-time geographic location of your iPhone' within the meaning of the SLA.  Egele Dep. 161:15-162:3 (serial numbers of Wi-Fi routers and cell towers are not location information); 165:2-19 | Defendant mischaracterizes Plaintiffs' experts testimony:<br><br>●**From Marziale 2/5/13 Depo Transcript,**<br><br>Q. So then it's fair to say that you yourself aren't aware of any user's location information that was contained in the data packet that was transmitted to Apple servers?<br>MR. PARISI: Hold on. Objection. Ambiguous, compound argumentative. Asked and answered.<br>THE WITNESS: I can only tell you what I saw go across the wire, and what I saw go across the wire was Mac addresses, these BSSIDs for wireless access points. How someone interprets or uses those as for location information or not, I just do not know. *See* Kamber Decl., Ex. R**,** **(**Marziale Dep.) at 110:5- |

| **Apple's Misrepresentations in its Motion for Summary Judgment ("Motion") [Dkt. 231]** | **Facts Refuting Apple's Misrepresentations and Creating Genuine Disputes of Material Fact** |
|---|---|
| (location information was not transmitted to Apple when Location Services was off); Marziale Dep. 116:17-117:4 (transmitted information could not identify individuals or their location); Buckley Decl., Ex. A at 4." Motion at 14. | 18.<br><br>BY MS. BERINGER:<br>Q. Is there any information on the page that you would consider to be a user's location information?<br>A. Any other information aside from the wireless app, Mac I.D. stuff?<br>Q. Any information at all. Let me ask it this way: Which--which user's location information, if any, is reflected on Exhibit 67?<br>MR. PARISI: Objection. Incomplete hypothetical.<br>THE WITNESS: In theory these wireless access point Mac I.D.s could be used to pinpoint a user's location."<br>*See* Kamber Decl., Ex. R**,** (Marziale Dep.) at 113:19-114:8.<br><br>Q. Well, what would you need to know to be able to identify a user's location information using the information in Exhibit 67?<br>MR. PARISI: Objection. Calls for speculation.<br>THE WITNESS: Using the information that's right here, I could identify the location of a handset.<br>BY MS. BERINGER:<br>Q. And how would you do that?<br>A. If I had a -- this is all speculative. If I had a database that mapped wireless access point locations to their hardware addresses and then a device sent these things to me and I know where these wireless access points are then I know where the handset is.<br>*See* Kamber Decl., Ex. R **,** (Marziale Dep.) at 114:24-115:14.<br><br>● **From Egele 1/9/13 Depo Transcript**<br><br>Q. And are you aware of any instance in which iOS has enabled an app to access a user's location information without consenting to it in this fashion?<br>MR. STAMPLEY: Objection. |

| | Apple's Misrepresentations in its Motion for Summary Judgment ("Motion") [Dkt. 231] | Facts Refuting Apple's Misrepresentations and Creating Genuine Disputes of Material Fact |
|---|---|---|
| | | A. I am aware of the possibility. I cannot state that it actually happened because I didn't observe it. But I believe the CoreLocation framework would store its latest obtained location information in a cache file, which I believe could be accessed by applications.<br>Q. What is that belief based on?<br>A. Based on an application that I was analyzing in conducting my research, something developed by Nicolas Seriot, that would highlight all the information that can be accessed by an application without raising user awareness.<br>Q. Was that in particular iOS versions or in all iOS versions?<br>A. As far as I know, this was not particular to a specific iOS version.<br>*See* Kamber Decl, Ex. G**,** **(**Egele Dep.) at 154:12-155:9.<br><br>Q. Are you aware of any version of iOS that would have allowed an application to obtain a user's location information through an API when Location Services was off?<br>A. Without splitting hairs, no. Other than that, there is mechanisms where an application could request a user's approximate position based on the IP address that the device currently has obtained through an API --namely, the networking API -- and then relay that information back to Apple, and that is invariant of whether Location Services was on or off.<br>*See* Kamber Decl, Ex. G**,** **(**Egele Dep.) at 156:20-157:7<br><br>Are you aware of any instance where any iOS version transmitted a user's location information to Apple when Location Services was off?<br>A. I am aware of cases where that used to happen.<br>Q. And can you describe what instances you're aware of where Apple obtained a user's location information when Location Services was off.<br>A. It is my understanding that this used to be the case |

|   | **Apple's Misrepresentations in its Motion for Summary Judgment ("Motion") [Dkt. 231]** | **Facts Refuting Apple's Misrepresentations and Creating Genuine Disputes of Material Fact** |
|---|---|---|
|   |   | when the user disabled Location Services and, yet, a third-party application would try to access their location, and then the CoreLocation framework would go and obtain an approximate location from Apple's crowdsource location database to get an approximate location off the phone at the time the request happened.<br>Q. And what is that understanding based on?<br>A. That is based on, again, e-mail discussions that I've seen, and I think Dr. Tribble elaborated on that when he was giving his testimony in front of congressional committee, I think it was, where this was the topic.<br>*See* Kamber Decl, Ex. G, (Egele Dep.) at 158:9-159:10. |
| **5.** | "And there is *no evidence whatsoever that Ms. Capiro ever turned Location Services off* during the relevant time period: all backups of her iPhone show Location Services turned on, and Ms. Capiro testified that she cannot recall whether or when she turned Location Services off during that time. *See infra* pp. 13-14." Motion at 11. | Ms. Capiro testified that she turned off Location Services during the class period:<br><br>Q. Ms. Capiro, why did you agree to be a plaintiff in this case?<br>A. Because I turned off my Location Services before sometime in April, and from talking with my lawyers I've learned that Apple used certain information that -- when I didn't want it to.<br>*See* Kamber Decl., Ex. O, (I. Capiro Dep.) at 95:14-19.<br><br>Q. And when did you start noticing battery issues with your iPhone three? And I'm just using that term for purposes of this deposition to refer to your third iPhone.<br>A. Pretty early on.<br>*See* Kamber Decl., Ex. O, (I. Capiro Dep.) at 29:3-7.<br><br>Ms. Capiro stated that "in early to mid-March 2011, I visited an Apple Store and asked if there were ways to improve the battery life on the iPhone."<br>*See* Kamber Decl, Ex. Q, (I. Capiro Decl.) at ¶ 7. |

|   | **Apple's Misrepresentations in its Motion for Summary Judgment ("Motion") [Dkt. 231]** | **Facts Refuting Apple's Misrepresentations and Creating Genuine Disputes of Material Fact** |
|---|---|---|
|   |   | Q. And you indicated that as a result of those discussions with Apple Store representatives you at times would turn Location Services off to improve battery life; correct?<br>A. Correct.<br>*See* Kamber Decl., Ex. O, (I. Capiro Dep.) at 42:23-43:2.<br><br>Q. Okay. And what did they tell you about turning off geolocation?<br>A. That was another way to improve the battery as well.<br>Q. Okay. And were there times that you would go into geolocation to turn that off in order to improve your battery life?<br>A. Yes.<br>*See* Kamber Decl., Ex. O, (I. Capiro Dep.) at 32:5-12.<br><br>Ms. Capiro further testified that "I turned it off, so I didn't want it to . . . gain information and it did."<br>*See* Kamber Decl., Ex. O, (I. Capiro Dep.) at 97:19-25. |
| 6. | "Although [Plaintiff Capiro] claims that she has turned Location Services off on a handful of instances (probably ten or fewer) during the past two years, she has absolutely no memory of when or whether she did so at any given point in time—or whether she turned Location Services off before upgrading to iOS 4.3.3. *Id.* 43:14-24, 44:16-25, 45:1-21." Motion at 13. | First, Ms. Capiro testified that during *each* of the past two years, it was probably 10 or fewer times that Ms. Capiro turned Location Services off for an unspecified period of time.<br>*See* Kamber Decl., Ex. O, (I. Capiro Dep.) 43:14-45:21.<br><br>Second, Ms. Capiro testified unequivocally that she turned off Location Services during the class period.<br><br>Q. Ms. Capiro, why did you agree to be a plaintiff in this case?<br>A. Because I turned off my Location Services before sometime in April, and from talking with my lawyers I've learned that Apple used certain information that -- when I didn't want it to.<br>*See* Kamber Decl., Ex. O, (I. Capiro Dep.) at 95:14-19. |

|  | **Apple's Misrepresentations in its Motion for Summary Judgment ("Motion") [Dkt. 231]** | **Facts Refuting Apple's Misrepresentations and Creating Genuine Disputes of Material Fact** |
|---|---|---|
|  |  | Ms. Capiro also testified that "As a result my discussions with the Apple Store representative, I turned off Location Services, Internet access and Apps on my iPhones many times. Sometimes I would turn off most of the Apps, sometimes just Location Services, sometimes just the Internet, and sometimes the Internet and Location Services – it just varied."<br>*See* Kamber Decl, Ex. Q, (I. Capiro Decl.) at ¶ 7 |
| 7. | "[T]he data captured from Ms. Capiro's iPhone and iTunes back-up files establish that ***Ms. Capiro had turned Location Services on every time that she backed up her iPhone, including for each of the back-ups that occurred before she upgraded to iOS 4.3.3***." Bolas Decl. ¶¶ 93-96." Motion at 13. | Apple admits that it has no information or records showing whether and when Ms. Capiro turned Location Services on or off, as the setting is controlled entirely on the device. Motion at 13. The only data Apple uses to support this misleading contention are clients.plist file records for a narrow subset of dates during the relevant period.<br>*See* Bolas Decl. at ¶¶ 93-96 [Dkt. No. 233].<br><br>Apple's data only supports its claim that Location Services was on during two backups on January 15, 2011 and February 21, 2011, not whether Location Services were never turned off during the other approximately 116 days during the class period when backups were not made. |
| 8. | Apple argues that "Plaintiffs concede that none of them 'suffered an actual injury' due to Apple's alleged conduct." Motion at 24-25. | Plaintiffs have identified a concrete, imminent injury that they suffered.<br><br>Q And you indicate -- why do you think it's important for consumers to be prudent about which apps they use if they care about security?<br> MR. RICHMAN: Objection.<br>THE WITNESS: Because some apps are malicious.<br>MS. BERINGER: Q. And what do you mean by "malicious"?<br>A They can -- they can harm you.<br>Q And in what ways can a malicious app harm a consumer?<br>A They can extract privacy data. They can slow down your phone. They can drain the battery.<br>*See* Kravitz Decl, Ex. 21, (Dwyer Dep.) at 73:6-8. |

|   | **Apple's Misrepresentations in its Motion for Summary Judgment ("Motion") [Dkt. 231]** | **Facts Refuting Apple's Misrepresentations and Creating Genuine Disputes of Material Fact** |
|---|---|---|
|   |   | Q. Assuming hypothetically that an app you used did pass personally identifiable information to a third-party advertiser, what about that concerns you? MR. RICHMAN: Objection. THE WITNESS: My ability to control what data I share with the world I believe would be completely undermined if that indeed happened. I view -- I view my privacy as, you know, something of value, you know, and yeah, that -- that would indicate that -- that I did not -- that I did not have the privacy I thought I did, yeah. *See* Kravitz Decl, Ex. 21, (Dwyer Dep.) at 208:3–13.<br><br>Q Had you ever run out of storage space on your iPhone 3GS at any point when you used it? A Yeah, yes. Q Okay. A Yes. Q So, of the -- of the 8 gigabytes of storage that existed on your device, is it your testimony that at periods of time, all 8 gigabytes were occupied? A Yes. Q And do you know what caused your device to reach its maximum storage capacity? A Yes, the combination of my data and the apps, yeah. *See* Kravitz Decl, Ex. 21, (Dwyer Dep.) at 244:7-19.<br><br>A. I -- I -- I want -- I want to state, though, that -- or -- my -- my objective here isn't to wall off myself from, you know, apps, and, you know, I don't see the solution is to stop using the apps that I'm concerned are exposing my privacy. That -- that doesn't strike me as, you know, the -- the solution here. I feel like the solution is for these apps to be properly disclosing the information they release if -- if they're doing so. You know, it's -- it's up to them, you know, to -- to change, not up to me to, you know, limit my user experience. *See* Kravitz Decl, Ex. 21, (Dwyer Dep.) at 265:19- |

| | **Apple's Misrepresentations in its Motion for Summary Judgment ("Motion") [Dkt. 231]** | **Facts Refuting Apple's Misrepresentations and Creating Genuine Disputes of Material Fact** |
|---|---|---|
| | | 266:5.<br><br>"In or about December 2010, I read a Wall Street Journal article that reported that personal and confidential (information) on my iPhone is subject to transmittal to third parties. Apple did not disclose to me when I purchased the iPhone that such information could be transmitted to third parties when I would download certain Apps from the Apple Store."<br>*See* Kamber Decl, Ex. M, (Chiu Decl.) at ¶ 7;<br><br>Q. What is the factual basis for your belief that you may have overpaid for an iPhone?<br>A. My factual belief would have to be based on the premise that it is true that when you turn off that feature during whatever time period that was, that if the iPhone was not -- was actually doing that, it was still transmitting information, then the iPhone was not doing what it was intended to do, and from my perspective I overpaid for that phone because it's not functioning as it was designed to.<br>*See* Kamber Decl., Ex. N (A. Capiro Dep.) at 30:18–31:2.<br><br>Q. Which phone do you believe you paid too much for?<br>A. The only one that I can positively -- well, let me rephrase it. If Isabella turned her locator, whatever that's called, off and it continued to locate the phone and I paid for that phone, that's the harm.<br>*See* Kamber Decl., Ex. N , (A. Capiro Dep.) at 139:12–14.<br><br>"I believe that I overpaid for my daughter's iPhone because it transmitted data even when my daughter globally turned off Location Services. Had I known that when my daughter turned off Location Services on her iPhone that data was still transmitted from the phone, I would have either not have purchased the first iPhone or would have sought to pay less for the phone." |

| | Apple's Misrepresentations in its Motion for Summary Judgment ("Motion") [Dkt. 231] | Facts Refuting Apple's Misrepresentations and Creating Genuine Disputes of Material Fact |
|---|---|---|
| | | *See* Kamber Decl, Exhibit P (A. Capiro Decl.) at ¶ 6.<br><br>Q. Ms. Capiro, why did you agree to be a plaintiff in this case?<br>A. Because I turned off my Location Services before sometime in April, and from talking with my lawyers I've learned that Apple used certain information that -- when I didn't want it to.<br>*See* Kamber Decl., Ex.O, (I. Capiro Dep.) at 95:14–19.<br><br>Q. Okay. And what did they tell you about turning off geolocation?<br>A. That was another way to improve the battery as well.<br>Q. Okay. And were there times that you would go into geolocation to turn that off in order to improve your battery life?<br>A. Yes.<br>*See* Kamber Decl., Ex. O, (I. Capiro Dep.) at 32:5–12;<br><br>Q. And you indicated that as a result of those discussions with Apple Store representatives you at times would turn Location Services off to improve battery life; correct?<br>A. Correct.<br>*See* Kamber Decl., Ex. O, (I. Capiro Dep.) at 42:23–43:2;<br><br>Q. I mean why did you file a lawsuit against Apple? What do you hope to achieve by filing the lawsuit?<br>A. I just believe that it was wrong that when I turned it off it was still on, so...<br>Q. And can you be more specific? You believed that what was wrong?<br>MR. PARISI: Objection; asked and answered.<br>THE WITNESS: That Apple was receiving this information when I didn't allow it to.<br>*See* Kamber Decl., Ex. O, (I. Capiro Dep.) at 97:2–11; |

|   | **Apple's Misrepresentations in its Motion for Summary Judgment ("Motion") [Dkt. 231]** | **Facts Refuting Apple's Misrepresentations and Creating Genuine Disputes of Material Fact** |
|---|---|---|
|   |   | Q. So why did you think it was wrong?<br>A. Because --<br>MR. PARISI: Objection; asked and answered and ambiguous as phrased.<br>THE WITNESS: Because I turned it off, so I didn't want it to track -- not track, but gain information and it did.<br>*See* Kamber Decl., Ex. O (I. Capiro Dep.) at 97:19–25;<br><br>Ms. Capiro testified that "in early to mid-March 2011, I visited an Apple Store and asked if there were ways to improve the battery life on the iPhone." *See* Kamber Decl, Ex. Q, (I. Capiro Decl.) at ¶ 7 .<br><br>Ms. Capiro also specifically testified that she turned Location Services off in an attempt to save the battery life of her phone:<br><br>Q. Okay. And to the extent that you did turn Location Services off for all apps on your phone on a handful of occasions in 2011 and 2012, what were your reasons for doing that?<br>MR. PARISI: Objection; misstates the client's testimony.<br>THE WITNESS: Battery life.<br>*See* Kamber Decl., Ex. O, (I. Capiro Dep.) at 45:22–46:3. |
| **9.** | Apple insists that "Plaintiffs' CLRA claim relates to the use of third-party software apps or certain iOS software versions, which are neither a 'good' nor a 'service' under the CLRA. Def.'s Br. at 25. | The Court's prior decision made clear that the gravamen of the CLRA claims brought by both classes arise out of the fact that the iPhones are "a 'good' covered by the CLRA" that did not perform as promised. *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1071 (N.D.C.A. 2012). |