GIBSON, DUNN & CRUTCHER LLP
S. ASHLIE BERINGER, SBN 263977
ABeringer@gibsondunn.com
JOSHUA A. JESSEN, SBN 222831
JJessen@gibsondunn.com
JEANA BISNAR MAUTE, SBN 290573
JBisnarMaute@gibsondunn.com
JESSICA S. OU, SBN 280534
JOu@gibsondunn.com
1881 Page Mill Road
Palo Alto, California  94304
Telephone:  650.849.5300
Facsimile:   650.849.5333

GIBSON, DUNN & CRUTCHER LLP
GAIL E. LEES, SBN 90363
GLees@gibsondunn.com
333 South Grand Avenue
Los Angeles, California  90071
Telephone:  213.229.7000
Facsimile:   213.229.7520

Attorneys for Defendant
APPLE INC., A CALIFORNIA CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re iPhone Application Litigation | CASE NO. 11-MD-02250-LHK<br><br>**CLASS ACTION**<br><br>**DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>**HEARING:**<br>Date:     November 7, 2013<br>Time:    1:30 p.m.<br>Place:   Courtroom 8 – 4th Floor<br>Judge:  The Honorable Lucy H. Koh |

# TABLE OF CONTENTS

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT .......................................................... 1

II. PLAINTIFFS FAIL TO MEET THEIR DUAL BURDENS TO FURNISH EVIDENCE TO ESTABLISH ARTICLE III STANDING AND TO SUPPORT THEIR CLAIMS ................................................................................................................... 2

  A. Plaintiffs Have No Evidence That They Reviewed Or Relied On Any Misrepresentations ........................................................................................... 3

  B. Plaintiffs Have No Evidence Of Actual Injury ................................................ 7

  C. Plaintiffs Have No Evidence That They Experienced The Alleged Practices .............. 9

    1. iDevice Plaintiffs Concede There Is No Evidence That Their Personal Information Was Ever Collected By Apps Without Their Consent ................ 10

    2. "Location Services Off" Plaintiffs Concede There Is No Evidence That Their Location Information Was Ever Transmitted Without Their Consent ......................................................................................... 10

  D. Plaintiffs Have No Evidence That They (Or Anyone) Were Deceived ........................ 12

  E. Plaintiffs' Generalized Claims Relating To The Proposed Classes Are Irrelevant .................................................................................................. 13

III. PLAINTIFFS' *DAUBERT* CHALLENGE IS FRIVOLOUS ..................................................... 14

IV. CONCLUSION ............................................................................................... 15

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Baghdasarian v. Amazon.com Inc.*,
  458 Fed. App'x 622 (9th Cir. 2011) .................................................................................... 5

*Baghdasarian v. Amazon.com Inc.*,
  No. CV 05-8060 AG (CTX), 2009 WL 4823368 (C.D. Cal. Dec. 9, 2009), *aff'd sub nom.*, 458 F. App'x 622 (9th Cir. 2011) .............................................................................. 6

*Blum v. Yaretsky*,
  457 U.S. 991 (1982) ........................................................................................................ 14

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ........................................................................................................ 15

*Chamberlan v. Ford Motor Co.*,
  369 F. Supp. 2d 1138 (N.D. Cal. 2005) ............................................................................ 6

*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008) ........................................................................................ 12

*Contreras v. Toyota Motor Sales USA, Inc.*,
  No. C 09–06024 JSW, 2010 WL 2528844 (N.D. Cal. June 18, 2010), *aff'd in relevant part*, 484 F. App'x 116 (9th Cir. 2012) ............................................................... 7

*Cozzi v. County of Marin*,
  787 F. Supp. 2d 1047 (N.D. Cal. 2011) ............................................................................ 5

*Daniel v. Ford Motor Co.*,
  No. 11-cv-02890, 2013 WL 2474934 (E.D. Cal. June 6, 2013) .................................. 6, 7

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) .......................................................................................................... 8

*F.T.C. v. Publishing Clearing House*,
  104 F.3d 1168 (9th Cir. 1997) .......................................................................................... 5

*Gonzalez v. Drew Indus. Inc.*,
  No. CV 06-08233 DDP JWJX, 2010 WL 3894791 (C.D. Cal. Sept. 30, 2010), *aff'd sub nom. Gonzalez v. Kinro, Inc.*, 473 F. App'x 768 (9th Cir. 2012) .............................. 8

*Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*,
  397 F.3d 1217 (9th Cir. 2005) .......................................................................................... 5

*Hodgers-Durgin v. de la Vina*,
  199 F.3d 1037 (9th Cir. 1999) .......................................................................................... 9

*In re HP Inkjet Printer Litig.*,
  No. C 05-3580 JF, 2008 WL 2949265 (N.D. Cal. July 25, 2008) ................................ 5, 6

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......................................................................... 13

*In re Oracle Corp. Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010) .................................................................................................. 15

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ..................................................................................................... 5, 6, 12

*Kane v. Chobani, Inc.*,
   No. 12-CV-02425-LHK, 2013 WL 5289254 (N.D. Cal. Sept. 19, 2013) ....................................... 6

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forst*,
   624 F.3d 1083 (9th Cir. 2010) ................................................................................................ 14

*Lead Hill Assocs. v. Mizrahi*,
   No. C052411, 2007 WL 172237 (Cal. Ct. App. Jan. 24, 2007) ................................................. 13

*Leong v. Square Enix of Am. Holdings, Inc.*,
   No. CV 09-4484 PSG (VBKx), 2010 U.S. Dist. LEXIS 47296 (C.D. Cal. Apr. 20,
   2010) ....................................................................................................................................... 5

*Lueck v. Nevada Judicial Ethics & Election Practices Comm'n*,
   106 F. App'x 552 (9th Cir. 2004) ............................................................................................. 9

*Pfizer, Inc. v. Super. Ct.*,
   182 Cal. App. 4th 622 (2010) .................................................................................................. 6

*Plaisted v. Dress Barn, Inc.*,
   No. 2:12–CV–01679-ODW (SHx), 2013 WL 300913 (C.D. Cal. Jan. 25, 2013) ....................... 12

*Princess Cruise Lines, Ltd. v. Super. Ct.*,
   179 Cal. App. 4th 36 (2009) .................................................................................................... 6

*Samica Enters. LLC v. Mail Boxes Etc., Inc.*,
   460 F. App'x 664 (9th Cir. 2011) ........................................................................................... 12

*Scott v. Harris*,
   550 U.S. 372 (2007) ................................................................................................................ 2

*Sedell v. Wells Fargo of California.*,
   No. C 10-4043 SBA, 2012 WL 3017541 (N.D. Cal. July 23, 2012) ......................................... 14

*Tamburri v. Suntrust Mortg., Inc.*,
   No. 11-cv-02899, 2013 WL 4528447 (N.D. Cal. Aug. 26, 2013) ............................................... 9

*Trishan Air, Inc. v. Fed. Ins. Co.*,
   635 F.3d 422 (9th Cir. 2011) .................................................................................................. 14

*Warth v. Seldin*,
   422 U.S. 490 (1975) .............................................................................................................. 13

*Yeager v. Bowlin*,
   693 F.3d 1076 (9th Cir. 2012) ................................................................................................ 12

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' Opposition ("Opp.") manifestly fails to identify a genuine issue of material fact sufficient to avoid summary judgment based on the named Plaintiffs' lack of Article III standing, lack of statutory standing, and failure to establish any element of their surviving UCL and CLRA claims.

***First***, while Plaintiffs repeatedly *assert* "that Apple's deceptions induced them to overpay for their iDevices and that Apple's conduct consumed the iDevice's finite resources" (Opp. 18), they can cite *no evidence* to support this claim.  To the contrary:  All of the named Plaintiffs *admitted* under oath that they suffered no harm, and Plaintiffs' counsel similarly *admitted* at the February 28 hearing that he had "no evidence" that a single Plaintiff reviewed, relied on, or considered material any alleged misrepresentation by Apple in deciding to purchase an iPhone.  Plaintiffs' own declarations—notable for what they do *not* say (e.g., no Plaintiff asserts reliance)—only underscore these points.  Similarly, Plaintiffs have adduced no evidence that their iPhones (or even the phones of others) were harmed or had "resources" unfairly "consumed" as the result of any conduct by Apple.

Additionally, Plaintiffs have no evidence that their "personal information" together with their iPhones' UDIDs was ever collected by third-party applications and shared with third-party advertising or analytics companies.  Instead, they have offered only generic "analyses" from experts who never determined whether the *named Plaintiffs* experienced any improper data collections—and who are admittedly unaware of a single instance of an app transmitting personal information.  And even if Plaintiffs had such evidence, they offer no evidence that they suffered any injury as a result, much less injury caused by Apple.  Similarly, the primary Geolocation Plaintiff (Isabella Capiro) has no evidence that she turned Location Services off while the geolocation bug was in effect—or that her "location data" was sent to Apple when Location Services was off (and her expert conceded it was not).  This acute lack of evidence is fatal to Plaintiffs' standing and to their individual UCL and CLRA claims.

***Second***, like their Second Motion for Class Certification (Dkt. 247), the Opposition is replete with references to alleged facts and theories that are not pled in Plaintiffs' operative complaint and are completely untethered to any experiences of the named Plaintiffs.  For example, Plaintiffs devote pages of discussion to "geo-tagging"—an alleged practice unmentioned in their Complaint and that Plaintiffs admit affected "pre-iOS 4.1" versions, which *none of the named Plaintiffs ever used*.  Opp.

5-6.  Similarly, Plaintiffs again discuss iAd—which this Court observed *eight months ago* was not in the Complaint (2-28-13 Hearing Tr. at 59:3–12)—and rehash new theories of liability grafted onto their class certification papers, including their new "UDIDs as personal information" and Apple's "failure to enforce internal policies regarding privacy" theories.  Opp. 1, 7, 9.  Even if these new theories were properly framed by the Complaint—and they are not (*see* Dkt. 255-21 (summary of Plaintiffs' new theories))—they are unrelated to the named Plaintiffs and cannot prevent summary judgment.

This Court has given Plaintiffs ample opportunity to discover evidence to support their claims.[1]  Plaintiffs no longer can rely upon uncorroborated assertions, hyperbole, and invective at the summary judgment stage.  Because they have failed to adduce *any* evidence, Apple's Motion should be granted.

## II.  PLAINTIFFS FAIL TO MEET THEIR DUAL BURDENS TO FURNISH EVIDENCE TO ESTABLISH ARTICLE III STANDING AND TO SUPPORT THEIR CLAIMS

Apple's moving brief exhaustively detailed Plaintiffs' deposition testimony and other evidence establishing that:  (i) Plaintiffs did not rely on any putative misrepresentation; (ii) Plaintiffs were in no way harmed; and (iii) Plaintiffs have no evidence that they actually experienced the data practices alleged in their Complaint.  *See* Dkt. 231 ("MSJ") 7–14.  Tellingly, Plaintiffs ignore this evidence and devote pages to generalized theories and purported grievances wholly unconnected to the named Plaintiffs, their Complaint, or the record evidence they cite.[2]  To avoid summary judgment, Plaintiffs "must do more than simply show that there is some metaphysical doubt as to the material facts"—and they have not.  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quotation omitted).

---

[1] Plaintiffs suggest in their Opposition that "Apple is still producing documents pursuant to Plaintiffs' Motion to Compel" and that the parties are "meeting and conferring" about a clawback request Apple made.  Opp. 2 n.2.  Neither assertion is correct, as detailed in the Declaration of Joshua A. Jessen filed herewith.

[2] Like their Second Motion for Class Certification, Plaintiffs' Opposition includes a host of new theories not alleged in their Complaint.  First, Plaintiffs insist that Apple's alleged "failure to enforce internal policies regarding privacy" is a material misrepresentation.  Opp. 1, 8–9.  But as discussed in Apple's class certification opposition, Apple's enforcement scheme related to third-party apps does not implicate any consumer-facing representation, and Plaintiffs do not offer any evidence that Apple "inconsistently applied" its developer guidelines or identify a single instance where Apple failed to enforce a known violation of those guidelines.  Opp. 1; Dkt. 254 ("Class Cert. Opp.") 6–8.  Second, Plaintiffs point to a different Privacy Policy provision and argue that Apple "misleadingly defined the UDID" as "non-personal information."  Opp. 9–10.  As discussed in Apple's class certification opposition, Plaintiffs provide no evidence (and there is none) that this contractual definition is false.  Class Cert. Opp. 5–6, 20–21; *see also infra* pp. 9–12.

**A.  Plaintiffs Have No Evidence That They Reviewed Or Relied On Any Misrepresentations**

Apple's motion catalogued Plaintiffs' repeated, unequivocal admissions confirming that they *did not review or rely on* the challenged representations and relied on entirely different considerations—wholly unrelated to privacy—when purchasing their iPhones. MSJ 8–9. Specifically:

**Plaintiff Dwyer** affirmed that he read only "online reviews" *by third parties* prior to purchasing his iPhones and did not read or rely on any representations by Apple.[3] And although he identified every factor that led him to purchase each of his iPhones, he did not identify Apple's purported representations or device privacy as a factor (much less a substantial one).[4]

**Plaintiff Chiu** based his purchasing decisions entirely on word of mouth and third-party sources.[5] Although Chiu vaguely recalled reading unspecified "terms and agreements" when he first set up his iTunes account—years before purchasing an iPhone—he does not claim that these "terms" played any role in his purchasing decisions.[6]

**"Location Services Off" Plaintiff Isabella Capiro**[7] did not purchase an iPhone (her father did), but she admits that she was completely unaware of Location Services when she received her iPhone (and could have had no expectations about her ability to turn Location Services off) and

---

[3] Beringer Decl. ("Beringer II"), Ex. A (Aug. 14, 2012 Dwyer Dep. ("Beringer II, Dwyer Dep.")) 15:8–14; Dkt. 232, Beringer Decl. ("Beringer I"), Ex. D ("Beringer I, Dwyer Dep.") 17:23–18:2 ("Q. [A]side from the reviews . . . , was there anything else that you read . . . before purchasing the iPhone . . . ? A. No, no."); 19:6–9 ("Q. Was there anything else that you . . . relied on in making the decision to purchase an iPhone in 2008? A. Nothing else besides the online reviews.").

[4] Beringer II, Dwyer Dep. 14:3–15:7; 25:5–14 (new camera and faster device prompted second iPhone 4 purchase); Beringer I, Dwyer Dep. 17:15–17:22 (the availability of apps, the design features and the interface prompted first iPhone purchase); 27:22–28:1 (bought third iPhone because previous phone was stolen and wanted the cheapest iPhone model).

[5] Beringer I, Ex. A ("Beringer I, Chiu Dep.") 18:24–19:4 ("Q. [A]side from speaking to people who had been using the iPhone and reviewing reviews on CNet, can you think of anything else that you reviewed or researched as part of your decision to purchase the iPhone 3G? A. No.").

[6] Instead, Chiu testified that the only factor that led to his purchases was the convenience of using an "all-in-one" device to access music, search the web, and use apps and the App Store—nothing related to privacy. *See* Beringer I, Chiu Dep. 17:10–15 ("[W]as there anything else that led to your decision to purchase the iPhone 3G over other competitive models at that point in time? A. No, that -- that was it."); 25:5–20 (upgraded to iPhone 4S for litigation purposes); Beringer II, Ex. B (Aug. 15, 2012 Chiu Dep. ("Beringer II, Chiu Dep.")) 15:22–16:9; 21:18–22:18 (new display and faster speed prompted iPhone 4 purchase); 45:16–46:18; *see also* Dkt. 104, Third Amended Complaint ("TAC") ¶ 26 (first iPhone purchased in June 2010).

[7] As they did in their Second Motion for Class Certification, Plaintiffs appear to argue that Isabella Capiro should be considered a representative of the iDevice class—but they have neither pled nor offered any evidence in support of this reassignment. *See* Opp. 12–13; Class Cert. Opp. 11 n.7.

Gibson, Dunn & Crutcher LLP

wanted an iPhone solely because of "the Internet and the apps."[8]

**Plaintiff Alejandro Capiro** admitted (repeatedly) that he did not read or rely on any statement by Apple before purchasing his iPhones.[9] He was unaware of Location Services at the time of purchase and conceded that "functionality around Location Services was not a consideration in [his] decision to purchase the iPhones."[10]

Because their own admissions definitively establish that they did not rely on Apple's statements, Plaintiffs attempt to manufacture a triable issue by mischaracterizing testimony and supplying self-serving (and contradictory) declarations. For example, Plaintiffs assert that "Apple's promise to safeguard the privacy and security of [Plaintiffs'] personal information" was a "significant factor" in their "decisions to purchase [iPhones]" (Opp. 11–12)—which not only ignores Plaintiffs' clear admissions to the contrary (cited above), but also is unsupported by any record evidence. In support of this false argument, Plaintiffs cite only inapposite, random deposition testimony that Mr. Dwyer is "happy giving apps my location as long as . . . they manage that information in a way that, you know, [is] appropriate" and that he "think[s]" that "there are certain standards that an app has to meet in order to be in the App Store." *Id.*; Beringer II, Dwyer Dep. 141:7–21. This testimony has nothing to do with why Mr. Dwyer *purchased* his iPhones. *Id.* Likewise, Plaintiffs' claim that they were lured to purchase iPhones by "the *availability* of purportedly free Apps in the App Store" (Opp. 11) is of no consequence because Plaintiffs do not contend that Apple violated any promise relating to the "availability" of apps—nor could they, with more than 900,000 apps currently in the App Store.

---

[8] Beringer I, Ex. B ("Beringer I, I. Capiro Dep.")) 11:6–12 ("A. . . . [O]ther than playing with your friends' phones, did you do any research about the iPhone before you got your first iPhone? A. Not really. Q. Did you read anything about the iPhone as part of making the decision to get an iPhone? A. No."); 72:18–20 ("Q. Have you ever read anything to your knowledge about Location Services? A. I'm not sure; I don't think so."); 9:19–25 (wanted the iPhone because of "Internet and the apps"); Beringer II, Ex. C (Oct. 30, 2012 I. Capiro Dep. ("Beringer II, I. Capiro Dep.")) 40:2–15 (unaware of Location Services when she acquired her iPhone).

[9] Beringer I, Ex. C ("Beringer I, A. Capiro Dep.")) 16:12–17:6 ("Q. Did you conduct any research before purchasing the iPhones? A. No. Q. Did you review any written materials about the iPhone before purchasing those phones? A. No . . . Q. And did you review any materials about the iPhone during the course of being at the AT&T store before you purchased the phones? A. No. Q. Did you have any discussions with the salesclerks at the AT&T store about how to use your iPhone or the features of the iPhone? A. No.");158:4–7 ("A. You're asking me whether I researched the iPhone, the system, and geolocations? . . . No.").

[10] *Id.* at 20:1–16; 19:22–25 ("Q. Did you have any understanding of what would happen if you turned Location Services off on your iPhone in December of 2010? A. I didn't know it existed.").

And Plaintiffs' post-deposition claims in their recent declarations that privacy was a factor in their purchasing decisions cannot create an issue of material fact because they are flatly inconsistent with Plaintiffs' prior sworn testimony. *See Cozzi v. County of Marin*, 787 F. Supp. 2d 1047, 1052 n.1 (N.D. Cal. 2011) ("[A] party cannot create an issue of fact by submitting an affidavit that contradicts her prior deposition testimony.") (citations omitted).[11]

Separately, Plaintiffs argue that Plaintiffs Alejandro and Isabella Capiro "wanted to use all of the features of the phones, . . . even if they were unaware of all features at the time of purchase." Opp. 17. Yet the testimony that Plaintiffs cite says no such thing. It confirms that Mr. Capiro bought his daughter an iPhone because his "kids wouldn't stop bothering [him]" and it is "the hip thing with you kinds [sic] to want an iPhone."[12] Nor can a general interest in "us[ing]" unspecified iPhone features show that the Capiros relied on a Software License Agreement ("SLA") provision about Location Services when purchasing their iPhones. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326-27 (2009) (defendant's "misrepresentation [must be] an immediate cause of the injury-producing conduct"); *Baghdasarian v. Amazon.com Inc.*, 458 F. App'x 622, 623-24 (9th Cir. 2011) (affirming summary judgment where plaintiff was driven by "factors . . . unrelated to [the] alleged misrepresentation"); *Leong v. Square Enix of Am. Holdings, Inc.*, No. CV 09-4484 PSG (VBKx), 2010 U.S. Dist. LEXIS 47296, at *26 (C.D. Cal. Apr. 20, 2010) (no standing for UCL fraud claim where plaintiffs did not show challenged contractual term was "material to them *when they purchased*") (emphasis added).

Plaintiffs instead argue that they need only show that they "received the statements" at issue. Opp. 18. But the sole case they cite for this novel proposition was decided before *Tobacco II* and only confirms that evidence *of reliance* is required. *Id.* (citing *In re HP Inkjet Printer Litig.*, No. C 05-3580 JF, 2008 WL 2949265, at *4 (N.D. Cal. July 25, 2008)). In stark contrast to Plaintiffs here, the *HP* plaintiffs testified that they (1) received *and read* the advertisements at issue; and (2) *relied on*

---

[11] *See also F.T.C. v. Publishing Clearing House*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."); *Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1225 (9th Cir. 2005).

[12] Beringer II, Ex. D (Oct. 29, 2012 A. Capiro Dep. ("Beringer II, A. Capiro Dep.") 13:9–15. Likewise, the cited testimony of Ms. Capiro confirms only that she asked for an iPhone after "using [her] friends'" phone because "it was easy to work and [she] had never had a smartphone before." Beringer I, I. Capiro Dep. 9:11–18.

*them* when making their purchases. *In re HP*, 2008 WL 2949265, at *4 ("It is evident from both Plaintiffs' written and oral testimony that each relied upon some form of express warranty."); *Kane v. Chobani, Inc.*, No. 12-CV-02425-LHK, 2013 WL 5289253, at *6 (N.D. Cal. Sept. 19, 2013).[13]

Finally, while an "inference of reliance" can arise when a misrepresentation is "material," *In re Tobacco II Cases*, 46 Cal. 4th at 327, Plaintiffs cannot establish materiality here.  Most fundamentally, no inference of reliance can exist where Plaintiffs have *admitted* they did not rely on the representations at issue (*supra* pp. 2–4).  *See Daniel*, 2013 WL 2474934, at *4 (citing cases where court dismissed CLRA and UCL claims for failure to show reliance on material misrepresentations or omissions; "[t]he presumption or inference of reliance . . . will not arise where the record will not permit it"); *Baghdasarian v. Amazon.com Inc.*, No. CV 05-8060 AG (CTX), 2009 WL 4823368, at *6 (C.D. Cal. Dec. 9, 2009) (no inference of reliance where plaintiff admitted in deposition he did not rely on alleged misrepresentation), *aff'd*, 458 F. App'x 622, 623–24 (9th Cir. 2011).  Further, even after becoming aware of the challenged practices, Plaintiffs have continued to acquire new iPhones, download and use third-party apps, and use Location Services—confirming that they would not have been deterred from purchasing their iPhones had they known of these practices prior to their purchases.[14]  *See, e.g.*, *Princess Cruise Lines, Ltd. v. Super. Ct.*, 179 Cal. App. 4th 36, 43–44 (2009) (plaintiffs failed to prove actual reliance where evidence showed they would have purchased product regardless of defendants' product-related statements or conduct); *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1144–45 (N.D. Cal. 2005) (materiality means "had the omitted information been disclosed, [plaintiffs] would have been aware of it *and behaved differently*") (emphasis added).

---

[13] *See also Daniel v. Ford Motor Co.*, No. 2:11-02890 WBS, 2013 WL 2474934, at *5 (E.D. Cal. June 7, 2013) (noting that "the UCL and CLRA require a showing of reliance" and holding that plaintiffs could not "proceed with their UCL and CLRA claims without serious inquiry into *how* plaintiffs interacted with defendants' materials and statements"); *Pfizer, Inc. v. Super. Ct.*, 182 Cal. App. 4th 622, 631 (2010) (plaintiff lacked UCL standing with respect to specific commercials and labels on which he did not rely).

[14] Beringer I, Chiu Dep. 25:5–26:14 (acquired iPhone 4S after filing complaint); 149:4–18 (continues to use challenged apps); TAC ¶ 27 (Dwyer purchased iPhone 3GS after filing complaint); Beringer I, Dwyer Dep. 31:24–32:21 (acquired iPhone 4S after filing complaint); 260:18–23 ("Q. [Y]ou continue to download and use free apps, knowing that there is a possibility that apps [are sharing personal information without your consent]? . . . A. Yes."); Beringer I, I. Capiro Dep. 60:25–61:8 (had Location Services on at deposition); Beringer I, A. Capiro Dep. 20:17–22 (never disabled Location Services).

In short, Plaintiffs do not supply a shred of evidence that creates an issue of fact as to their lack of reliance on the putative misrepresentations. This alone mandates summary judgment. *See Daniel*, 2013 WL 2474934, at *6 (granting summary judgment on UCL and CLRA claims because plaintiffs failed to provide any evidence indicating reliance on defendants' alleged omission).

**B.     Plaintiffs Have No Evidence Of Actual Injury**

Apple's Motion also identified repeated admissions by Plaintiffs conceding that none of them was harmed by Apple's alleged misconduct—case-ending admissions that defeat Article III, UCL and CLRA standing. MSJ 7–8. Indeed, each Plaintiff acknowledged that he or she could not "identify any harm that [s/he] personally experienced due to the alleged collection of information and transmission of information from [his/her] phone."[15] Plaintiffs fail to overcome these dispositive admissions.[16]

*First*, Plaintiffs' conclusory assertion that they "overpaid" for their iPhones (Opp. 12–14, 16) does not create a genuine issue of fact in the absence of evidence supporting this contention and where they admit their purchasing decisions were not influenced by privacy considerations (*supra* pp. 2–6). *See Contreras v. Toyota Motor Sales USA, Inc.*, No. C 09–06024 JSW, 2010 WL 2528844, at *6 (N.D. Cal. June 18, 2010) (failure to allege injury in fact because "allegation that their vehicles are worth substantially less than they would be without the alleged defect is conclusory and unsupported by any facts"), *aff'd in relevant part*, 484 F. App'x 116 (9th Cir. 2012).

*Second*, Plaintiffs offer no proof that they (or anyone) experienced an adverse impact to their

---

[15] Beringer I, Chiu Dep. 147:16–148:11 (". . . Q. Is the answer no you cannot identify any harm, sitting here today? A. Correct. . . ."); 146:14–25 (never ran out of storage capacity), 147:5–14 (never exceeded a data plan); 35:11–15 (never incurred any out-of-pocket expenses related to his iPhone); Beringer I, Dwyer Dep. 243:5–16 ("Q. But can you actually point to harm that you did experience that's not hypothetical as a result of that happening? . . . A. Personally, I cannot, no."); 246:3–9 (never ran out of storage capacity), 20:3–6 (could not have exceeded his data plan); Beringer I, A. Capiro Dep. 131:23–132:4 ("Q. And am I correct that you aren't aware of any harm that you experienced due to the collection of any information by these apps on your device? . . . A. It's the same answer. I don't know."): 132:6–17; 135:11–19 (could not identify any money or property he lost in connection with his use of apps or the App Store); Beringer I, I. Capiro Dep. 101:9–14 ("Q. Can you identify any harm that you personally have experienced due to anything having to do with Location Services? . . . A. No."); 91:11–21 ("Q. Are you aware of having been harmed at all by your use of any of the apps that you've installed on your iPhones? A. I'm not sure. Q. You're not sure meaning you . . . can't think of any way in which you've been harmed if that happened? A. Correct."); 34:8–12 (never ran out of storage capacity on her iPhones).

[16] Plaintiffs purport to provide evidence of harm in Appendix A to their brief (Dkt. 266-1, pp. 7–11), but none of their citations establishes anything close to concrete, non-speculative injury in fact, or contradicts Plaintiffs' unequivocal admissions that they were not harmed. *Supra* pp. 7–8.

device's bandwidth, storage capacity, or battery life—due to alleged unauthorized data transmissions or otherwise. Opp. 4–7, 10–11, 14, 17–18; *see also* Class Cert. Opp. 8–9. No Plaintiff has testified to such harm, and Plaintiffs' brief merely recycles the same context-deprived documents used in their class certification motion to attempt (unsuccessfully) to support their contentions that they "might" theoretically have suffered harm. *Supra* pp. 7–8; Opp. 14; Class Cert. Opp. 8–9.[17]

And Plaintiffs' expert, Dr. Egele, made no attempt to determine whether or not Plaintiffs (or anyone) experienced diminished resources as a result of the challenged data transmissions. Beringer I, Ex. F ("Beringer I, Egele Dep.") 165:20–166:4; 167:4–25; 185:14–186:20; 187: 8–13; 193:19–195:1. In fact, the entire basis for his opinion was an unspecified article about power consumption of hardware components in *Android* devices. *Id.* at 186:10–20. To the extent the Court may consider such "conclusions,"[18] they reflect only the generic observation that data transmissions use some amount of energy, storage, and bandwidth. *See* Dkt. 268-1, Decl. of M. Egele ¶¶ 88–103. But Dr. Egele did not quantify even the hypothetical impact to resources that *might* have resulted from the hypothetical data transmissions at issue, much less any *actual* impact Plaintiffs experienced. *Gonzalez v. Drew Indus. Inc.*, No. CV 06-08233 DDP, 2010 WL 3894791, at *2 (C.D. Cal. Sept. 30, 2010) ("An assumption . . . cannot suffice to confer standing [to bring a UCL claim]. To survive summary judgment, Plaintiffs must present evidence of an injury in fact."), *aff'd*, 473 F. App'x 768 (9th Cir. 2012). Dr. Egele could only speculate that the resources *possibly* consumed by any data transmissions

---

[17] Specifically, Plaintiffs recycle the same irrelevant emails that discuss *authorized* battery use resulting from users' explicit behavior. *See* Class Cert Opp. at 8–9 (discussing Kravitz Decl. Ex. 22 (battery drain after authorizing Location Services) and Ex. 23 (battery drain upon downloading an app)). And again, Plaintiffs' reliance on a draft article about "energy bugs" is misplaced, since these "bugs" result from causes entirely unrelated to third-party apps collecting or transmitting user data. *Id.*, Kravitz Decl. Ex. 24. Likewise, in support of their bandwidth claim, Plaintiffs cite irrelevant emails about traffic data, not cell tower and Wi-Fi data. *Id.*, Kravitz Decl. Ex. 1.

[18] Dr. Egele's generic "findings" regarding resource utilization should be excluded under *Daubert*. "[I]n order to qualify as 'scientific knowledge,' an inference or assertion must be derived by the scientific method." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993). Despite Dr. Egele's contradictory declaration, he conceded that he did not perform any analysis or apply any methodology to arrive at his conclusions. Beringer I, Egele Dep. 165:20–166:4; 167:4–25; 185:14–24. Dr. Egele's conclusions were derived not by the scientific method but from "one article that was somewhat related where power consumption of Android devices was analyzed basically." *Id.* at 186:12–14. Dr. Egele now states in his new declaration he also relied on a single email, but it is entirely inapposite and mischaracterized, as discussed in Ronald Huang's declaration in support of Apple's class certification opposition (Dkt. 261, ¶ 35).

would be more than *100,000 times smaller* than those consumed when sending a single photograph—confirming the absence of discernible resource consumption. Beringer I, Egele Dep. 193:19–195:1.

At this stage, Plaintiffs' failure to produce any evidence that they personally were deprived of resources ends their speculative theories of injury. *See, e.g.*, *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) ("[N]amed plaintiffs who represent a class 'must allege and show that they personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'") (quotation omitted)); *Lueck v. Nevada Judicial Ethics & Election Practices Comm'n*, 106 F. App'x 552, 553 (9th Cir. 2004) ("At the summary judgment stage, [Plaintiffs] must set forth 'specific facts' evidencing an 'injury in fact' that is 'concrete and particularized' and 'actual and imminent,' rather than conjectural or hypothetical in order to show standing."); *Tamburri v. Suntrust Mortg., Inc.*, No. 11-cv-02899, 2013 WL 4528447, at *8 (N.D. Cal. Aug. 26, 2013) (granting summary judgment on UCL claim because there was "no evidence that Plaintiff suffered the economic injury required for UCL standing").

## C. Plaintiffs Have No Evidence That They Experienced The Alleged Practices

Plaintiffs' brief confirms not only that there is no evidence that they experienced the challenged data transmissions, but also that they invented their "tracking" allegations in an attempt to overcome this Court's prior order dismissing their amended complaint. MSJ 9–14. In fact, during their testimony, Plaintiffs did not know what a UDID was and could not identify any UDIDs associated with their devices. Beringer II, Dwyer Dep. 201:7–202:8; Beringer II, Chiu Dep. 106:24–110:20; Beringer I, Chiu Dep. 112:18–113:2; Beringer I, A. Capiro Dep. 131:7–14; Beringer I, I. Capiro Dep. 92:9–94:5. Further, Plaintiffs' own expert testified that *he did not encounter a single instance of an app in the App Store collecting or transmitting a UDID in combination with personal information*, despite analyzing more than 800 free apps in the App Store in several months of intensive graduate research. Beringer I, Egele Dep. 230:9–18; 216:13–17. Nor does reliance on Dr. Marziale's declaration help Plaintiffs, since Dr. Marziale conceded that he made no attempt to determine whether or not *Plaintiffs* actually had data collected from their devices. Beringer I, Ex. Decl., Ex. H ("Beringer I, Marziale Dep.")) 39:15–40:7. And Dr. Marziale, too, conceded that *he did not detect a single instance of an app used by Plaintiff collecting personal information*. *Id.* 94:11–25.

Plaintiffs never had a factual basis for their allegations—not before filing this suit, nor any time since.

### 1. iDevice Plaintiffs Concede There Is No Evidence That Their Personal Information Was Ever Collected By Apps Without Their Consent

The iDevice Plaintiffs have not identified any evidence that their personal information was ever combined with a UDID or transmitted to a third party, and their experts concede that there is no evidence this occurred. Following several months of funded research examining the behavior of over 800 apps, Plaintiffs' first expert, Dr. Egele, *did not uncover a single instance* of an app collecting a UDID in combination with personal information. Beringer I, Egele Dep. 195:22–196:18; 216:13–22; 229:8–231:16. Likewise, although Plaintiffs' second expert, Dr. Marziale, ran tests in January 2013 on certain apps purportedly used by Plaintiffs, he also could not detect any occurrence—not one—of those apps collecting or sending personal information. Beringer I, Marziale Dep. 93:24–94:25. In any event, because Dr. Marziale's tests involved only his *own* interactions with specific apps on a single day in 2013, he admits that his analysis does not (and cannot) show whether or not any Plaintiff actually experienced the challenged data transmissions if they used those apps years earlier.[19] Beringer II, Ex. F (Feb. 4, 2013 L. Marziale Dep. ("Beringer II, Marziale Dep.")) 57:2–58:21.

But even if Dr. Marziale's analysis were probative of what Plaintiffs experienced years ago (and it is not), it only would confirm the complete lack of evidentiary support for Plaintiffs' claims. Dr. Marziale concedes that he found no evidence that it was even *possible* for the specific apps used by Plaintiffs to transmit the majority of data that Plaintiffs allege was collected and sent, and he could not identify a single piece of "personal information" that was collected or sent by one of these apps. Beringer I, Marziale Dep. 94:11–25.

### 2. "Location Services Off" Plaintiffs Concede There Is No Evidence That Their Location Information Was Ever Transmitted Without Their Consent

Likewise, the "Location Services Off" Plaintiffs offer no evidence that their location information ever was sent to Apple while Location Services was off. Rather, it is *undisputed* that the only data even possibly transmitted to Apple was not "your location data" (the data referenced in the

---

[19] *See, e.g.*, Beringer II, Ex. E (Jan 9, 2013 Egele Dep. ("Beringer II, Egele Dep.")) 117:19–118:16; 208:12–20; 212:1–9 (discussing tremendous factual variation in how apps access UDID); Beringer I, Egele Dep. 168:12–170:8; Beringer I, Marziale Dep. 39:15–40:7 (dynamic analysis does not test what information Plaintiffs might have sent years earlier); Dkt. 233, ("Bolas Decl.") ¶ 21 (explaining why static analysis is the only evidence of what happened to Plaintiffs).

Location Services provision of Apple's Software License Agreement) but publicly broadcasted *serial numbers* of Wi-Fi routers and cell towers, which are not capable of being associated with a particular device or person. See Dkt. 235, Decl. of Ronald Huang ¶¶ 11, 17; Beringer I, Marziale Dep. 116:17–117:4. Indeed, Plaintiffs' experts conceded that such serial numbers are not location information and do not constitute "your location data, including the real-time geographic location of your iPhone" within the meaning of the SLA. Beringer II, Marziale Dep. 112:7–114:25 (conceding data transmitted with Location Services off could not identify individuals or their location); Beringer I, Marziale Dep. 115:1–117:4 (same); Beringer I, Egele Dep. 161:15–162:3 (serial numbers of Wi-Fi routers and cell towers not location data); 165:2–19 (location data not transmitted to Apple when Location Services was off); Dkt. 234, Decl. of Mark Buckley ("Buckley Decl."), Ex. A.[20]

Nor do Plaintiffs offer any evidence that these publicly broadcasted serial numbers ever were transmitted to Apple from Ms. Capiro's iPhone when Location Services was off. Although Dr. Marziale purported to show that such data was transmitted when he "performed an action" in the Dictionary.com app while Location Services was off (on a jailbroken phone provided by counsel), this does not supply evidence that any such data ever was transmitted from Ms. Capiro's non-jailbroken device when she had Location Services off, since she has offered no evidence that she performed these actions during the handful of occasions when she may have disabled location features. See Dkt. 268-2, Decl. of L. Marziale ¶¶ 16, 20. Indeed, Dr. Marziale conceded that no data was transmitted while Location Services was off when he performed actions in several other apps, confirming the bug was triggered only in rare circumstances depending on a user's actions.[21] Beringer II, Marziale Dep.

---

[20] Plaintiffs falsely contend in their Appendix A (pp. 2–5) that their experts' testimony regarding Location Services is "mischarateriz[ed]." In fact, Plaintiffs' citations disingenuously omit subsequent testimony from Dr. Marziale in which he admits the data he found could not identify individuals or their location. *Compare* Marziale Dep. at 110:5–18 *with* Beringer II, Marziale Dep. 110:5–24; 113:19–114:8 *with* 113:19–114:12; and 114:24–115:14 *with* 114:24–117:4. And their citations to Dr. Egele's testimony prove only that Dr. Egele did not "conduct any independent experiments to verify" his speculation about Location Services functionality. Beringer II, Egele Dep. 154:12–155:9; 158:9–159:17.

[21] Plaintiffs' suggestion that Apple somehow "removed" or "wipe[d]" all evidence on Plaintiffs' devices when it launched iOS 4.3.3 is a red herring. Opp. 14–15. Apple did not remotely wipe *any* data on a user's device, period. While the iOS 4.3.3 update eliminated and encrypted *some* data stored in the iPhone's cache—precisely the result Plaintiffs belatedly requested in their initial complaints—this occurred only after a *user* installed iOS 4.3.3. Also, data relevant to Plaintiffs' use of Location Services remained in Plaintiffs' iTunes backup files and on their devices—and

*(Cont'd on next page)*

97:12–104:22; 107:20–112:12; *see also* Beringer I, Egele Dep. 165:20–25; 167:13–17 (admitting he conducted no analysis to see if Plaintiffs experienced the challenged practices).

Ms. Capiro also fails to offer any evidence that she actually turned Location Services off during the few months before she upgraded to iOS 4.3.3 in June 2011. She testified only that she "probably" turned Location Services off a handful of times in 2011, although she could not recall definitively whether or when she did so. Beringer I, I. Capiro Dep. 45:10–21. Such vague recollections plainly do not create a triable issue of fact, particularly where undisputed data shows that she consistently had Location Services *on* during this period. *See Yeager v. Bowlin*, 693 F.3d 1076, 1080–81 (9th Cir. 2012) (affirming summary judgment despite plaintiff's detailed declaration because plaintiff could not recall relevant facts at his deposition); *Plaisted v. Dress Barn, Inc.*, No. 2:12–CV–01679-ODW (SHx), 2013 WL 300913, at *4–6 (C.D. Cal. Jan. 25, 2013) (granting summary judgment where plaintiff claimed to have worked without clocking in and through meal breaks, but could not recall specific dates and the record evidence supported defendant).

**D.     Plaintiffs Have No Evidence That They (Or Anyone) Were Deceived**

Plaintiffs concede that they did not read, rely on or suffer injury from the contractual provisions they now claim are deceptive, and, as a result, their UCL and CLRA claims fail. *Supra* pp. 2–4, 7–8; *see In re Tobacco II Cases*, 46 Cal. 4th at 326–27. Even if Plaintiffs could get past these fatal shortcomings (and they cannot), they have not shown that *anyone* relied on or was misled by the contractual provisions here, much less "an appreciable number of reasonably prudent purchasers." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026 (9th Cir. 2008). Nor have Plaintiffs provided declarations or testimony from absent class members (or anyone else) that they were misled; survey or other expert evidence that the contractual provisions were misleading; or any other evidence at all. *See id.* at 1025–26 ("a few isolated examples of actual deception" are insufficient evidence at summary judgment stage); *Samica Enters. LLC v. Mail Boxes Etc., Inc.*, 460 F. App'x 664, 667 (9th Cir. 2011) (affirming summary judgment on UCL claims where plaintiffs "presented no evidence that

---

*(Cont'd from previous page)*

    Apple has made every effort to investigate Plaintiffs' use of Location Services by requesting copies of Plaintiffs' backups and analyzing Plaintiffs' iPhones. Dkt. 233, Bolas Decl. ¶¶ 76–99.

a reasonable consumer would be deceived" by defendant's communications).

In place of evidence, Plaintiffs rely exclusively on this Court's prior order finding "*[a]t the motion to dismiss stage*, . . . [that] the Court [was] not prepared to rule that the [Apple Privacy Policy] establishe[d] an absolute bar to Plaintiffs' claims." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1077 (N.D. Cal. 2012) (emphasis added); Opp. 20. But this is not *evidence* of anything. The Court did not address whether a reasonable consumer would have been deceived by Apple's agreements, but rather whether certain disclaimers precluded Plaintiffs' claims as a matter of contract law. Even then, the Court found that Plaintiffs had only a "colorable argument." *Id.* at 1076. Critically, the Court relied on allegations that Apple had disclosed personal information to third parties and that the UDID was "personal information"—allegations that discovery has confirmed lack evidentiary support.[22] TAC ¶¶ 83–84; Dkt. 25, First Amended Complaint ¶¶ 103–04. Again, Plaintiffs' own experts have testified that there is no evidence that anyone collected "personal information" from a user's device without consent. Beringer II, Egele Dep. 82:24–83:11; 146:15–24; Beringer I, Egele Dep. 231:5–16; 230:9–18; 216:13–17; Beringer I, Marziale Dep. 93:24–94:25.

**E.      Plaintiffs' Generalized Claims Relating To The Proposed Classes Are Irrelevant**

While devoting only a few pages to the named Plaintiffs' claims, Plaintiffs spend pages on irrelevant arguments unconnected to either the allegations in the Complaint or to the named Plaintiffs. Opp. 4–11. These arguments have no bearing on Apple's summary judgment motion, which is directed exclusively to the named Plaintiffs. *Warth v. Seldin*, 422 U.S. 490, 502 (1975) ("Petitioners must allege and show that they personally have been injured, not that injury has been suffered by

---

[22] The California Attorney General's and Federal Trade Commission's statements regarding device identifiers (Opp. 7, 7 n.13, 7 n.14, 21) are irrelevant to how a reasonable consumer would have perceived Apple's Privacy Policy. The Attorney General made her statement years after Plaintiffs filed this lawsuit and the contractual representations at issue were made. Moreover, she is not a party to the contracts and cannot offer evidence of their meaning. *See Lead Hill Assocs. v. Mizrahi*, No. C052411, 2007 WL 172237, at *6 (Cal. Ct. App. Jan. 24, 2007) ("[E]xtrinsic evidence that is inconsistent with the express terms of the contract or that merely demonstrates the undisclosed intent of one party is irrelevant to the interpretation of a contract.") (unpublished). And regardless, her statement references the California Online Privacy Protection Act, which defines personally identifiable information in a way that would *exclude* UDID and the other anonymous information alleged to have been collected. Cal. Bus. & Prof. Code § 22577(a) ("personally identifiable information" includes identifiers that "permit[] the physical or online contacting of a specific individual"). Plaintiffs also have offered no evidence that the Federal Trade Commission's definition of individually or personally identifiable information has any bearing on a reasonable consumer's interpretation of the Privacy Policy. Opp. 7 & 7 n.13.

other, unidentified members of the class."); *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982).

Likewise, Plaintiffs' discussion of other generalized theories—e.g., UDID "misrepresented" as non-personal information (Opp. 7, 9) or supposed confusion surrounding UDID deprecation (Opp. 10)—must be disregarded because Plaintiffs failed to include these allegations in any of their myriad complaints.[23] *See Trishan Air, Inc. v. Fed. Ins. Co.*, 635 F.3d 422, 435 (9th Cir. 2011) ("The necessary factual averments are required with respect to each material element of the underlying legal theory . . . . [S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings.") (citation omitted); *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010) (affirming summary judgment and stating that plaintiff "may not effectively amend its Complaint by raising a new theory of standing in its response to a motion for summary judgment"); *Sedell v. Wells Fargo of California Ins. Servs., Inc.*, No. C 10-4043 SBA, 2012 WL 3017541, at *8 (N.D. Cal. July 23, 2012).

Plaintiffs' course here directly channels their renewed motion for class certification: recognizing their claims are doomed, they assert unpled theories with no relation to named Plaintiffs. But cobbling together out-of-context documents that Plaintiffs never read, including Mr. Tribble's testimony to Congress,[24] comes nowhere close to establishing an issue of fact. *See* Opp. 5−6, 20−21.

### III. PLAINTIFFS' *DAUBERT* CHALLENGE IS FRIVOLOUS

Finally, although it is Plaintiffs' burden to present evidence to substantiate their claims, Apple has offered the declaration of Jeffrey Bolas, a certified digital forensic examiner with extensive experience analyzing digitally stored mobile data on iOS devices.[25] Mr. Bolas was asked: what evidence, if any, exists on Plaintiffs' iOS devices to support Plaintiffs' factual allegations? Mr. Bolas conducted a forensically and methodologically proper examination, supervising hundreds of hours of analysis of Plaintiffs' devices to determine whether they contained evidence substantiating the factual allegations in Plaintiffs' Complaint. *See* Dkt. 233, Bolas Decl. ¶¶ 16−29. Mr. Bolas concluded that,

---

[23] Even if these assertions were in the case, they also are without merit or evidentiary support.
[24] In fact, Mr. Tribble's testimony explains the difference between opting out of interest-based ads (by visiting a link) and opting out of location-based ads (by turning Location Services off). Opp. 20-21 (Kamber Decl., Ex. I at APPLE_0002931).
[25] Beringer I, Ex. I ("Beringer I, Bolas Dep.")) 22:15−23:1, 246:19−247:4; 128:17−131:6.

overwhelmingly, they did not. Bolas Decl. ¶¶ 24–25, 47, 63, 67, 75. In fact, all allegations about the transmission of UDID lacked evidentiary support on Plaintiffs' phones and back-up files.

Plaintiffs concede that Mr. Bolas is a qualified expert in this area and do not contest his methodology. Opp. 4. Plaintiffs even concede his *findings*, saying Mr. Bolas' conclusion that there was "no evidence to support Plaintiffs claims" was "no surprise," and explicitly declining to contest that conclusion.[26] *Id.* at 2. What Plaintiffs do not concede is the relevance of this demonstrated (and mutually acknowledged) lack of evidence. Plaintiffs entirely misunderstand their burden. "[T]he moving party need only prove that there is an absence of evidence," at which time "the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25 (1986)).

> This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence. The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue. In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor.

*Id.* No jury could render a verdict for Plaintiffs on this record. As discussed, Plaintiffs offer only Dr. Marziale's analysis and Plaintiffs' declarations to show they experienced the challenged practices. However, Dr. Marziale's report only purports to show what *could* happen *if* a user interacted with iOS and certain apps in very specific ways (and is otherwise incurably flawed)—and Marziale concedes there is no evidence that these apps were *capable* of transmitting "personal information" to third parties. And Plaintiffs' own declarations do not allege, *let alone support a factual finding*, that they used iOS and the relevant apps in those ways. *See supra* pp. 9–12. Even taking their evidence as true, Plaintiffs' failure to offer evidence of *actual* harm is dispositive, as it renders many elements of Plaintiffs' case (including standing) without any evidence at all.

## IV. CONCLUSION

Plaintiffs' claims are untethered to the named Plaintiffs and lack evidentiary support. For these reasons, and those set forth in Apple's opening brief, the Court should grant summary judgment.

---

[26] Plaintiffs' other arguments in Appendix B also are incorrect or irrelevant. Mr. Bolas is entirely qualified to compare static and dynamic analyses. None of his declaration should be stricken.

| | |
|---|---|
| Dated: October 10, 2013 | Respectfully submitted, |
| | GIBSON, DUNN & CRUTCHER LLP |
| | By: */s/ S. Ashlie Beringer* |
| | S. Ashlie Beringer |
| | Attorney for Defendant<br>APPLE INC. |